Zia Shaikh, in propria persona
200 Village Ctr Dr
Unit 7381
Freehold, New Jersey 07728

## DISTRICT COURT FOR THE UNITED STATES
## DISTRICT OF NEW JERSEY

_____

Zia Shaikh,

                Plaintiff,

vs.

Laura L. Germadnig,
Siegfried Germadnig
Patricia Germadnig
Melissa Reeves
Kenneth Reeves
Mark Germadnig
Stacy Germadnig
Siegfried Germadnig Jr
Barus Germadnig
Crystal Germadnig
Skye Germadnig Jr
David Tarnowski
Nicole Tarnowski
Slava Kleyman
Nancy Cavanaugh
Louis Elwell
Janice Elwell
Christine Gilfillen
Sandra Seaman
Jack M
Nada Pityinger
Brett Pityinger
Daniel Schastny
Kathleen Schastny
Bradely Mckee
Rene Mckee
Robert Mckee
Carol Mckee
Stanley O'Brien
Lori O' Brien
Candy Mckee (alias)

| Civil Action No. |
| --- |
| 3:22-cv-02053- GC RLS |
| FIRST AMENDED AND VERIFIED COMPLAINT |
| COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF FEDERAL TORT CLAIMS ACT, COMMON LAW TORT CLAIMS, 28 U.S.C. §§1331 AND 1343 AND THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) |
| **DEMAND FOR JURY TRIAL** |

Steven A. Zabarsky, Esq.,
Kimberly Zabarsky, Law firm
of Citta, Holzapfel & Zabarsky,
Legal Malpractice Insurance Carrier
for Citta, Holzapfel & Zabarsky,
Cathleen Christie-Coneeny, Esq.,
Legal Malpractice Insurance Carrier
For Cathleen Christie-Coneeny, Esq.,
Joseph Gunteski CPA
Cowan Gunteski & Co
John R. Wiley Jr, CPA,ABV,CGMA
AICPA (Association of International CPA's)
Seth Arkush, Integrated Care Concepts LLC
Jackson School District
Principal of Jackson Liberty HS
Principal of Christa Mcaulifee Middle School
Principal of Crawford Rodriguez elementary School
Stephanie J. Brown Esq
August J. Landi Esq
Margie McMahon Esq
David Schlendorf Esq
Jackson Twsp. Police Chief Matthew Kunz
Jackson Township Police Officer Christopher Parise
Ocean Cty NJ Prosecutor Bradley Bilheimer
John Foti Jr
Madeline F. Einbinder J.S.C
Marlene L. Ford A.J.S.C
John S. Doron J.S.C.
Deborah H. Schron J.S.C.
Francis A. Hodgson Jr, P.J. Ch
John Does 1-10,
John Does 1-10, XYZ Corporations,

                    Defendants
_____    :


## ORIGINAL COMPLAINT FOR DAMAGES

**Plaintiff ZIA SHAIKH** for his Original complaint for damages and Injunctive relief for

Federal tort claims act, common law tort claims, 28 U.S.C. §§1331 and 1343 and the Federal

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO"), for Damages

alleges as follows:

# I.  <u>NATURE OF THE ACTION</u>

1.      This is an action for economic damages suffered by Plaintiff as a direct and proximate result of each Defendants fraudulent and wrongful conduct.

2.      Defendants Laura L. Germadnig, Estate of Decedent Siegfried Germadnig, Patricia Germadnig, Melissa Reeves, Kenneth Reeves, Mark Germadnig, Stacy Germadnig, Siegfried Germadnig Jr, Barus Germadnig, Skyler Germadnig, David Tarnowski, Nicole Tarnowski, Slava Kleyman, Nancy,  Louis Elwell, Janice Elwell, Christine Gilfillen, Sandra Seaman,  Alias "Jack M"; Nada Pityinger, Brett Pityinger, Daniel Schastny, Kathleen Schastny, Bradley Mckee, Rene Mckee, Robert I. Mckee, Carol L. Mckee, Stanley O' Brien, Lori O' Brien, Alias "Candy Mckee"; Steven Zabarsky, Esq, Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta law firm, Cathleen J. Coneeny, Esq.,Legal Malpractice Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan Gunteski & Co, John R.Wiley CPA, ABV,CGMA, AICPA-CIMA (Association of International Certified Public Accountants), Seth Arkush, Integrated Care Concepts LLC, Camille Eluzzi, Jackson Township Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Geoffrey Brignola, Principal of Jackson Liberty High School, Debra Phillips, Principal of Christa McAulife Middle School, Adrien Jean Denis, Principal of Crawford Rodriguez Elementary School, Ocean County, New Jersey Prosecutors Bradley Bilheimer, John Foti Jr, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Judge Madelin F. Einbinder J.S.C.,Marlene L. Ford A.J.S.C., John S.Doron J.S.C.. Deborah Schron J.S.C.,Francis A. Hodgson Jr, P.J. Ch all judges individually and in official capacity, John Does 1-10, John Does 1-10, XYZ Corporation **(collectively, "TORT Defendants")** have violated TORT laws.

3.      Additionally, Defendants Steven Zabarsky, Esq, Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta law firm, Cathleen J. Coneeny, Esq.,Legal Malpractice Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan Gunteski & Co, John R.Wiley CPA, ABV,CGMA, AICPA-CIMA (Association of International Certified Public Accountants), Seth Arkush, Integrated Care Concepts LLC, Camille Eluzzi, Jackson Township Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Geoffrey Brignola, Principal

of Jackson Liberty High School, Debra Phillips, Principal of Christa McAulife Middle School, Adrien Jean Denis, Principal of Crawford Rodriguez Elementary School, Ocean County, New Jersey Prosecutors Bradley Bilheimer, John Foti Jr, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Judge Madelin F. Einbinder J.S.C.,Marlene L. Ford A.J.S.C., John S.Doron J.S.C.. Deborah Schron J.S.C.,Francis A. Hodgson Jr, P.J. Ch all judges individually and in official capacity, John Does 1-10, John Does 1-10, XYZ Corporation **(collectively, "RICO Defendants")** have also violated the RICO.

4.    Since at least April 2014, TORT and RICO Defendants have colluded, misrepresented, stolen documents, lied under oath, conspired and or deceived Plaintiff in various ways upon their capacity to deprive Plaintiff of his Parent – Child relationships, loss of his business, money, property, community reputation, illegally incarcerated for alleged child support debt, caused non-renewal of US passport, IRS audits, false police reports, false reports to NJ State police, FBI, false reports to US Marshal service, reported illegal child support debt to credit bureaus.

5.    RICO Defendants' acts and omissions were deliberate and part of a scheme that began by June 2014 to defraud Plaintiff of his Parent – Child relationships, loss of his business, money, property, illegally incarcerated for alleged child support debt, caused non-renewal of US passport, IRS audits, false reports to US Marshal service, reported illegal child support debt to credit bureaus through false pretenses and representations.

6.    RICO Defendants carried out their scheme to defraud Plaintiffs, through their official positions in the Ocean county, NJ Superior court system, Jackson Twp Police and court system or other affiliations with the Ocean county, NJ Prosecutors dept'.

7.    RICO Defendants used or caused the use of the mails and wires to execute their scheme, and to personally enrich and or provide favors to their colleagues in the court system and themselves.

8.    RICO Defendants submitted false claims to NJ child support department to benefit from payments pursuant Title IV-D of the social security act. By additionally defrauding the United States Federal government on Title IV-D, RICO Defendants have further personally enriched themselves.

9.    Additionally RICO Defendants have sought to extort, defraud, and otherwise tortiously

injure plaintiff Zia Shaikh by means of a plan they conceived and substantially executed in the United States. It has been carried out by a United States-based enterprise comprised of among others, lawyers, led by Steven A. Zabarsky, Esq. of Citta, Holzapfel & Zabarsky; State of New Jersey Senator led by James Holzapfel; accountants, such as Joseph Gunteski CPA; and their front organizations, the accounting firm Cowen & Gunteski. These conspirators are collectively referred to herein as the RICO Defendants." Their enterprise include, among others, judges such as Madelin F. Einbinder, Marlene L. Ford, John S. Doron, Deborah H. Schron and Francis A. Hodgson, social workers, such as Seth Arkush and his front organization Integrated concepts LLC, corrupt Jackson Township Police officers such as Chief Matthew Kunz, Police Officer Christopher Parise, fully supported by Ocean County Prosecutors Bradley Bilheimer and John J. Foti Jr (husband of Judge Madelin F. Einbinder) among others.

10.     The enterprise's ultimate aim is to create enough illegal pressure on Plaintiff in the United States to extort him into paying exorbitant amounts of legal fees, while using Defendant Laura Germadnig as a ploy to surrender all his assets and property for the benefit of all defendants involved. The RICO Defendants have sought to inflict maximum damage to Plaintiff's reputation, personal psychological pressure on him, disrupt his parent-child relationship between him and his three children and completely destroy his financial planning business that he built over the past several decades.

11.     To effect this plan, the RICO Defendants initiated sham civil and criminal litigation in Jackson Municipal and Ocean County Superior courts, falsely claiming that Plaintiff was a physically abusive husband to his wife and an abusive father to his minor children. The RICO Defendants also utilized Plaintiff's national origin, race, and religion against him as a Pakistani-American to gain extremely favorable financial orders for themselves. This Litigation was directed in significant part by Slava Kleyman and Nancy Cavanaugh crime family which has ties with the Russian mafia thru their logistics company IMS (Intermodal Management Services). In prosecuting the series of bogus Litigation, the RICO Defendants conspired to engage in a series of corrupt acts. For example, they have submitted fabricated evidence in the form of expert reports including the social study authored by Seth Arkush LCSW,MCSW claiming that Plaintiff was "an angry man," "dangerous," and suffering from many personality and psychological disorders even though Seth Arkush had never met with or interviewed Plaintiff. They also submitted a false forensic accounting report to the court which claimed that Plaintiff possessed

$650,000 and additional hundreds of thousands of dollars without any evidence to their findings, further alleging movement of said funds through various bank accounts and hiding the money. They RICO Defendants have also colluded with Jackson police officers and two Ocean county prosecutors to procure sham criminal charges against Plaintiff and to prevent Shaikh from having any contact with his three children for nine years thus far, when there are no protective or restraining orders in effect.

12.    The criminal enterprise relies upon its ties to Senator Holzapfel who has significant influence and power over state of New Jersey judges because he exercises his "senatorial courtesy" to ensure only judicial nominees that he can control are confirmed by the New Jersey Senate. The criminal enterprise also relies upon corrupt police officers, government officials, and prosecutors to engage in maximum "pressure campaigns" to ensure the success of the criminal enterprises' activities and projects.

13.    The RICO Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 et seq., with predicate acts of extortion, mail and wire fraud, money laundering, obstruction of justice, and witness tampering, among others. In addition, Defendants' conduct constitutes common law fraud, unjust enrichment, and civil conspiracy, among others. As a result, Defendants' misconduct entitles Plaintiff to any such judgment that is enforceable, damages, and other relief.

## II.    PARTIES

14.    **(A) Plaintiff Zia Shaikh ("Plaintiff")** is the deprived father of his three children, an individual currently domiciled in the State of  New Jersey, and resides at 200 Village Ctr Dr Unit 7381, Freehold,  07728, in Monmouth County, New Jersey at all times relevant to this Complaint.

### (B) TORT  DEFENDANTS

15.    Defendant Laura Germadnig ("Laura") is an individual who was, at all relevant times, Plaintiff's ex-wife and joint managing conservator of Plaintiff's minor children whom may be served at 172 Roosevelt Avenue, Howell, New Jersey 07731. Laura Germadnig is sued in her individual capacity.

16.    Def./ Estate of Decedent Siegfried Germadnig ("Siegfried Germadnig") is an individual who was, at all relevant times, Laura Germadnig's father and may be served at his last

known place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Estate of Siegfried Germadnig is sued in it's individual capacity.

17.    Defendant Patricia Germadnig ("Defendant Patricia Germadnig") is an individual who was, at all relevant times, domiciled in the State of New Jersey, Laura Germadnig's mother and may be served at her last known place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Patricia Germadnig is sued in her individual capacity.

18.    Defendant Siegfried Germadnig Jr ("Defendant Siegfried Jr") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Siegfried Germadnig Jr is sued in his individual capacity.

19.    Defendant Barus Germadnig ("Defendant B.Germadnig") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Barus Germadnig is sued in her individual capacity.

20.    Defendant Stacy Germadnig ("Stacy Germadnig") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Stacy Germadnig is sued in her individual capacity.

21.    Defendant Mark Germadnig ("Mark Germadnig") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 172 Roosevelt Avenue, Howell, New Jersey 07731. Mark Germadnig is sued in her individual capacity.

22.    Defendant David Tarnowski ("David Tarnowski") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 42 East 4th Street, Howell, New Jersey 07731. David Tarnowski is sued in her individual capacity.

23.    Defendant Nicole Tarnowski ("Nicole Tarnowski") is an individual currently domiciled in the State of New Jersey, and resides at 42 East 4th Street, Howell, New Jersey 07731. Nicole Tarnowski is sued in her individual capacity.

24.    Defendant Slava Kleyman ("Slava Kleyman") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 20 Tower Rd Longbranch, New Jersey 07740. Slava Kleyman is sued in his

individual capacity.

25.    Defendant Nancy Cavanaugh ("Nancy Cavanaugh") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 6 Saint John Ave Tomsriver, NJ 08753. Nancy Cavanaugh is sued in her individual capacity.

26.    Defendant Louis Elwell ("Louis Elwell") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 17 Raintree Court, Holmdel, New Jersey 07733. Louis Elwell is sued in his individual capacity.

27.    Defendant Janice Elwell ("Janice Elwell") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 17 Raintree Court, Holmdel, New Jersey 07733. Louis Elwell is sued in her individual capacity.

28.    Defendant Christine Gilfillen ("Christine Gilfillen") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 19 Rustic Lane, Howell, New Jersey 07731. Christine Gilfillen is sued in her individual capacity.

29.    Defendant Sandra Seaman ("Sandra Seaman") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 315 Elberon Avenue, Allenhurst, New Jersey 07711. Sandra Seaman is sued in her individual capacity.

30.    Defendant Nada Pityinger ("Nada Pityinger") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 482 Jamaica Boulevard, Toms River, New Jersey 08755. Nada Pityinger is sued in her individual capacity.

31.    Defendant Brett Pityinger ("Brett Pityinger") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 482 Jamaica Boulevard, Toms River, New Jersey 08755. Brett Pityinger is sued in his individual capacity.

32.    Defendant Daniel Schastny ("Daniel Schastny") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 174 Windeler Road, Howell, New Jersey 07731. Daniel Schastny is sued in her individual capacity.

33.    Defendant Kathleen Schastny ("Kathleen Schastny") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 174 Windeler Road, Howell, New Jersey 07731. Kathleen Schastny is sued in her individual capacity.

34.    Defendant Melissa Reeves ("Melissa Reeves") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 39 Dawn Cypress Lane, Jackson, New Jersey 08527. Melissa Reeves is sued in her individual capacity.

35.    Defendant Kenneth Reeves ("Kenneth Reeves") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 39 Dawn Cypress Lane, Jackson, New Jersey 08527. Kenneth Reeves is sued in his individual capacity.

36.    Defendant Stanley O' Brien ("Stanley O'Brien") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at t 450 Cook Road, Jackson, New Jersey 08527. Stanley O'Brien is sued in his individual capacity.

37.    Defendant Lori O' Brien ("Lori O'Brien") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 450 Cook Road, Jackson, New Jersey 08527. Lori O'Brien is sued in her individual capacity.

38.    Defendant Bradley McKee ("Bradley McKee") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 14 Lexington Road, Howell, New Jersey 07731. Bradley McKee is sued in his individual capacity.

39.    Defendant Rene McKee ("Rene McKee") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at 14 Lexington Road, Howell, New Jersey 07731. Rene McKee is sued in her individual capacity.

40.    Defendant Robert I. McKee ("Robert McKee") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at his place of abode at 99 Steiner Avenue, Unit 22, Neptune, New Jersey 07753. Robert McKee is sued in his individual capacity.

41.    Defendant Carol L. McKee ("Carol") is an individual who was, at all relevant times,

domiciled in the State of New Jersey, and may be served with process at her place of abode at 99 Steiner Avenue, Unit 22, Neptune, New Jersey 07753. Carol McKee is sued in her individual capacity.

42.    Defendant alias is Candy McKee ("Candy") is an individual who was, at all relevant times, domiciled in the State of New Jersey, and may be served with process at her place of abode at an unknown address. Candy McKee is sued in her individual capacity.

43.    Defendant August J. Landi, Esq. ("Attorney Landi") is an individual who was, at all relevant times, a licensed attorney in the State of New Jersey, Bar Number 219181965, principal partner of the Law Office of August J. Landi, who may be served at his place of business at 1806 NJ-35 #207, Oakhurst, New Jersey 07755. Attorney Landi  is sued in his individual capacity.

44.    Defendant Margie McMahon, Esq. ("Attorney McMahon") is an individual who was, at all relevant times, a licensed attorney in the State of New Jersey, the Managing Partner of the McMahon & Russell, who may be served at her place of business at 730 Brewers Bridge Road, Jackson, New Jersey 08527- 2021. Attorney McMahon is sued in her individual capacity.

45.    Defendant David Schlendorf Esq. ("Attorney Schlendorf") is an individual who was, at all relevant times, a licensed attorney, or represented to Plaintiff that he was a licensed attorney in good standing in the State of New Jersey, is the CEO and founder of The Law Offices of David T. Schlendorf, who may be served at his place of business at 1108 Hooper Avenue, # 2, Toms River, New Jersey 08753. Attorney Schlendorf was publicly admonished by the Disciplinary Review Board of the Supreme Court of New Jersey on July 23, 2018 for failing to adequately represent clients in family law matters, and he was disbarred by the Supreme Court of New Jersey on December 29, 2022. Attorney Schlendorf is sued in his individual capacity.

46.    Defendant Cathleen Christie-Coneeny, Esq. ("Attorney Coneeny") is an individual who was, at all relevant times, a licensed attorney in the State of New Jersey, Bar Number 041021998, the owner of Cathleen J. Christie-Coneeny, Esq. Attorney at Law. Attorney Coneeny was publicly admonished by the Disciplinary Review Board of the Supreme Court of New Jersey on February 7, 2017 for representing clients while ineligible to practice law and is sued in her individual capacity.


**(C) RICO  DEFENDANTS (additionally liable for TORTS)**

47.    Madelin F. Einbinder ("Judge Einbinder") was, at all relevant times, an individual who was a Superior Court judge hearing family cases in New Jersey.

48.    Marlene L. Ford ("Judge Ford") was, at all relevant times, an individual who was a Superior Court judge hearing family cases in New Jersey.

49.    John S. Doron ("Judge Doron") was, at all relevant times, an individual who was a Superior Court judge hearing family cases in New Jersey.

50.    Deborah H. Schron ("Judge Schron") was, at all relevant times, an individual who was a Superior Court judge hearing family cases in New Jersey.

51.    Francis A. Hodgson ("Judge Hodgson") was, at all relevant times, an individual who was a Superior Court judge hearing chancery cases in New Jersey.

52.    Defendant Steven A. Zabarsky, Esq., ("Zabarsky") is an individual who was, at all relevant times, a licensed attorney in the State of New Jersey, Bar Number 005931985, principal partner of the law firm Citta, Holzapfel & Zabarsky, who may be served at his place of business at 248 Washington Street, Toms River, New Jersey 08753, or his place of abode at 712 Woodchuck Lane, Toms River, New Jersey, 08755. Zabarsky was also the Town Prosecutor for . Jackson Township at all times relevant to this lawsuit and is served in his official and individual capacities.

53.    Defendant James William "Jim" Holzapfel ("Senator Holzapfel") is an individual who was, at all relevant times, a licensed attorney in the State of New Jersey, Bar Number 192561959, Senior Managing Partner of the law firm Citta, Holzapfel & Zabarsky, who may be served at his place of business at 248 Washington Street, Toms River, New Jersey 08753. Senator Holzapfel was also the City Attorney of Elizabeth, New Jersey at all relevant times to this lawsuit and is sued in his individual capacity.

54.    Defendant Citta, Holzapfel & Zabarsky, P.A., ("Zabarsky Law Firm") is a professional corporation who was, at all relevant times, a law firm owned and operated by Joseph A. Citta, Zabarsky and Senator Holzapfel. Retired Superior Court Judge E. David Millard, who presided over the Civil Division of Ocean County and the Family Division of Ocean County, is of counsel to the Zabarsky Law Firm. This defendant may be served with process by serving Key Principal Joseph A. Citta at his place of business at 248 Washington Street, Toms River, New Jersey 08753. The Zabarsky Law Firm is sued in its individual capacity.

55.    Defendant Joseph Gunteski, C.P.A. ("Gunteski") is an individual and a licensed CPA with office address at 40 Bey Lea Road, Suite A101, Toms River, NJ 08753 at all times relevant

to this complaint and is sued in his individual capacity.

56.    Defendant Cowan Gunteski & Co, C.P.A. ("Cowan Gunteski & Co.") is a resident professional corporation doing extensive business in the State of New Jersey, has the main office located at 40 Bey Lea Road, Toms River, New Jersey 08753, at all times relevant to this Complaint and is sued in its individual capacity.

57.    The Association of International Certified Public Accountants ("AICPA") was, at all relevant times, a professional corporation doing business in the State of New Jersey, has the main office located at 200 Leigh Farm Road, Durham, North Carolina 27707-8110, at all times relevant to this Complaint.

58.    John R. Wiley CPA, ABV, CGMA ("Defendant Wiley") was, at all relevant times, an individual who is a licensed Certified Public Accountant and the chief investigator of complaints for the AICPA with an office address at 200 Leigh Farm Road, Durham, North Carolina 27707-8110.

59.    Defendant Seth Arkush ("Arkush") is an individual and owner of Integrated Care Concepts LLC, a professional corporation domiciled in the State of New Jersey, with an address at 19 North County Line Road, Jackson, New Jersey 08527, at all times relevant to this Complaint and is sued in his individual capacity.

60.    Defendant Matthew Kunz ("Chief Kunz") is an individual who was, at all relevant times, an employee and the police chief of Jackson Township, New Jersey Police Department, an agency of Jackson Township, who may be served at his place of business at 102 Jackson Drive, Jackson, New Jersey 08527. This defendant is sued in his individual and official capacities.

61.    Defendant Christopher Parise ("Officer Parise") is an individual who was, at all relevant times, an employee and police officer of Jackson township, New Jersey Police Department, an agency of Jackson Township, who may be served at his place of business at 102 Jackson Drive, Jackson, New Jersey 08527. This defendant is sued in his individual and official capacities.

62.    Defendant Bradley Bilheimer ("Prosecutor Bradley") is an individual who was, at all relevant times, an employee of Ocean County as the Ocean County Prosecutor, who may be served with process at his place of business at 119 Hooper Avenue, Toms River, New Jersey 08753. Prosecutor Bradley is sued in his individual and official capacities.

63.    Defendant John Foti Jr. ("Prosecutor Foti Jr.") is an individual who was, at all relevant times, an employee of Ocean County as the Ocean County Prosecutor, who may be served

with process at his place of business at 119 Hooper Avenue, Toms River, New Jersey 08753. Prosecutor Foti Jr. is sued in his individual and official capacities.

64.    Defendant Jackson School District ("Jackson School District") was, at all relevant times, a quasi-governmental entity chartered to provide educational services to the children of Jackson Township, New Jersey and is headed by an elected body comprised of residents of Jackson Township that establishes policies and administrative procedures for the Jackson School District's daily operations. The Jackson School District hired, trained, and supervised Debra Phillips, Adrien Jean Denis, and Geoffrey Brignola, and allowed Jackson Township police officers, including but not limited to Officer Parise and Chief Kunz, with impunity.    The Jackson School District may be served with process by serving the superintendent, Nicole Pormilli, at its place of business at 151 Don Connor Boulevard, Jackson, New Jersey 08527. The Jackson School District is sued in its official capacity.

65.    Defendant Geoffrey Brignola, Principal of Jackson Liberty High School ("Principal Brignola") is the principal of Jackson Liberty High School in the New Jersey municipality of Jackson Township at all times relevant to this Complaint and is sued in his individual and official capacities.

66.    Defendant Debra Phillips, Principal of Christa McAuliffe Middle School. ("Principal Phillips") is the principal of Christa McAuliffe Middle School in the New Jersey municipality of Jackson Township at all times relevant to this Complaint and is sued in her individual and official capacities.

67.    Defendant Adrien Jean Denis, Principal of Crawford Rodriguez Elementary School ("Principal Denis") is the principal of Crawford Rodriguez Elementary School in the New Jersey municipality of Jackson Township at all times relevant to this Complaint and is sued in his individual and official capacities.

68.    YELP Inc. ("Defendant YELP Inc") is the online business marketing and community forum provider that does business in New Jersey at all times relevant to this Complaint.

69.    John Does 1-10 are the Individual whose names are unknown to the Plaintiff at present and who may be added to this suit later at appropriate times.

70.    John Does 1-10, XYZ Corporation are Corporate Companies whose names are unknown to the Plaintiff at present and who may be added to this suit later at appropriate times.

### III.  JURISDICTION, AND VENUE

71.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) and 28 U.S.C.

§ 1331 because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Plaintiffs' claims present federal questions.

72. Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendant transact business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

73. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant, because Defendant is present in the State of New Jersey, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

74. This court has personal jurisdiction over Defendant pursuant to and consistent with the Constitutional requirements of Due Process in that Defendant, acting through their agents or apparent agents, committed one or more of the following:

a. The transaction of any business within the state;

b. The making of any contract within the state;

c. The commission of a tortious act within this state; and

d. The ownership, use, or possession of any real estate situated within this state.

75. Requiring Defendant to litigate these claims in New Jersey does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution. All of Plaintiff's claims arise in part from conduct Defendant purposefully directed to New Jersey.

76. The jurisdiction of this Court is invoked by Plaintiff pursuant to Federal Tort Claims Act, Common Law Tort Claims, 28 U.S.C. §§1331 and 1343 which confer original jurisdiction upon the Court on the grounds that the instant action arises under the Constitution of the United States, the Civil Rights Acts of 1866 and 1871, as amended, 42 U.S.C. §§1981, 1983, 1985, 1986, and 1988.

77. This Court also has jurisdiction pursuant to the following statutes: Federal Regulation of Commerce Jurisdiction:  Title 28 U.S.C. §1337; Federal Supplemental Jurisdiction:  Title 28 U.S.C. §1367(a)-(b); Racketeer Influenced and Corrupt Organizations Act of 1970

("TORT"), Title 18 U.S.C. §§1961, 1962, 1964(a)-(d), 1965 (a), (b), and (d); Federal Tort Claims Act; Common Law Tort Claims; Restatement of Torts; The general legal and equitable powers of this Court.

78. Venue is proper under 28 U.S.C. §1391(b) as one or more Defendants are located or reside in this District and Vicinage, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.


## IV.    CONDITIONS PRECEDENT

79. Plaintiff has satisfied all notice provisions and any conditions precedent to bring suit against the defendants identified above.

## V.    FACTS COMMON TO ALL CAUSES OF ACTION

80. At all times material to this Complaint, Plaintiff is of Pakistani national origin.

81. At all times material to this Complaint, Plaintiff was a licensed insurance agent and owner of America's Retirement Planning Partners LLC.

82. At all times material to this Complaint, the Jackson School District receives federal funding for academic and extracurricular activities.

83. At all times material to this Complaint, New Jersey cases involving criminal, civil and family law are heard in what is known as the Superior Court. The Superior Court is sometimes called the "trial court" because it is where trials are conducted. There is a Superior Court in each of New Jersey's twenty-one counties and there are approximately four hundred sixty Superior Court judges in the state.

84. At all times material to this Complaint, The New Jersey Constitution determines how lawyers become Superior Court judges. Under this process, the Governor nominates a lawyer who has been admitted to the state bar for at least ten years to become a judge by submitting the nomination to the state Senate, which then votes whether to confirm the nominee for the position. If confirmed by the Senate, the nominee is sworn in for an initial term of seven years. After seven years, judges can be reappointed. Again, the Governor submits a nomination to the state Senate, which votes whether to confirm the nominee for reappointment. judges who are reappointed have tenure, which allows them to remain in their posts until they reach the age of seventy.

85. At all times material to this Complaint, an unwritten factor influencing whether a lawyer

joins the New Jersey bench is "senatorial courtesy." Reportedly dating back to the mid-1800s, the rule means that no judicial nomination can move forward until the senator or senators representing the district and/or county in which the candidate lives give their approval. Numerous prospective judges, as well as other gubernatorial appointees, have been derailed or delayed due to a senator exercising courtesy.

86.    At all times material to this Complaint, Senator Holzapfel represents the 10th Legislative District of New Jersey.

87.    At all times material to this Complaint, the 10th Legislative District of New Jersey includes part of Ocean County and is comprised of the following towns: Bay Head, Brick Township, Island Heights, .hurst, Lavallette, Manchester, Mantoloking, Pt. Pleasant Beach, Seaside Heights, and Toms River.

88.    Upon information and belief, Judge Einbinder was mentored as an attorney and groomed for judgeship by Zabarsky and Holzapfel.

89.    At all times material to this Complaint, Judge Einbinder was a judicial nominee who received Senator Holzapfel's senatorial courtesy and was confirmed and re-confirmed as superior court judges of Ocean County, New Jersey.

90.    Prior to Judge Einbinder's appointment to be an Ocean County Superior Court judge, she was an assistant prosecutor for the Ocean County Prosecutor's Office from 1988 continuing through July 2011.

91.    At all times material to this Complaint, Judge Einbinder was married to Prosecutor Foti Jr. Both Judge Einbinder and Prosecutor Foti Jr. worked together as assistant prosecutors for the Ocean County Prosecutor's Office until Judge Einbinder was nominated and confirmed for the Superior Court judicial position. Zabarsky was Prosecutor Foti Jr's best man at the wedding, creating deep conflict of interest.

92.    At all times material to this Complaint, Zabarsky, the Zabarsky Law Firm, Senator Holzapfel, Attorney Landi, Attorney McMahon, Attorney Schlendorf, and Attorney Coneeny practiced law within the jurisdictional boundaries of the 10th Legislative District of New Jersey.

93.    At all times material to this Complaint, the Zabarsky Law Firm maintains at least one IOLTA bank account.

94.    At all times material to this Complaint, Zabarsky had complete control over the IOLTA bank account(s) stated in the foregoing paragraph.

95.    At all times material to this Complaint, Attorney Coneeny was the landlord for Laura

Germadnig's sister, Nicole Tarnowski and Nicole Tarnowski's husband, David Tarnowski.

96.    At all times material to this Complaint, Jackson Township Police Department Officer Tristan Bennett was a good friend of the Germadnig family.

97.    On or about July 2013, Plaintiff retained attorney Stephanie Brown and filed for divorce from Laura Germadnig in Ocean County Superior Court.

98.    On an unknown date shortly after Plaintiff filed from divorce from Laura Germadnig, Laura Germadnig retained Attorney Coneeny to represent her in the divorce proceeding.

99.    On an unknown date prior to January 18, 2014, Attorney Coneeny and Laura Germadnig conceived a plan to destroy Plaintiff in order to win Laura Germadnig's divorce proceeding and sole managing conservatorship of their minor children. During the concoction of this plot, Attorney Coneeny told Laura Germadnig that she "knows how to make Middle Eastern men cry."

100.    On an unknown date prior to January 18, 2014, Attorney Coneeny advised Laura Germadnig to incite Plaintiff to anger while secretly recording every interaction with Plaintiff in order to allege domestic violence in the divorce proceeding which would provide a legal advantage. Laura Germadnig agreed to Attorney Coneeny's scheme and enlisted the assistance of family members and friends  to carry out the scheme, including but not limited to, utilizing Decedent Siegfried Germadnig, Patricia Germadnig, Melissa Reeves, Kenneth Reeves, Mark Germadnig, Stacy Germadnig, Siegfried Germadnig Jr, Barus Germadnig, Skyler Germadnig, David Tarnowski, Nicole Tarnowski, Slava Kleyman, Nancy,  Louis Elwell, Janice Elwell, Christine Gilfillen, Sandra Seaman,  Alias "Jack M"; Nada Pityinger, Brett Pityinger, Daniel Schastny, Kathleen Schastny, Bradley Mckee, Rene Mckee, Robert I. Mckee, Carol L. Mckee, Stanley O' Brien, Lori O' Brien, and Alias "Candy Mckee" at various dates and times throughout the divorce proceedings.

101.    On an unknown date before January 18, 2014, upon advice from Attorney Coneeny, Defendant Laura L. Germadnig filed a temporary restraining order against Plaintiff. Laura Germadnig made false allegations of domestic violence to support the temporary restraining order. The temporary restraining order was granted and provided Laura Germadnig sole managing conservatorship of the children and sole possession of the marital residence by Jackson Twp Municipal court judge Daniel Sahin.

102.    On January 18, 2014, Laura Germadnig filed a false police report with the Jackson Township Police Department alleging that she and the Plaintiff had gotten into a verbal argument in the marital residence and that Plaintiff was harassing her and emotionally and

physically abusing her. Specifically, Laura Germadnig falsely alleged that Plaintiff attempted to grab her purse from her hands, ripped out a chunk of hair, and called his daughter a "nigger." Laura Germadnig never sought any medical help and there are no medical records to support Laura Germadnig's allegations. Additionally, Laura Germadnig never went to a domestic violence counselor when offered by the police that same date nor did she ever seek any domestic violence counseling. On this date Jackson Township Police Department Officers Tristan Bennett, David Watson, and Sergeant Wayne Olejarz arrested Plaintiff pursuant the New Jersey Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 et seq., and charged with Harassment pursuant to N.J.S.A. 2C:33-4.

103.    On January 30, 2014, Judge Appleby conducted a hearing on the aforementioned harassment charge. During said hearing, it was clearly shown that Laura Germadnig was *not* in the marital residence at any time on January 18, 2014 and Judge Appleby dismissed the case against Plaintiff.

104.    In February 2014, Laura Germadnig replaced Attorney Coneeny with Zabarsky and Judge Einbinder was assigned as the presiding judge over Plaintiff's divorce.

105.    On March 10, 2014 Defendant Melissa Reeves attacked Plaintiff physically and then filed a Jackson Police report as a victim. Plaintiff filed a complaint, Complaint No. 1511 S 2014 000229, against Melissa Reeves for assault and filing a false police report with law enforcement of assault against Plaintiff on March 28, 2014. Plaintiff also filed a Complaint, Complaint No. 1511 S 2014 000230, against Melissa Reeves for Harassment on March 28, 2014, for calling Plaintiff an *"asshole", "jerk", "piece of shit", "fuck head"* in front of Plaintiff's two (2) minor children while Plaintiff and the children were in his own home. Probable cause was found on the Harassment charge.

106.    During the Ex-parte April 23, 2014 hearing, without notice or presence of the Plaintiff or his attorney Stephanie J. Brown, Defendant Zabarsky colluded with his friend and presiding Judge Einbinder to fast-track his Pendente Lite financial and custody motion from its return date on May 2, 2014, to April 23, 2014. Plaintiff's attorney, Stephanie Brown, Esq., was never noticed about the changed date to April 23, 2014. Plaintiff was never served notice that the hearing was moved up from May 2, 2014, to April 23, 2014. As a result of this ex parte hearing before Judge Einbinder, in violation of the *New Jersey Code of Judicial Conduct, Canon 3(A)(6)*, prohibiting ex parte hearings or communications, Judge Einbinder committed judicial misconduct and issued the Pendente Lite Order on April 23, 2014 granting Laura Germadnig sole possession of the marital

residence at 5 Lons Lane, Jackson, New Jersey, which was valued at approximately $650,000 ($220,000 equity) on that date and Plaintiff was ordered to remove himself from the premises on April 23, 2014, granting Laura Germadnig sole custody of all three (3) minor children without conducting a plenary hearing. Zabarsky repeatedly asked Judge Einbinder to confiscate Plaintiff's passport arguing that he "is a Pakistani national" and a "Muslim," and that Plaintiff "can take his children and relocate them to Pakistan" without any proof of any intent to abduct his children. Zabarsky has also stated in open court that he has reported that he informed the Department of Homeland Security as well as other state and federal law enforcement authorities that Plaintiff is *not* allowed to travel outside of the United States and Plaintiff's movements will be watched and limited within the United States. Zabarsky also admitted in open court that he had reported to the United States Department of State that Plaintiff's passport is restricted and that his children are not to travel outside of the United States – all without any evidence presented to the court that Plaintiff had any intention of travelling to Pakistan or plan to abduct the children.

107. During the part 2 of the Pendente Lite hearing brought on motion by Defendant Laura Germadnig, returnable June 13, 2014, Laura Germadnig was further granted $800.00 per week of unallocated support without Plaintiff having any pre-deprivation/ability-to-pay hearing. Plaintiff was further ordered to issue a check in the amount of $50,000 to the trust account of the Zabarsky Law Firm, plus an additional $15,000 to the Zabarsky Law Firm for fees, plus an additional $10,000 to Cowen & Gunteski, for forensic accounting fees to try and uncover the fictitious, fabricated millions of dollars that Plaintiff purportedly was alleged to be hiding, according to Zabarsky's repeated false mantra.

108. On or about May 2, 2014, attorney Stephanie Brown, Esq., abruptly stopped representing Plaintiff.  Consequently, Plaintiff began shopping for a new attorney. In over a dozen conversations with lawyers, each time Plaintiff mentioned the opposing counsel is Zabarsky, the prospective attorney personally and directly told Plaintiff that Zabarsky is a notorious "thug" in Ocean County and has a reputation for dragging out the most minute issues to run up his legal bills and does not communicate with opposing counsel for a resolution.

109. Starting in May 2014 till present day Defendant Laura Germadnig have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are

the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth , Defendant Christine, Defendant Jack, Defendant Nada, Defendant Brett, Defendant Gilfillen, Defendant Seaman being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.  Hence all the above said Defendants have jointly and severely committed the tort of Parental Alienation syndrome by their intentional or reckless acts, and by their outrageous and intolerable conduct.   The Defendants outrageous, intolerable and wrongful conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights by causing harm to the relationship with the children. It has also caused   severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.

110.    On or about August 1, 2014, Nada Pityinger stole Plaintiff's United States Passport and at least seven client files. Nada Pityinger then provided the stolen United States Passport and client files to Laura Germadnig soon thereafter at an unknown date and time. The theft of Plaintiff's United States Passport and client files was part of the pressure campaign and to affirmatively block Plaintiff from travelling outside of the United States despite any court order preventing him from doing so.

111.    In October 2014, Attorney August Landi was hired by Plaintiff, who then filed a motion challenging the racial, religious, and nationality discrimination issues and Judge Einbinder disregarded it.

112.    Without any search warrant or other court order, on an unknown date, Zabarsky had spyware installed on Plaintiff's cellphone. In a pleading filed by Zabarsky on August 1, 2014, he provided evidence that he had received documentation of Plaintiff's text messages sent via interstate wires across the T-Mobile nationwide network without Plaintiff 's

knowledge or the knowledge of the other party in the conversation. Zabarsky admits in a supporting exhibit of the pleading that he had accessed Plaintiff's cell phone through the Plaintiff's 11-year-old daughter's cell phone, which Zabarsky and Laura Germadnig were using to access Plaintiff's Internet searches and all other data on his phone.

113.    On or about July 20, 2014, Plaintiff personally contacted T-Mobile, and spoke to a technology representative named Sandy, who confirmed that there is no such technology of mirroring of another person's cell phone as alleged by Zabarsky —except for a spy software installation.

114.    Without any search warrant or other court order, Zabarsky also had a GPS tracker secretly installed on Plaintiff's car to monitor the whereabouts of Plaintiff without Plaintiff's knowledge.

115.    Said GPS tracker sends a signal to a satellite that is a United States-owned utility that provides users with positioning, navigation, and timing (PNT) services that is developed, maintained, and operated by the United States Space Force.

116.    Given what happened to the deleterious actions and orders against Plaintiff in his current divorce action.  Because of this there was an unconstitutional and conflict of interest quid pro quo with Judge Einbinder and Defendant Zabarsky and members of Zabarsky's Defendant Law firm.

117.    Due to this financial fraud and extortion by Defendants Zabarsky, the Citta Law firm, and Cowan and Gunteski CPA firm, caused financial devastation, Plaintiff has been financially and familiarly destroyed as part of a campaign to deprive him of his children and all his life savings as a first-generation immigrant from Pakistan. Also due to the malicious, unlawful and unconstitutional actions against Plaintiff to deprive him of his property through falsifying and fabricating the amount of money he makes and the amount of assets he has, and then threatening to deprive Plaintiff of liberties if he doesn't make payments on fraudulent, fictitious orders that have no bearing in reality.

118.    On September 05,2014 Defendant Einbinder issued a bench warrant for non-payment of $50,000 she ordered to be paid to Defendant Zabarsky for attorney fees, while refusing to recuse herself due to conflicts of interest. This was a direct violation of Keith In re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17). Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is

in direct violation of __22 USC § 7102.__ This is Abuse or threatened abuse of law or legal process.

119.    On or about January 4, 2015, Laura Germadnig sent an email to Plaintiff with a copy of a Virgin Atlantic boarding pass and said in the email: "What are you doing in nassau bahamas and Dubai?" (sic)

120.    During the divorce proceedings following the aforementioned thefts, Zabarsky filed pleadings with pictures of Plaintiff's passport and travel data.

121.    On March 10, 2015, the Complaints against both sides were mutually dismissed. Plaintiff contends that the only reason Melissa Reeves filed charges against him were to help her best friend, Laura Germadnig, by maliciously abusing the court process with a case of malicious prosecution.

122.    Siegfried Germadnig and Patricia Germadnig are the parents of Laura Germadnig. They funded unnecessary and frivolous litigation by continually funding their daughter Laura Germadnig's divorce case against Plaintiff.  They paid the initial $5,000.00 retainer for their daughter to hire Zabarsky in March 2014. They instigated the false and malicious allegations of domestic violence against Plaintiff for purposes of stealing the marital residence by getting Plaintiff out of the residence and ultimately off the deed.

123.    On June 06, 2015 Defendant Laura Germadnig vacationed in Europe. Defendants Siegfried and Patricia Germadnig during this time disallowed any contact with the children and are currently involved in interfering with the Plaintiff's fundamentally secured parental rights by secreting the children from the inception of this divorce case and in violation of court-ordered parenting time and refuse to allow They interfered with Plaintiff's parental rights by preventing and disallowing the children to contact their Plaintiff .father. This constitutes emotional and physical child abuse.

124.    On June 09, 2015 Gunteski defendants in a report on pages 2 – 3, claimed: *"During the course of our discovery, we have found that the Plaintiff's have over $650,000 in assets as shown ..."*; Then on page 4 it was further claimed that "*Mr. Plaintiff has withdrawn and/or closed bank account in the amount of $419,222.*" Gunteski repeatedly failed to inform the court that their report was not final, but preliminary in nature and could not be relied upon. Plaintiff has made several requests to the Gunteski to correct his error and inform the court but he refuses to correct the record. Zabarsky and the Law Firm were involved in mail fraud and wire fraud by regularly sending threatening letters and faxes about arranging for Plaintiff's incarceration if he did not pay additional $20,000 in fees to Gunteski . These demands were made directly to Plaintiff and his counsel in order to extort monies out of

Plaintiff they could not find, despite several years of forensic accounting. Zabarsky, Cowan Gunteski & Co., and Joseph Gunteski each testified in court about their erroneous beliefs that Plaintiff was hiding funds without having any evidence of same. The threatening letters and faxes resulted in Plaintiff being under threat of contempt, arrest and incarceration. The defendants false reports, false statements, mail fraud and wire fraud resulted in Judge Einbinder and Judge Ford issuing orders grossly favorable to Laura Germadnig.

125.    Plaintiff filed a formal complaint against Gunteski and Cowan Gunteski & Co. alleging that their erroneous forensic report and refusal to clarify that it was only preliminary harmed Plaintiff. Till this day the FJOD in-equitable distribution haunts Plaintiff based on the fraudulent preliminary report submitted to the court. Plaintiff then filed a complaint with the Association of International Certified Public Accountants on or about Nov 5, 2018. John R. Wiley Jr., manager of the ethics committee, oversaw the handling of Plaintiff's complaint and concluded that the since "the Gunteski report was a preliminary report, he is denying an investigation into the complaint. John R. Wiley Jr then dismissed the complaint on this basis.

126.    Gunteski and Cowan Gunteski & Co. are also committing mail fraud and wire fraud by submitting fraudulent extortion letters to Plaintiff seeking at first $15,000 in additional fees, and later an additional $20,000 or else Plaintiff will be put in jail.

127.    On October 06,2015 an unknown person identified as "Jack M" posted a review on a popular public forum known as YELP inc, brutally defaming Plaintiff and insinuating an IRS action with full knowledge of Plaintiff's divorce proceedings and child support related issues. Plaintiff believes this person to be a known actor to the Germadnig, Reeves or Cavanaugh defendants. This posting continues to harm Plaintiff in every aspect of his daily life.

128.    In November 2015 Plaintiff contacted the forum YELP Inc to explain that their online user "Jack M" is alien to the Plaintiff and thus this review is not protected by the US constitution on First amendment about free speech; the forum continually denies subpoenas to release identifying information about "Jack M" thru it's robust legal team; thus colluding to defy the constitutionally protected rights of the Plaintiff.

129.    Due to the apparent conflict of interest between Judge Einbinder and Zabarsky, Plaintiff asked Judge Einbinder to recuse herself from the case but Judge Einbinder refused.

130.    On June 15,2016 Defendant Ford incarcerated Plaintiff into the Ocean county jail for 24 days for non payment of alleged child support arrears in direct violation of Keith In re

Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).   Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process.

131.   On September 15,2016 Defendant Ford issued a bench warrant for non payment of alleged child support arrears in direct violation of Keith In re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).   Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process.

132.   On March 03,2017 Defendant Ford issued a bench warrant for non payment of alleged child support arrears for which Plaintiff was arrested on March 21, 2017 after a supervised parenting session with his children at the court house and served 28 days at Ocean county jail in direct violation of Keith In re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).   Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process.

133.   The constant threat of arrest and incarceration continues due to the latest November 28,2017 bench warrant issued by Defendant judge John S. Doron without any findings of facts and conclusions in law pursuant NJ 1:7-4 and in direct violation of Keith In re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17). Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process; on the issuance of the outstanding bench warrant which remains active to this day, threatening another false arrest of the Plaintiff.

134.   Plaintiff was a self-employed insurance agent who never made more than $120,000 per year of income. Plaintiff's income was received via check on commissions earned. Plaintiff's credit has been severely damaged by the excessive Pendente Lite orders which materialized as same in the FJOD of Dec 2016. The former marital residence was finally sold at a Sheriff sale on Sep 09,2019 with a market value of over $1,500,000, when Defendant Francis Hodgson maliciously intervened to disallow adjudication of Plaintiff's motion to vacate the motion for foreclosure filed by the bank. These tortious interventions under color of law have plagued Plaintiff from the onset.

135.   After a bench trial, Defendant Judge Ford entered a January 26, 2017 amended final judgment of divorce (FJOD) that has continued the same miscarriage of justice as torts from the orders issued at the ex parte hearing on April 23,2014.

136.   Laura Germadnig has violated the FJOD more than four hundred fifty-nine (459) times and deprived Plaintiff of more than 378 days of visitation with the children.

137.   On November 28, 2017 Defendant John S. Doron issued a bench warrant against the Plaintiff based on the improper historical reporting of income and assets by the Gunteski defendants which is still active today as a continuing tort against the Plaintiff causing exceptional harm to his reputation and personal safety.

138.   On February 15,2019 Defendant Judge Francis Hodgson on direct orders from Defendant Marlene L. Ford rescinded his FEE WAIVER order after having granted same earlier in the day; on Plaintiff's motion to vacate a foreclosure proceeding in an effort to save his marital home at a Sheriff sale in Dkt # F-20634-16 at the chancery division since Plaintiff could not afford motion fees the house was lost to forced sale on September 19,2019 and Plaintiff's three children were displaced to live unnecessarily in a much lower standard of living.

139.   On September 06, 2019 a Jury verdict conducted by WTPCS (we the people court services) of Arizona granted full custody to the Plaintiff in compliance with NJ Constitution Art 1, Sect 9, Right to a Jury is *Inviolate*. (All States use "inviolate".) and the 7th Amendment of the US constitution  - "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States". No-place does it say "a judicial order may not be re-examined by a Jury". Only the word "Inviolate" controls in this matter., The Jackson School District and respective Principals of Jackson Liberty HS, Christa McAuliffe Middle school, Crawford Rodriguez elementary school- Refused to provide any physical or telephonic access to Plaintiff's three children despite court orders, refused

to accept the jury verdict order of Sep 06,2019 and challenged Plaintiff to sue them. All principals regularly harassed Plaintiff when seeking report cards and seeking help for Plaintiff's children who all had POOR struggling grades; threatened to call police if Plaintiff attempted to attend kids' graduation ceremonies from these public institutions.

140.  Since October 22,2019 Defendant Judge Deborah H. Schron has refused to issue any order pursuant NJ 1:7-4 with findings of facts and conclusions in law, by blindly following previous orders scheme. Despite being named a defendant in various complaints and suits by the Plaintiff for her inept actions and countless motions for her recusals, she forcefully presided over an illegally held TRO issued in July 2018 but conducted a trial starting on January 22,2021 and then granted an FRO against Plaintiff without any evidence from the Defendant in retaliation for crude treatment by the Plaintiff due to being duly violated at each hearing. The pattern continues till today.

141.  Plaintiff's Attorneys Landi, McMahon, and Schlendorf each agreed to file certain motions when Plaintiff retained them and they accepted Plaintiff's retainer but then failed to file the agreed-upon motions. Had they honestly told Plaintiff that they would not file the motions, Plaintiff would have never retained them.

142.  Chief Kunz and Officer Parise deliberately interfered with and refused to take in police reports on Plaintiff's complaints. Chief Kunz and Officer Parise also harassed Plaintiff when he called the . Jackson Police Department to request wellness checks on his children since the beginning of the divorce case starting in 2014.

143.  Laura Germadnig alleged to Dept' of child protection services (DCP&P) that Plaintiff has emotionally and physically abused one or more of his children, and told some or all of the defendants and others this false story. Laura Germadnig made these false statements to impugn the reputation and shame Plaintiff to settle the divorce proceeding as part of the Pressure campaign orchestrated by Zabarsky. These false statements significantly affected Plaintiff's reputation and status in the community, destroyed his business, and caused severe emotional distress with physical manifestations such as near-daily panic attacks, insomnia, gastric distress, nausea, rapid heartbeat and depression.

144.  Plaintiff attempted to enter the respective schools of his three children but Principals Brignola, Phillips, and Jean-Denis barred his entry and called Officer John Pejoski (who is also a client of Steven Zabarsky) to threaten Plaintiff with arrest if he did not leave the school premises, despite Plaintiff not being prohibited by any court order from visiting his children at school and checking on their academic progress and achievements. Plaintiff

complained to the Jackson School District about the actions of each of these Principals unconscionable behavior prohibiting him from seeing his children and checking on their academic progress and achievements, and the Jackson School District took no action acquiescing to the respective Principals actions.

145. John Foti Jr, acting under the direct supervision of Bradley Bilheimer's command, refused prosecution of Laura Germadnig for willfully violating Plaintiff's parental rights and provided her protection by abuse of power and process, as he had previously represented Defendant Laura Germadnig in a criminal complaint at Jackson Municipal court.

146. Gunteski and Cowan Gunteski & Co. submitted preliminary reports as final forensic accounting reports leading to an erroneous FJOD.

147. Arkush submitted a false personality report without ever meeting or interviewing Plaintiff and colluded with Zabarsky and Laura Germadnig to violate Plaintiff's parent-child relationship.

148. On February 01,2018, the New Jersey attorney generals division of consumer affairs / State board of social work examiners of New Jersey reprimanded Seth Arkush LCSW, MCSW for gross incompetence and violation of various laws on the submission of a false report about the Plaintiff in a consent order and monetarily fined him for various HIPPAA violations.

149. On October 15, 2020, the Disciplinary Review Board of the Supreme Court of New Jersey disbarred attorney Stephanie Brown for gross incompetence handling Plaintiff's divorce in a scathing 96-page decision.

150. On January 22,2021 Defendant Deborah H. Schron forcefully presided on a TRO filed in July 2018 by Defendant Laura Germadnig for which trial was conducted four years later illegal by the function of law as protested by the Plaintiff but thoroughly ignored by the Defendant Schron.

151. On July 14,2021 continuation of the TRO trial, Defendant Nancy Cavanaugh served as a witness for Def.'Laura Germadnig and testified on alleged "stalking behavior" by Plaintiff near her residence at 1187 Marissa Dr Tomsriver, NJ 08724. Upon cross examination she further testified reporting of her claim to Tomsriver Police dept. Plaintiff has obtained direct evidence via OPRA request to the Tomsriver Police of Ms.Cavanaugh's false testimony that NO SUCH INCIDENT was ever reported; this witness made up these allegations to bolster the false TRO filed by Germadnig to obtain the fraudulent FRO order that is causing defamation to the Plaintiff and causing

continuous financial harm.

## ❧ CLAIMS FOR RELIEF ❧

### I.    FIRST CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### AS TO ALL DEFENDANTS

152.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

153.    The emotional distress tort recently has been used successfully as a remedy for victims of child snatching in a significant number of jurisdictions. This tort has been used against child-snatching parents, and also against those who aid the abducting parent. A tort-based suit potentially affords the victimized plaintiff the most complete compensation for his or her dam-ages-costs incurred in attempting to recover the child and damages for mental distress. And a tort suit may be more effective in prompting the return of the child than other remedies. In fact, the significance of the tort remedy grows when compared with other available remedies. Although most states have felony kidnapping statutes condemning parental kidnapping, even if a felony conviction results in the return of the child, no costs or mental distress damages are recoverable.

154.    *In the Present case the Defendants as detailed in the pleading and more specifically Defendant Laura and her Paramour, Defendant have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant*

*Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth , Defendant Christine, Defendant Jack, Defendant Nada, Defendant Bradley, being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.*

155.    *Hence all the above said Defendants have jointly and severely committed the tort of Intentional Inflicting of Emotional Distress by their intentional or reckless acts , and by their outrageous and intolerable conduct. The Defendants outrageous, intolerable and wrongful conduct had caused the severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.*

## II.    SECOND CAUSE OF ACTION

### PARENTAL ALIENATION
### AS TO TORT DEFENDANTS

156.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

157.    Parental alienation is when one parent intentionally disrupts the child's relationship with the other parent ( *See Amy J.L. Baker & Jaclyn Chambers, Adult Recall of Childhood Exposure to Parental Conflict: Unpacking the Black Box of Parental Alienation, 52 J. DIVORCE & REMARRIAGE 55, 56 (2011). Hereinafter "alienating parent" will be used to describe the parent who intentionally acts to damage the relationship between the child and the other parent, and "alienated parent" will be used to describe the parent targeted by this*

*behavior. See id. at 57 (using the terms "alienating parent" and "targeted parent" to distinguish the parents' roles in the alienation).*

158.    Parental alienation generally involves behaviors that denigrate the alienated parent, reduces contact between the child and the alienated parent, and ultimately causes the child to reject the alienated parent. ( *See Edward Kruk, The Impact of Parental Alienation on Children, PSYCHOL. TODAY (Apr. 25, 2013) Hatred of a parent is not a natural emotion for a child; hatred is taught by the parent. See id.* "[W]hen the child is alienated the child is saying I am so weak I need to kind of terminate one parent and align myself completely with the other." *Mary E. v. Usher E., 967 N.Y.S.2d 868, 880 (Sup. Ct. 2013) (quoting testimony by a forensic evaluator).*

159.    These behaviors have become a serious problem for children of divorce or unhappy relationships    (*see also Richard A. Gardner, Parental Alienation Syndrome vs. Parental Alienation: Which Diagnosis Should Evaluators Use in Child-Custody Disputes, 30 AM. J. FAM. THERAPY 93, 95 (2002) (noting that parental alienation syndrome occurs almost exclusively in child-custody disputes).*    In 2010, in Noland-Vance v. Vance, the Missouri Court of Appeals affirmed the trial court's finding of parental alienation and awarded custody of the minor children to the father. Following the mother's allegations of the father's abuse of the children, the court ordered a clinical psychologist to conduct a psychological evaluation of the family. *( **Noland-Vance v. Vance, 321 S.W.3d 398, 409 (Mo. Ct. App. 2010).** * The psychologist found no credible evidence that the father had abused the children. The mother, however, admitted that she never said anything positive about the father to the children. She would berate him in front of the children and incite in them a fear of him. The psychologist concluded that the mother caused severe trauma to the children by alienating them from their father. In fact, the psychologist noted that this was the worst case of parental alienation he had ever seen.

160.    *In the Present case the Defendants as detailed in the pleading and more specifically Defendant Laura and her Paramour, Defendant have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth , Defendant Christine, Defendant Jack, Defendant Nada, Defendant Brett, Defendant Gilfillen, Defendant Seaman being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.*

161.    *Hence all the above said Defendants have jointly and severely committed the tort of Parental Alienation syndrome by their intentional or reckless acts, and by their outrageous and intolerable conduct.  Here the Defendant Laura is the "Targeted Parent" and the Plaintiff is the "Alienated Parent" and all the above-mentioned Defendants have conspired, colluded, willfully participated in the Parental Alienation Tort with the Targeted Parent, Defendant Laura. The above-mentioned defendants have intentionally disrupted the Plaintiff's Children's relationship with the Plaintiff and have reduced the contact between the Plaintiff's children and the Plaintiff and have intimately induced and brainwashed the Children and have created hatred feelings to the Children as against the Plaintiff. The Defendants outrageous, intolerable and wrongful*

conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights by causing harm to the relationship with the children. It has also caused   severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.

### III.    CAUSE OF ACTION NUMBER THREE

### PARENTAL ALIENATION OF AFFECTION
### AS AGAINST TORT DEFENDANTS

162.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

163.    In an alienation of affections claim, the alienated parent can sue the alienating parent to remedy the loss of the child's affection as a result of the damage to his or her relationship with the child (*See McGlynn, supra note 132, at 539. Traditionally, alienation of affection was used against a third party who stole the affection of a spouse. See Varnado, supra note 20, at 142. Because women were regarded as property of their husbands, any attempt to have relations with someone's wife was a property-based tort. See id., at 142 & n.182.*) For example, in 1991 in **Hershey v. Hershey**, the South Dakota Supreme Court held that the father stated a cause of action against the mother for alienation of affection regarding their son. (*See 467 N.W.2d 484, 489 (S.D. 1991) (noting that policy considerations regarding recognition of this tort included the best interest of the child, availability of other remedies, and exacerbating custody and visitation battles). Alienation of affection has three elements: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) a causal connection between such conduct and the loss.* **Jones v. Swanson, 341 F.3d 723, 732 (8th Cir. 2003).** The court reasoned that there was alienation of affection because the mother kept the child's location a secret from the father for fourteen years. (***See Hershey, 467 N.W.2d***

*at 489*). With the abolishment of alienation of affection for spouses, however, courts have been reluctant to continue recognizing an alienation of affection tort for parent-child relationships. ( *See Raftery v. Scott, 756 F.2d 335, 338–39 (4th Cir. 1985)* *(explaining that the father's alienation of affection claim could not be a basis for recovery because the tort had been abolished); Zamstein v. Marvasti, 692 A.2d 781, 790 (Conn. 1997*) *(concluding that because the state legislature abolished alienation of affections, the father could not bring a claim of alienation of affections of his children).*

164.    Although similar in many ways to parental alienation syndrome, parental alienation of affections is a more respected and less controversial categorization of the behaviors. Parental alienation focuses on the alienating parent's behavior and is defined as any parental behavior that disturbs the child's relationship with the other parent. ( *See Varnado, supra* *note 20, at 116–17, 117 n.12; see also Darnall, supra note 20, at 325 (explaining that one of the main differences between parental alienation and parental alienation syndrome is that parental alienation syndrome requires that the child participate in the degradation of the alienated parent).*

165.    Parental alienation syndrome focuses on the reactions, behaviors, and contributions of the child, and diagnoses it as a disorder. Techniques employed by the alienating parent may include the following: restricting the other parent's access to information about the child, refusing telephone contact or visitation with the other parent, criticizing the other parent in front of the child, destroying pictures of the other parent, changing the child's last name to disassociate the child from the other parent, encouraging conflict between the child and the other parent, using the child to deliver messages to the other parent, or blaming the other parent for financial or emotional problems. ( *See Varnado, supra* *note 20, at 120–22 (explaining the techniques employed by alienating parents).*

166.    Parental alienation of affections can have severe effects on children, including

emotional distress and adjustment difficulties. ( *See Fidler & Bala, supra note 44, at 20 (explaining that the literature reports that alienated children are at a greater risk for emotional distress and adjustment difficulties than children who are not alienated). Alienated children exhibit illogical cognitive operations, distorted interpersonal perceptions, self-hatred, aggression, and poor impulse control. See id. at 20–21).* A child affected by parental alienation might experience guilt, confusion, fear, powerlessness, anger, anxiety, hopelessness, depression, or diminished self-esteem. ( *Children may also experience adjustment problems, such as issues at school, sadness, low self-esteem, anxiety, drug abuse in adolescence, hyperactivity, and resistance to authority. See Elisabeth Godbout & Claudine Parent, The Life Paths and Lived Experiences of Adults Who Have Experienced Parental Alienation: A Retrospective Study, 53 J. DIVORCE & REMARRIAGE 34, 46 (2012).*

167.    Specifically, the alienation can damage the child's self-esteem because the child receives the message that the alienating parent's love is contingent on the child's rejection of the other parent and may perceive that the alienating parent hates the other parent more than they love the child. ( *See Baker & Ben-Ami, supra note 47, at 474–75 (observing that this is one way that alienation can affect a child's self-esteem); see also In re Matthew M., No. F-04-CP-11009363A, 2013 WL 4734892, at \*4 (Conn. Super. Ct. Aug. 12, 2013) (noting expert testimony that parental alienation affects a child's sense of security, inter-personal relationships, regulation of emotions, and the ability to accept positive experiences).*

168.    The child's self-esteem and self-efficacy are also affected by conceptualizing one parent as all "good" and one as all "bad." ( *See Janet R. Johnston et al., Therapeutic Work with Alienated Children and Their Families, 39 FAM. CT. REV. 316, 318 (2001) (explaining that a child's self-esteem is undermined by the belief that one parent is all "bad").* The child concludes that if his or her parent is all "bad," the child is "bad" too. ( *See id.* This leads a child to conceptualize himself or herself as either all "good' or all "bad," making it

hard for the child to cope with any failure ).

169.    *Hence all the above said Defendants have jointly and severely committed the tort of Parental Alienation of Affections by their intentional or reckless acts, and by their outrageous and intolerable conduct. Here the Defendant Laura is the "Alienating Parent" and the Plaintiff is the "Alienated Parent" and all the above-mentioned Defendants have conspired, colluded, willfully participated in the Parental Alienation of Affections Tort with the Alienating Parent, Defendant Laura. The above-mentioned defendants have intentionally disrupted the Plaintiff's Children's relationship with the Plaintiff and have reduced the contact between the Plaintiff's children and the Plaintiff and have intimately induced and brainwashed the Children and have created hatred feelings to the Children as against the Plaintiff. The above said Defendants are psychologically maltreating the Plaintiff's Children and have caused the children worthless, unloved and endangered. The Defendant's have been continuously lying, blackmailing, manipulating the Children and have caused a psychological abuse to the Children. The Plaintiff states that his Children as Adults in future, because of the above said Alienation of Affections can suffer from low self-esteem, self-hatred, self-blame, guilt, depression, alienation of their own children, marital problems and identity issues. The Defendants outrageous, intolerable and wrongful conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights by causing harm to the relationship with the children. It has also caused severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.*

## IV.    <u>FOURTH CAUSE OF ACTION</u>

## <u>INTENTIONAL INTERFERENCE WITH THE PLAINTIFF'S POSSESSORY RIGHTS OF HIS CHILDREN AS TO ALL DEFENDANTS</u>

170.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through. 155 herein,

171.    A Material Change in Circumstances Changes Custody Due to the complications it can create, the presence of parental alienation may qualify as a material change in circumstances and result in a change in custody to the alienated parent. *( See Wade v. Hirschman, 903 So. 2d 928, 935 (Fla. 2005) (affirming the trial court's consideration of parental alienation as a reason to change the custodial arrangement); Proof of Facts, supra note 47, § 8 at 257–58 (listing best interest factors that relate to parental alienation when changing custody). In extreme situations, judges might threaten to remove the child from either parent's custody or place the child in foster care. See Noland-Vance v. Vance, 321 S.W.3d 398, 404 (Mo. Ct. App. 2010) (noting that the trial court warned the mother that if she did not cooperate to facilitate the father's visitation that the three youngest children would be placed in foster care so that the father could exercise visitation)*

172.    To establish a prima facie case for a modification of custody, a parent must first show a material change in circumstances and then show that the change in custody is in the child's best interest. (*In 2005, in Wade v. Hirschman, the Florida Supreme Court directed the lower court to enter an order affirming the father as the primary custodial parent. See 903 So. 2d at 935. The court found that the mother's alienation of the children against their father was a material change in circumstances and that it was in the children's best interest to reside with the father).*

173.    To make the custody determination, a court holds an evidentiary hearing to consider the child's best interest and the allegations of alienating behaviors. Evidence of the alienation is often presented to the court in the form of a child custody evaluation or a guardian ad litem report. These experts are tasked with investigating the family and drafting a report for the court to make a recommendation as to a custody arrangement that will be in the child's best interest. Courts have found parental alienation to constitute a material change of circumstances. For example, *in 2011, in Grove v. Grove 386 S.W.3d at 609* , the Court of Appeals of Arkansas affirmed transferring custody of the children to the father after a finding of parental alienation. The court gave deference

to the trial court's findings that the mother failed to comply with the custody agreement, failed to cooperate in counseling as ordered, alienated the children from the father, sought to limit or terminate contact between the father and the children, and made false accusations against the father in front of the children. (*See id. at 607. The court noted that the trial court found that the mother was alienating the children from the father, making them think he was an evil person by coaching and pressuring them to lie about their father*). In that case, the court found that mother's efforts to alienate the children from the father constituted a material change in circumstances. Changing custody due to parental alienation has also been determined to be in the child's best interest. (***see also Leistner v. Leistner, 524 N.Y.S.2d 243, 244 (App. Div. 1988)*** *(noting that a parent's interference with the relationship between the child and the other parent is "so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent")*.

174.    *In the Present case the Defendants as detailed in the pleading and more specifically Defendant Laura and her Paramour, Defendant have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant*

*Kenneth , Defendant Christine, Defendant Jack, Defendant Nada, Defendant Bradley, being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.*

175.    *Hence all the above said Defendants have jointly and severely committed the tort of Parental Alienation causing Interference with Custody and Visitations of Plaintiff's children by their intentional or reckless acts, and by their outrageous and intolerable conduct.  Here the Defendant Laura is the "Alienating and Custody Parent" and the Plaintiff is the "Alienated and Non-Custody Parent" and all the above-mentioned Defendants have conspired, colluded, willfully participated in the Parental Alienation causing interference with custody and visitations of the Alienated and Non-Custody Parent. The above-mentioned defendants have intentionally disrupted the Plaintiff's Children's relationship with the Plaintiff and have reduced the contact between the Plaintiff's children and the Plaintiff and have intimately induced and brainwashed the Children and have created hatred feelings to the Children as against the Plaintiff. The above said Defendants are psychologically maltreating the Plaintiff's Children and have caused the children worthless, unloved and endangered. The Defendants have been continuously lying, blackmailing, manipulating the Children and have caused a psychological abuse to the Children, which has caused a material change of circumstances entitling Plaintiff to regain custody of his children from the Alienating and Custodial Defendant Laura. The Plaintiff states because of the continues psychological abuse the children are undergoing in the hand of the custodial Defendant Laura; the material change of circumstances have made the custodial parent totally unfit for the upbringing of the children and has   warranted a change of custody of the children to the Plaintiff in the best interests of the Plaintiff's children.   The Plaintiff states that his Children as Adults in future, because of the above said Alienation of Affections can suffer from low self-esteem, self-hatred, self-blame, guilt, depression, alienation of their own children, marital problems and identity issues if the Custody continues with Defendant Laura. The Defendants outrageous,*

*intolerable and wrongful conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights of Visitation and Custody by causing harm to the relationship with the children. Apart from the requirement of the Custodial change of the children from Defendant Laura to the Plaintiff, the continuing Psychological Alienation Abuses which the Children have been suffering in the hands of Defendants Laura have caused severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.*

## V.    FIFTH CAUSE OF ACTION

## CIVIL CONSPIRACY

## AS AGAINST ALL DEFENDANTS

176.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

177.    In addition to modifying custody orders, courts have found a parent in civil contempt of court when the parent withholds or violates a court order. ( ***See Woodward v. Woodward, 776 N.W.2d 567, 570 (N.D. 2009)*** *(defining civil contempt as a willful intent to violate a court order).* To find the parent in contempt, there must be a custody order currently in place, and the parent must demonstrate a willful intent to violate the order. ( ***See id.; Proof of Facts, supra note 47, § 20 at 280–82*** *(explaining that a parent can file contempt if there is a valid child custody order and there is a willful intent to violate it).* For example, in ***2009, in Woodward v. Woodward, the North Dakota Supreme Court*** affirmed the trial court's finding that a mother was in contempt. The trial court did so because they denied the father visitation and failed to undergo an evaluation for parental alienation after an allegation that the mother constantly berated him in front of their children.  (*See id. The father stated that the mother minimized his role as a parent and restricted his access to the children in person and on the phone. See id. at 570*)

178.    In this case, the liberty of both parents is an issue. **They both have a liberty interest to**

direct the upbringing and education of their child(ren) <u>under their control</u> and without State interference. Therefore, the Court may not exercise Parens Patriae Power to resolve a private custody dispute or contributions. The Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a better decision could be made. See *Troxel v. Granville,* 530 *U.S.* 57, 120 *S.Ct.* 2054, 147 *L.Ed.*2d 49 (2000). It is true that a disagreement between the Parties exists. However, s*imply because the decision of a parent is not agreeable to a child or other parent or, because it involves risks* **does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.**

179.    The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Parham,* 442 U.S. at 603 (emphasis in original). Parents and children do not have competing interests, and it is not correct to *presume* or *assume* that parents and children are "adversaries." *Santosky,* 455 U.S. at 760 ("until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship"). Our Constitution treats parents as natural allies of their children. Parham, 442 U.S at 602.

180.    The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to the liberties which derive merely from shifting economic arrangements at 651. The Court concluded "that all parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody" and laid the groundwork for the presumption of parental fitness.

181.    In the present case Defendants LAURA L. GERMADNIG, SIEGFRIED & PATRICIA GERMADNIG, MELISSA & KENNETH REEVES, MARK & STACY GERMADNIG,

SIEGFRIED. JR & BARUS GERMADNIG, CRYSTAL GERMADNIG, SKYE GERMADNIG, DAVID & NICOLE TARNOWSKI, SLAVA KLEYMAN, NANCY CAVANAUGH, LOUIS & JANICE ELWELL, CHRISTINE GILFILLEN, SANDRA SEAMAN, JACK M, NADA PITYINGER, BRETT PITYINGER, DANIEL & KATHLEEN SCHASTNY, BRADELY & RENE MCKEE, ROBERT & CAROL MCKEE, STANLEY & LORI O' BRIAN, CANDY MCKEE,  STEVEN A. ZABARSKY, ESQ., JACKSON TWP. POLICE CHIEF MATTHEW KUNZ, JACKSON TWP. POLICE OFFICER CHRISTOPHER PARISE, OCEAN CTY, NJ PROSECUTOR BRADLEY BILHEIMER, JOHN FOTI JR, MADELINE F. EINBINDER J.S.C., MARLENE L. FORD A.J.S.C, JOHN S. DORAN J.S.C., DEBORAH H. SCHRON J.S.C., JOHN DOES 1-10, JOHN DOES 1-10, XYZ CORPORATIONS have made a Contempt of a judicial order, a fourth-degree crime in violation of *N.J.S.A. 2c:29-9(a) (Four hundred fifty-nine counts);* and Interference with custody of a minor child in violation of 2c:13-4a (Four hundred fifty-nine counts)

182.    *Also in the Present case, due to the fraudulent and fictitious Pendente Lite and FJOD orders of $3,500 per month unallocated support ordered paid to Defendant Laura Germadnig and being forced to pay household carrying charges of $7,857 per month, plus the approximate $4,100 per month, it costs Plaintiff to survive in New Jersey, leaves Plaintiff with nothing to survive on. It is to the point of destroying Plaintiff's financial ability to maintain his financial planning business and destroying Plaintiff's financial ability to survive.  Due to these malicious, fraudulent, and unconstitutional acts by Defendants Zabarsky, Laura Germadnig, and other named Defendants, Plaintiff has been economically devastated and is under continuing threat of deprivations of his constitutionally protected Liberties by civil coercive contempt of court and forced labor.*

183.    *The Plaintiff states that his Children as Adults in future, because of the above said Alienation of Affections can suffer from low self-esteem, self-hatred, self-blame, guilt, depression,*

alienation of their own children, marital problems and identity issues if the Custody continues with Defendant Laura. The Defendants outrageous, intolerable and wrongful conduct in interfering with the Plaintiff's parental rights by continuously violating all the court orders of Visitation for the Plaintiff has prevented the Plaintiff from exercising his parental rights of Visitation and Custody by causing harm to the relationship with the children. Apart from continuing Psychological Alienation Abuses which the Children have been suffering in the hands of Defendants, the Defendants have caused Contempt of Court Orders, by violating the several court orders including visitation right orders for the Plaintiff which has caused  severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.

## VI.   <u>SIXTH CAUSE OF ACTION</u>

### <u>VIOLATION OF THE PLAINTIFF'S RIGHT TO PRIVACY</u>

### <u>AS TO ALL DEFENDANTS</u>

184.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

185.    Invasion of privacy is the considered the intrusion upon, or revelation of, something private. *Huskey v. National Broadcasting Co*., 632 F. Supp. 1282 (N.D. Ill. 1986). One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his/her private affairs or concerns, is subject to liability to the other for invasion of privacy. *Jackson v. Playboy Enterprises, Inc*., 574 F. Supp. 10 (S.D. Ohio 1983). The law of privacy consists of four distinct types of invasion. The right of privacy is invaded when there is: (1) unreasonable intrusion upon the seclusion of another (2) appropriation of the other's name or likeness, (3) unreasonable publicity given to the other's private life, and (4) publicity which unreasonably places the other in a false light before the public. See *Klipa v. Board of Education*, 54 Md. App. 644 (Md. Ct. Spec.

App. 1983).

186. An invasion of the right of privacy by any of the above four courses of conduct may give rise to a cause of action and, on occasion, there may be an overlapping or concurrent invasion by any or all of the above means working toward the injury of the plaintiff. Liability for a claim of invasion of privacy by intrusion must be based upon an *intentional interference* with the plaintiff's interest in solitude or seclusion, either as to his/her person or as to his/her private affairs or concerns. *Uranga v. Federated Publs., Inc.*, 138 Idaho 550 (Idaho 2003).

187. *In early 2014, Defendant Laura Germadnig had spy software installed on Plaintiff's cell phone. In a Notice of Cross-Motion To Enforce Litigant's Rights Pursuant to Rule 1:10-3 and For Other Relief, returnable August 1, 2014, filed by Defendant Laura Germadnig and Defendant Zabarsky, they provided evidence that they had received documentation of my texts without my knowledge. At pp. 6-8, paragraphs 9-11 citing EXHIBIT "D", Defendants Laura Germadnig and Zabarsky admit they had accessed Plaintiff's cell phone through the parties' 11-year-old daughter's cell phone being used to access Plaintiff's search mode for his telephone.*

188. *Defendant Laura Germadnig and her attorney, Defendant Zabarsky's attempt to bamboozle the Family Court Judge by stating at pg. 6, paragraph 9 of the July 16, 2014, certification, the following: "The Plaintiff has a Familyware cellular telephone plan through T-Mobile. The family plan allows him to monitor our daughters', Sonya and Milana's use of their cellular telephones. Because this is a "Familyware plan", not only can the Plaintiff monitor their cellular telephone use, but our daughters can also see whatever the Plaintiff searches or transacts on his cellular telephone". There is no such thing as a "Familyware" cellular telephone plan by T-Mobile. The app is called "Familywhere". On or about July 20, 2014, Plaintiff personally contacted T-Mobile, and spoke to a technology representative named Sandy, who confirmed that there is no such technology of mirroring of another person's cell phone—except for a spy software installation.*

189.    *On February 28, 2015, Plaintiff had a vehicle bug sweep inspection done because Defendant Laura Germadnig has been texting and contacting Plaintiff about all of his movements of where he has been.  On April 21, 2015, USA bug sweeps, Inc., TSCM "Debugging" Experts gave Plaintiff a report that they conducted a Level 1 Physical and Basic RF Inspection on Plaintiff's gray 2004 Ford Taurus vehicle, New Jersey Registration P82-ECN.  The Level 1 Basic Physical & RF Inspection revealed that even though there were no signs of a GPS tracker installed on the OUTSIDE of the vehicle, the multi-frequency RF detector that was used did detect an unidentified intermittent radio signal that registered a distinct signal in the area inside of the Plaintiff's vehicle.  This signal is similar to that of a hardwired GPS tracker.  Such hardwired devices can be buried under the dash or in the side panels of the vehicle.  Because of financial constraints, Plaintiff was unable to perform a more advanced Level 3 Electronic Inspection. Besides the bugging of Plaintiff's vehicle, the phone tapping of Plaintiff's cell phone are violations of Federal Wiretapping Laws, 18 U.S.C. §2510 et seq.  They are also violation of New Jersey Wiretapping Laws, N.J.S.A. 2A:156A-4(c).*

190.    *Apart from the continuing Psychological Alienation Abuses which the Children have been suffering in the hands of Defendants, all the Defendants have caused  severe emotional distress to the Plaintiff by way of their acts and conducts of Intrusion to privacy against the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.*

## VII.    SEVENTH CAUSE OF ACTION

## MALICIOUS PROSECUTION / ABUSE OF PROCESS

## AS TO RICO DEFENDANTS

191.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

192.    The Plaintiff in this action allege that these Defendant are liable for abuse of process.  There

are two basic elements necessary to sustain the cause of action of abuse of process. They are (1) that the defendant made an improper, illegal and perverted use of the legal procedure, that is to say, his/her resort to the legal process was neither warranted nor authorized by law and (2) that the defendant had an ulterior motive in initiating the legal process. In other words, abuse of process is the misuse or misapplication of the legal procedure in a manner not contemplated by law. Specifically, the plaintiff contends that the defendant utilized the legal process to intimidate, harass and coerce the plaintiff in order to obtain a collateral advantage. In other words, the plaintiff contends that the defendant invoked the legal process to accomplish some unlawful end, namely, to compel the plaintiff to do some collateral thing which he/she could not legally be compelled to do. In short, in order for the plaintiff to prevail in this action, he/she must prove by a preponderance of the evidence that the defendant made an improper, illegal, and perverted use of the process and that there existed an ulterior motive or purpose on part of the defendant.

193.    *Defendant Laura Germadnig, upon advice from Defendant Coneeny, Esq., and under false and fraudulent probable cause committed by Defendant Eluzzi, filed a domestic violence complaint, with underlying criminal harassment charge, against the Plaintiff falsely, maliciously and without probable cause. Plaintiff was falsely arrested and falsely imprisoned without probable cause by Jackson Township Police chief Matthew Kunz, Police officer Christopher Parisi, as a direct result of malicious actions caused by Defendant Eluzzi, and without legal justification, maliciously, without probable cause, these Defendants confined Plaintiff within set boundaries— a jail cell and or interfered with the wellness check of the children at Plaintiff's requests to the police station. They further refused to investigate violations by their subordinate police officers. Plaintiff was aware of the confinement and was therefore damaged and suffered special grievance. The matter was terminated in Plaintiff's favor. As a result of these Defendant's actions Plaintiff sustained harm and was damaged.*

194.    *Defendants, Jackson School District and respective Principals of Jackson Liberty HS,*

*Christa McAuliffe Middle school, Crawford Rodriguez elementary school, refused to provide access to Plaintiff's three children in collusion with illegal orders hampering parental rights and repeatedly refused to accept the JURY VERDIT ORDER of Sep 06,2019 and challenged Plaintiff to sue them. All principals harassed Plaintiff when seeking report cards and seeking help for Plaintiff's children who all had POOR struggling grades; threatened to call police if Plaintiff attempted to attend kids' graduation ceremonies from these public institutions.*

195.    *Plaintiff's Four Previous Lawyers, Stephanie J. Brown, August J. Landi, Margie McMahon, David Schlendorf, intentionally or incompetently never cited Plaintiff's constitutional rights or filed anything in the courts asserting INALIENABLE constitutionally protected parental rights and thus have committed the TORTS. Defendants, Jackson Twsp. Police chief Matthew Kunz and Jackson Township Police officer Christopher Parise deliberately interfered and refused to take in police reports on Plaintiff's complaints and harassed Plaintiff when he called in to request wellness checks on his children since the beginning starting in 2014.*

196.    *By having Plaintiff arrested without any probable cause to do so, Defendants Coneeny, Laura Germadnig, Steven A. Zabarsky, Esq., the Law firm, Cowan & Gunteski, Melissa Reeves, Kenneth Reeves, Siegfried Germadnig, and Patricia Germadnig, Plaintiff's previous Lawyers Stephanie, August, Margie and David and Plaintiff's Children's School principals of Christa Mcaulifee Middle School, Jackson Liberty High School, Crawford Rodriguez Elementary School, including Jackson Township Police Chief Matthew Kunz and Police Officer have all used the state court process for their own wrongful ends. As a result of his arrest, Plaintiff suffered damages and a special grievance. The domestic violence matter and underlying criminal matter were terminated favorably to Plaintiff. As a result of the above acts of the Defendants the Plaintiff suffered damages and a special grievance hence entitled for maximum Compensatory and Punitive Damages.*

## VIII.  EIGHTH CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTION 1983

### AS TO ALL DEFENDANTS

197.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

198.    The US Courts have repeatedly invoked the United States Constitution to protect the parent-child relationship. Although this protection has been extended to the full range of familial relationships, the jurisprudence generally does not address a variety of "nontraditional" [The term "traditional family" is extremely misleading. Generally, it has been applied to a family consisting of married parents with children born from the marriage. This definition assumes that families come in one dominant style and designates all other types "nontraditional."] relationships that exist in today's society. Thus, the case law provides guidance with respect to the "traditional" parent-child relationship but leaves many questions unanswered in the nontraditional realm.

199.    *By having Plaintiff arrested without any probable cause to do so, Defendants Coneeny, Laura Germadnig, Steven A. Zabarsky, Esq., the Law firm, Cowan & Gunteski, Melissa Reeves, Kenneth Reeves, Siegfried Germadnig, and Patricia Germadnig, Plaintiff's previous Lawyers Stephanie, August, Margie and David and Plaintiff's Children's School principals of Christa Mcaulifee Middle School, Jackson Liberty High School, Crawford Rodriguez Elementary School, including Jackson Township Police Chief Matthew Kunz and Police Officer have all used the state court process for their own wrongful ends. As a result of his arrest, Plaintiff suffered damages and a special grievance. The domestic violence matter and underlying criminal matter were terminated favorably to Plaintiff.*

200.    *The Plaintiff thus states in the present case, that all Defendant's named have failed to protect the Child's Constitutional rights by exploiting, harassing and abusing them and in spite of all the efforts of the Plaintiff to safeguard his children, Defendant Attorneys, Defendant Judges*

*and Defendant Police Departments, Plaintiff's Children's Schools, Defendants CPA'S all failed to protect and safeguard the Constitutional Rights of the Children as guaranteed by the US Constitution. As a result of the above acts of the Defendants the Plaintiff suffered damages and a special grievance hence entitled for maximum Compensatory and Punitive Damages.*

## IX.    NINTH CAUSE OF ACTION

## VIOLATION OF THE EQUAL PROTECTION CALUSE OF THE US CONSTITUTION AS TO ALL DEFENDANTS

201.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

202.    The United States Supreme Court has held that "[a] fair trial in a fair tribunal is a basic requirement of due process *[In re Murchison, 349 U.S. 133, 136 (1955) (the Constitution requires that hearings take place before an impartial tribunal)].* Fundamental to the notion of a fair trial and tribunal is the principle that a judge shall apply the law impartially and free from the influence of any personal biases *[West Virginia Judicial Inquiry Comm'n v. Dostert, 271 S.E.2d 427, 434 (W. Va.1980)].* And yet, judges deserve themselves and the system if they presume that bias and prejudice do not enter the decision-making process to some degree. As one judge observed, "to recognize the existence of such prejudices is the part of wisdom."

203.    *Plaintiff has learned that Defendant Zabarsky has personal and professional relationships with Family Part Judge Madelin F. Einbinder. Plaintiff had hired attorney August Landi, Esq., in August 2014, to represent Plaintiff. Landi told Plaintiff directly that Defendant Zabarsky had mentored Judge Einbinder before she became a judge and helped her with her law practice. Plaintiff was told directly that Zabarsky was a prime mover to get Judge Einbinder on the bench in County.*

204.    *Plaintiff's former attorney, August Landi, Esq., in his October 2014 motion filing brought*

this to the Family Court's attention about racial, religious, and nationality discrimination issues and Family Court Judge Madelin F. Einbinder ignored it. Plaintiff has since tried to reapply for his passport twice but the applications were rejected due to Judge Einbinder's order precluding Plaintiff from obtaining a replacement passport since Plaintiff's passport was stolen by a friend of Defendant Laura Germadnig and given to Ms. Germadnig for use against Plaintiff in the divorce and child custody matter, These comments are indicative of the racial discrimination against Plaintiff in the family court matter and Judge Madelin F. Einbinder, J.S.C with bias, unfairly and intentionally ignored it to favor the Defendants Zabarsky and the Law Firm.

205. Defendants Zabarsky and the Law firm were involved in mail fraud and wire fraud by sending threatening letters and faxes to Plaintiff and his counsel to extort monies out of Plaintiff he did not have because they were fabricated by Zabarsky and Defendant Law firm. These threatening letters and faxes are putting Plaintiff under threat of contempt, arrest and incarceration. This mail fraud and wire fraud included mailings and faxes of unjust, inequitable and unconstitutional orders against Plaintiff that were issued and filed by Judge Einbinder, as said orders were conducted ex parte. Additionally, Plaintiff and his counsel were denied any defense or ability-to-pay hearings against the financial fabrications by Defendants Zabarsky, the Law firm, and Cowan and Gunteski, because Judge Einbinder was beholden to Defendant Zabarsky and Defendant Law firm.

206. Defendants, Steven A. Zabarsky, Esq., Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, John Does 1-10, Jane Does,1-10, XYZ Corporations- Submitted FALSE CIS, Fabricated financial statements. They told Laura Germadnig to NOT let Plaintiff see his kids for more child support as found in .wood police report. They also filed a Jackson police report to EXTORT attorney fees while he is a municipal prosecutor. He refused to recuse himself due to conflict with presiding judges as his best friends and former work colleagues and filed false rebuttals to disallow Plaintiff to remove

*HALF of household furnishings to establish Plaintiff's own apt. He also refused to timely respond to Plaintiff's four divorce attorneys or cooperate to resolve divorce. Defendants, Joseph Gunteski CPA, COWAN GUNTESKI & CO forensic accountants, submitted preliminary reports as final Forensic accounting reports leading to erroneous FJOD. Defendants, Seth Arkush MBA,MSW,LCSW, Integrated Care Concepts LLC also Submitted false personality report without ever meeting Plaintiff in violation of HIPPA rules and colluded to violate parent child relationship with co-defendants.*

207.   *The Plaintiff states that in in the present case, all the above Defendants and the Defendant's Attorneys, Defendants CPA's willfully, knowing and intentionally violated Equal and Fair Justice and contributed to the Judicial Bias by conspiring with the Judicial Officers in blatant violation of the due process of laws. As a result of the above acts of the Defendants the Plaintiff suffered damages and a special grievance hence entitled for maximum Compensatory and Punitive Damages.*

## X.    TENTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### AS TO ALL TORT AND RICO DEFENDANTS

208.   Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

209.   Intentional Infliction of Emotional Injury/Distress: The history of claims for intentional infliction of emotional distress reflects a gradual growth in the State of New Jersey. In a non-matrimonial case, the Law Division has recognized that extreme or outrageous conduct could give rise to such cause of action. *Hume v. Bayer, 178 N.J.Super 310, 428 A2d. 966 (Law Div. 1981).* Both Hafner and Hume refer to the Restatement (Second) of Torts, Sec. 46D (1965) contained the quote "outrageous conduct as causing severe emotional distress".

210.   Section 46 provides: *"(1) One who by extreme and outrageous conduct intentionally or*

*recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (2) When such conduct is directed at a third person, the actor is subject to liability is he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who was present at the time, whether or not such distress results in bodily harm or (b) to any other person who is present at the time, if such distress results in bodily harm."*

211.    To establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must **first,** intend to do the act. Liability will also attach when a defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Hume, supra 178 N.J.Super 319.* **Second**, the defendant's conduct must be extreme and outrageous. *Hume, supra 178 N.J.Super at 315.* The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community." Restatement, supra, Sec.46D. **Third,** the defendant's action must have been the proximate cause of the plaintiff's emotional distress. *Caputzal v. Lindsay, 48 N.J. 69, 77-78, 222 A2d. 513(1966).* **Fourth,** the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." Restatement, supra, Sec. 46J. W. Prosser & P. Keaton, Handbook on Torts, par. 12 at p.55 (5th ed. 1984)

212.    Defendants are liable to plaintiff for the tort of negligent intentional infliction of emotional distress in that (a) the acts of the Defendants and Plaintiff's emotional distress resulting therefrom were the result of intentional and/or reckless conduct on the part of Defendants; (b) the conduct was extreme and outrageous; (c) the conduct of Defendants was the proximate cause of the emotional injuries sustained by Plaintiff; and (d) the emotional distress sustained by Plaintiff was

genuine and substantial and had a demonstrable negative effect on his life and work and has forced Plaintiff to seek medical and  or psychological attention.

213.    *In the Present case the Defendants as detailed in the pleading and more specifically Defendant Laura and her Paramour, Defendant have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth , Defendant Christine, Defendant Jack, Defendant Nada, Defendant Bradley, being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.*

214.    *Defendants verbally and mentally abused Plaintiff and treated him in a demeaning and inferior manner, which no   reasonable person could be expected to endure. As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in  bodily injury, and damages, including punitive damages, to be determined at trial. Defendants' breach of this duty directly and proximately caused Plaintiff to suffer genuine and substantial emotional distress. Plaintiff's emotional distress manifested itself in fear, humiliation, depression, heart palpitations, mania, insomnia, anxiety attacks, suicidal*

*ideation, panic attacks,  shortness of breath and headaches.*

215.    *In addition to compensatory damages, Plaintiff Zia Shaikh hereby make a claim for punitive damages against all Defendants in an amount to be proven at trial for the willful and wanton acts, omissions, commissions of all Defendants, to include violation of Plaintiff's civil rights, as alleged in this Complaint.*

216.    *The Negligent and Intentional acts and omissions of all Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others through malicious prosecution, false arrest/false imprisonment without probable cause that constitutes assault and kidnapping, including Plaintiff. All Defendants committed the acts and omissions alleged in this Complaint and subjected Plaintiff to outrageous improper treatment that caused Plaintiff to suffer financial and emotional distress so severe and outrageous that no person should be expected to endure it. All Defendants actions were outrageous and should be punished, and an example should be made so that these actions, commissions, and omissions are not repeated. The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others and is thus appropriate in this case. This instance of reckless and callous indifference to Plaintiff's safety and Constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that must not be tolerated.*

217.    *As a result of  the Negligent and Intentional conduct of Defendants, jointly and severally, Plaintiff has suffered compensatory damages, including, but not  limited to the loss of his employment, including back and front pay, social security, fringe benefits, medical benefits, future earnings, emotional pain and suffering, physical pain and suffering, attorney's fees, and such other actual damages as permitted for recovery by the laws of the State  of New Jersey and the United States of America.*

218.    *The Negligent and Intentional conduct of the Defendants, each  of them, was willful and*

*wanton. Therefore, Plaintiff demands judgment against the Defendants jointly and severely for compensatory and punitive damages, together with reasonable attorney's fees, costs of suit and such further relief as the Court may deem equitable and just.*

## CLAIMS OF RELIEF

## CLAIM FOR RELIEF- TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

219.   Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

220.   *WHEREFORE, Plaintiff Zia Shaikh, respectfully demands judgment against Defendants* Laura L. Germadnig, Siegfried & Patricia Germadnig, Melissa & Kenneth Reeves, Mark & Stacy GERMADNIG, Siegfried Jr & Barus Germadnig, Crystal Germadnig, Skye Germadnig, David & Nicole Tarnowski, Slava Kleyman, Nancy Cavanaugh, Louis & Janice Elwell, Christine Gilfillen, Sandra Seaman, Jack M, Nada Pityinger, Brett Pityinger, Daniel & Kathleen SCHASTNY, Bradely & Rene Mckee, Robert & Carol Mckee, Stanley & Lori O' Brian, Candy Mckee, Steven A. Zabarsky, Esq., Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Cathleen Christie-Coneeny, Esq., Legal Malpractice Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan Gunteski & Co, John R. Wiley Jr. CPA, ABV, CGMA, manager of the ethics committee, Seth Arkush, Integrated Care Concepts LLC, Jackson School District, Principal of Jackson Liberty HS, Principal of Christa Mcaulifee Middle School, Principal of Crawford Rodriguez elementary School, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr, Madeline f. Einbinder j.s.c., Marlene l. Ford a.j.s.c., John s. Doran

j.s.c., Deborah H. Schron j.s.c., John Does 1-10, John Does 1-10, XYZ Corporations,

*individually for:*

221.    A)    Damages in the amount of $50,000,000.00, and

222.    B)    Punitive Damages in the amount of $100,000,000.00, and

223.    C)    Awarding any counsel fees obtained by Plaintiff's counsel, and

224.    D)    Awarding costs of suit, and

225.    E)    Interest, and

226.    F)    Damages for Pain and Suffering, and

227.    G)    For such other relief as the Court may determine to be appropriate.


## CLAIM FOR RELIEF- TORT OF PARENTAL ALIENATION SYNDROME

228.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above

paragraphs, as though fully set forth herein.

229.    *WHEREFORE, Plaintiff  Zia Shaikh, respectfully demands judgment against Defendants*

Laura L. Germadnig, Siegfried & Patricia Germadnig, Melissa & Kenneth Reeves, Mark

& Stacy GERMADNIG, Siegfried Jr & Barus Germadnig, Crystal Germadnig, Skye

Germadnig, David & Nicole Tarnowski, Slava Kleyman,  Nancy Cavanaugh, Louis &

Janice Elwell, Christine Gilfillen, Sandra Seaman, Jack M, Nada Pityinger, Brett

Pityinger, Daniel & Kathleen SCHASTNY, Bradely & Rene Mckee, Robert & Carol

Mckee, Stanley & Lori O' Brian, Candy Mckee, Steven A. Zabarsky, Esq., Kimberly

Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier

for Citta, Holzapfel & Zabarsky, Cathleen Christie-Coneeny, Esq., Legal Malpractice

Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan

Gunteski & Co, John R. Wiley Jr. CPA, ABV, CGMA, manager of the ethics committee,

Seth Arkush, Integrated Care Concepts LLC, Jackson School District, Principal of

Jackson Liberty HS, Principal of Christa Mcaulifee Middle School, Principal of Crawford Rodriguez elementary School, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr, Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran J.S.C., Deborah H. Schron J.S.C.,  John Does 1-10, John Does 1-10, XYZ Corporations, *individually for:*

    A)   Damages in the amount of $50,000,000.00, and

    B)   Punitive Damages in the amount of $100,000,000.00, and

    C)   Awarding any counsel fees obtained by Plaintiff's counsel, and

    D)   Awarding costs of suit, and

230.    E)   Interest, and

231.    F)   Damages for Pain and Suffering, and

232.    G)   For such other relief as the Court may determine to be appropriate.

## CLAIM FOR RELIEF- TORT OF INTENTIONAL INTERFERENCE WITH CUSTODY OF CHILDREN

233.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

234.    *WHEREFORE, Plaintiff  Zia Shaikh, respectfully demands judgment against Defendants* Laura L. Germadnig, Siegfried & Patricia Germadnig, Melissa & Kenneth Reeves, Mark & Stacy GERMADNIG, Siegfried Jr & Barus Germadnig, Crystal Germadnig, Skye Germadnig, David & Nicole Tarnowski, Slava Kleyman,  Nancy Cavanaugh, Louis & Janice Elwell, Christine Gilfillen, Sandra Seaman, Jack M, Nada Pityinger, Brett Pityinger, Daniel & Kathleen SCHASTNY, Bradely & Rene Mckee, Robert & Carol

Mckee, Stanley & Lori O' Brian, Candy Mckee, Steven A. Zabarsky, Esq., Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Cathleen Christie-Coneeny, Esq., Legal Malpractice Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan Gunteski & Co, John R. Wiley Jr. CPA, ABV, CGMA, manager of the ethics committee, Seth Arkush, Integrated Care Concepts LLC, Jackson School District, Principal of Jackson Liberty HS, Principal of Christa Mcaulifee Middle School, Principal of Crawford Rodriguez elementary School, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran J.S.C., Deborah H. Schron J.S.C.,  John Does 1-10, John Does 1-10, XYZ Corporations, i*ndividually for:*

A)   Damages in the amount of $50,000,000.00, and

B)   Punitive Damages in the amount of $100,000,000.00, and

C)   Awarding any counsel fees obtained by Plaintiff's counsel, and

D)   Awarding costs of suit, and

E)   Interest, and

F)   Damages for Pain and Suffering, and

G)   For such other relief as the Court may determine to be appropriate.

## CLAIM FOR RELIEF- TORT OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

235.   Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

236.    *WHEREFORE, Plaintiff  Zia Shaikh, respectfully demands judgment against Defendants* Laura L. Germadnig, Siegfried & Patricia Germadnig, Melissa & Kenneth Reeves, Mark & Stacy GERMADNIG, Siegfried Jr & Barus Germadnig, Crystal Germadnig, Skye Germadnig, David & Nicole Tarnowski, Slava Kleyman,  Nancy Cavanaugh, Louis & Janice Elwell, Christine Gilfillen, Sandra Seaman, Jack M, Nada Pityinger, Brett Pityinger, Daniel & Kathleen SCHASTNY, Bradely & Rene Mckee, Robert & Carol Mckee, Stanley & Lori O' Brian, Candy Mckee, Steven A. Zabarsky, Esq., Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Cathleen Christie-Coneeny, Esq., Legal Malpractice Insurance Carrier for Cathleen Christie-Coneeny, Esq., Joseph Gunteski CPA, Cowan Gunteski & Co, John R. Wiley Jr. CPA, ABV, CGMA, manager of the ethics committee, Seth Arkush, Integrated Care Concepts LLC, Jackson School District, Principal of Jackson Liberty HS, Principal of Christa Mcaulifee Middle School, Principal of Crawford Rodriguez elementary School, Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr, Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran J.S.C., Deborah H. Schron J.S.C.,  John Does 1-10, John Does 1-10, XYZ Corporations, *individually, for:*

A)    Damages in the amount of $50,000,000.00, and

B)    Punitive Damages in the amount of $100,000,000.00, and

C)    Awarding any counsel fees obtained by Plaintiff's counsel, and

D)    Awarding costs of suit, and

E)    Interest, and

F)    Damages for Pain and Suffering, and

G)   For such other relief as the Court may determine to be appropriate.


## CLAIM FOR RELIEF- TORT OF INVASION OF PRIVACY

237.   Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above

paragraphs, as though fully set forth herein.

238.   *WHEREFORE, Plaintiff  Zia Shaikh, respectfully demands judgment against Defendants*

*Steven A. Zabarsky, Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal*

*malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Coneeny, Laura*

*Germadnig,* Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran

J.S.C., Deborah H. Schron J.S.C., *Bradley Bilheimer, Defendant Laura and her*

*Paramour, Defendant Siegfried and Defendant Patricia, Defendant Mark, Defendant*

*Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye,*

*Defendant David, Defendant Nicole, Defendant Slava, Defendant Nancy, Defendant*

*Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth , Defendant Christine,*

*Defendant Jack, Defendant Nada, Defendant Brett, Defendant August, Defendant*

*Margie, Defendant David, Defendant Stephanie individually, for:*

A)   Damages in the amount of $50,000,000.00, and

B)   Punitive Damages in the amount of $100,000,000.00, and

C)   Awarding any counsel fees obtained by Plaintiff's counsel, and.

D)   Awarding costs of suit, and

E)   Interest, and

F)   Damages for Pain and Suffering, and

G)   For such other relief as the Court may determine to be appropriate.

## CLAIM FOR RELIEF- MALICIOUS PROSECUTION

239.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above

paragraphs, as though fully set forth herein.

240.    *WHEREFORE, Plaintiff Zia Shaikh, respectfully demands judgment against Defendants*

*Steven A. Zabarsky, Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal*

*malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Coneeny, Laura*

*Germadnig, Eluzzi,* Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq,

David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township

Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti

Jr, Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran J.S.C.,

Deborah H. Schron J.S.C.,  John Does 1-10, John Does 1-10, XYZ Corporations,

*individually, jointly and severally for:*

   A)    Damages in the amount of $50,000,000.00, and

   B)    Punitive Damages in the amount of $100,000,000.00, and

   C)    Awarding any counsel fees obtained by Plaintiff's counsel, and

   D)    Awarding costs of suit, and

   E)    Interest, and

   F)    Damages for Pain and Suffering, and

   G)    For such other relief as the Court may determine to be appropriate.


## CLAIM FOR RELIEF- MALICIOUS ABUSE OF PROCESS

241.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above

paragraphs, as though fully set forth herein.

242.    *WHEREFORE, Plaintiff Zia Shaikh, respectfully demands judgment against Defendants*

*Coneeny, Laura Germadnig, Steven A. Zabarsky, Esq., the Law firm, Cowan & Gunteski,*

*Melissa Reeves, Kenneth Reeves, Siegfried Germadnig, and Patricia Germadnig,* Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr, Madeline F. Einbinder J.S.C., Marlene L. Ford A.J.S.C., John S. Doran J.S.C., Deborah H. Schron J.S.C.,  John Does 1-10, John Does 1-10, XYZ Corporations  *individually, jointly and severally for:*

A)   Damages in the amount of $50,000,000.00, and

B)   Punitive Damages in the amount of $100,000,000.00, and

C)   Awarding any counsel fees obtained by Plaintiff's counsel, and

D)   Awarding costs of suit, and

E)   Interest, and

F)   Damages for Pain and Suffering, and

G)   For such other relief as the Court may determine to be appropriate.


## CLAIM FOR RELIEF- FALSE IMPRISONMENT / VIOLATION OF 4TH AMENDMENT

243.   Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

244.   *WHEREFORE, Plaintiff  Zia Shaikh, respectfully demands judgment against Defendants Coneeny, Eluzzi, Laura Germadnig, Steven A. Zabarsky, Esq., the Law firm* Stephanie J. Brown Esq, August J. Landi Esq, Margie McMahon Esq, David Schlendorf Esq, Jackson Twsp. Police Chief Matthew Kunz, Jackson Township Police Officer Christopher Parise, Ocean Cty NJ Prosecutor Bradley Bilheimer, John Foti Jr, Madeline F. Einbinder J.S.C.,

Marlene L. Ford A.J.S.C., John S. Doran J.S.C., Deborah H. Schron J.S.C., John Does 1-10, John Does 1-10, XYZ Corporations, *individually, jointly and severally for:*

245.    A)    Damages in the amount of $50,000,000.00, and

246.    B)    Punitive Damages in the amount of $ 100,000,000.00, and

247.    C)    Awarding any counsel fees obtained by Plaintiff's counsel, and

248.    D)    Awarding costs of suit, and

249.    E)    Interest, and

250.    F)    Damages for Pain and Suffering, and

251.    G)    For such other relief as the Court may determine to be appropriate.


**<u>DAMAGE CLAIMS AGAINST ALL DEFENDANTS- PUNITIVE DAMAGES</u>**

252.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

253.    In addition to compensatory damages, Plaintiff Zia Shaikh hereby make a claim for punitive damages against all Defendants in an amount to be proven at trial for the willful and wanton acts, omissions, commissions of all Defendants, to include violation of Plaintiff's civil rights, common law tort as alleged in this Complaint.

254.    The acts and omissions of all Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others through malicious prosecution, false arrest/false imprisonment without probable cause that constitutes assault and kidnapping, including Plaintiff. All Defendants committed the acts and omissions alleged in this Complaint and subjected Plaintiff to outrageous improper treatment that caused Plaintiff to suffer financial and emotional distress so severe and outrageous that no person should be expected to endure

it. All Defendants actions were outrageous and should be punished, and an example should be made so that these actions, commissions, and omissions are not repeated.

255.   The recovery of punitive damages is permitted under the federal civil rights statutes and for common law torts for reckless and callous indifference to the federally protected rights of others and is thus appropriate in this case. This instance of reckless and callous indifference to Plaintiff's safety and Constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that must not be tolerated.

**<u>CLAIM FOR RELIEF -</u>VIOLATION OF 42 U.S.C. §1981 AGAINST ALL DEFENDANTS**

256.   Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

257.   **WHEREFORE**, Plaintiff  Zia Shaikh, respectfully demands judgment against All Defendants individually, jointly and severally for:

A)   Damages in the amount of $10,000,000.00, and

B)   Punitive Damages in the amount of $50,000,000.00, and

C)   Awarding any counsel fees obtained by Plaintiff's counsel, and

D)   Awarding costs of suit, and

E)   Interest, and

F)   Damages for Pain and Suffering, and

G)    For such other relief as the Court may determine to be appropriate.

## CLAIM FOR RELIEF- VIOLATION OF 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

258.    Plaintiff Zia Shaikh incorporates by reference the allegations contained in the above paragraphs, as though fully set forth herein.

259.    **WHEREFORE**, Plaintiff Zia Shaikh, respectfully demands judgment against All Defendants individually, jointly and severally for:

A)    Damages in the amount of $10,000,000.00, and

B)    Punitive Damages in the amount of $50,000,000.00, and

C)    Awarding any counsel fees obtained by Plaintiff's counsel, and

D)    Awarding costs of suit, and

E)    Interest, and

F)    Damages for Pain and Suffering, and

G)    For such other relief as the Court may determine to be appropriate.

## XI.    ELEVENTH CAUSE OF ACTION

## FALSE IMPRISONMENT

## AS TO RICO DEFENDANTS

260.    Plaintiff hereby incorporates all preceding facts and allegations contained in paragraphs 1 through 151 herein,

261.    The restraint or detention by one person of another without lawful justification (probable cause, a valid arrest warrant, or consent) under an asserted legal authority to enforce the process of the law. False arrest is also referred to as false imprisonment and is generally considered a misdemeanor offense. Some jurisdictions distinguish between false arrest and false imprisonment, maintaining that a charge for false arrest requires the arresting party to have asserted the legal authority to make arrests. Such jurisdictions consider false imprisonment to consist of any

unlawful restraint made, with or without claim of authority.

262.    The word 'false' in the phrase refers to the illegality of the restraint. It is not a measure of whether the individual was actually restrained to the extent which they perceived. False arrest refers to private as well as governmental detentions and does not require any malice or bad faith on the offender's part to make them guilty of the offense. An individual may honestly believe they have the authority to make an arrest and still be found guilty. Police officers, however, are generally immune to false arrest claims.

263.    False imprisonment is an act punishable under criminal law as well as under tort law. Under tort law, it is classified as an intentional tort. A person commits false imprisonment when he commits an act of restraint on another person which confines that person in a bounded area. For a Prima Facie Case:  The defendant should willfully act, intending to confine the plaintiff without the plaintiff's consent and without authority of law the defendant's act causes the plaintiff's confinement the plaintiff is aware of his/her own confinement.  An act of restraint can be a physical barrier (such as a locked door), the use of physical force to restrain, a failure to release, or an invalid use of legal authority.  An area is only bounded if freedom of movement is limited in all directions.  If there is a reasonable means of escape from the area, the area is not bounded. However, if the means of escaping will result in the risk of physical harm to the detainee, then the area is bounded. Further, threatening to harm the detainee's family if the detainee leaves would also result in the area being bounded. Threats of immediate physical force may also be sufficient to be acts of restraint. A mere threat to imprison will not qualify for false imprisonment. Typically, when determining whether a threat counts as false imprisonment, the court will look at whether the plaintiff had a just fear of injury.

264.    Invalid Use of Legal Authority:  An invalid use of legal authority is the detainment or arrest of a person without a warrant, with an illegal warrant, or with a warrant illegally executed. So long as the person is deprived of his personal liberty, the amount of time actually detained is

inconsequential. *See, e.g., Schenck v. Pro Choice Network, 519 U.S. 357 (1997)*

265.    *The fraudulent Enterprise known as the Township of Jackson, Jackson Township Police Department, the named Jackson Township police officers and officials, and Defendant Zabarsky (who is municipal prosecutor for Jackson Township and 18 other  County municipalities) unlawfully uses police power to harass, abuse, threaten, intimidate, assault, and kidnap persons, like Plaintiff, through false arrest and false imprisonment, to obtain unfair advantage in a civil matter, namely a divorce, child custody and support dispute, in order to extract and extort through unlawful coercion as much as they can from Plaintiff, including presenting false and fraudulent testimony and evidence that Plaintiff and others similarly situated have more money than what is in reality, along with others similarly situated, no matter what their circumstances, financially or otherwise, may be.*

266.    *By having Plaintiff arrested without any probable cause to do so, Defendants Coneeny, Laura Germadnig, Steven A. Zabarsky, Esq., the Law firm, Cowan & Gunteski, Melissa Reeves, Kenneth Reeves, Siegfried Germadnig, and Patricia Germadnig, Plaintiff's previous Lawyers Stephanie, August, Margie and David and Plaintiff's Children's School principals of Christa Mcaulifee Middle School, Jackson Liberty High School, Crawford Rodriguez Elementary School, including Jackson Township Police Chief Matthew Kunz and Police Officer  have all used the state court process for their own wrongful ends. As a result of his arrest, Plaintiff suffered damages and a special grievance. The domestic violence matter and underlying criminal matter were terminated favorably to Plaintiff.*

267.    *Plaintiff was falsely arrested and falsely imprisoned without probable cause by Defendants Jackson Township, Jackson Township Police Department, Officers Bennett, Watson, Prosniewski, and Sergeant Olejarz, caused by Defendant Eluzzi, Laura Germadnig, Cathleen Coneeny, Esq., and without legal justification, maliciously, without probable cause. Plaintiff was detained against his will. The detention was without proper legal authority, legal justification, and/or without*

*probable cause. The matter was terminated in Plaintiff's favor. As a proximate result, Plaintiff*

*suffered damages.*

268.    *Without legal justification, maliciously, and without probable cause, Defendants Jackson Township, Jackson Township Police Department, Officers Bennett, Watson, Prosniewski, and Sergeant Olejarz, caused by Defendant Eluzzi, Laura Germadnig, Cathleen Coneeny, Esq., intentionally confined Plaintiff within set boundaries—a jail cell. Plaintiff was aware of his confinement and was damaged.*

## XII.    TWELVETH CLAIM FOR RELIEF

### Against All RICO Defendants

### Racketeering
### (Violations of RICO, 18 U.S.C. § 1962(c))

303.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

304.    At all relevant times, Plaintiff is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

305.    At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

### *The RICO Enterprise*

306.    The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of lies, fraud, threats and official corruption, to coerce Plaintiff into paying tens of thousands of dollars to the RICO Defendants and their co-conspirators. These RICO Defendants and their co-

conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in the United States, funded within the United States, and directed from the United States. Over the years they have adapted their scheme to changing circumstances, recruiting new members to their operation, and expanding the scope and nature of their activities. While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme:

a. Defendants Zabarsky and the Zabarsky Law Firm have been responsible for oversight of the scheme to defraud and extort Plaintiff, and have directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise-namely, manufacture evidence of Plaintiff's liability, procuring sham criminal charges against Plaintiff, conducting a massive pressure campaign designed to spread false and misleading information about Plaintiff, and obstructing Plaintiff's efforts at uncovering the truth in various court proceedings. The Zabarsky Law Firm was a conduit to receive ill-gotten monies of at least $35,000.00 received from Plaintiff due solely to the RICO defendants' extortionist threats, and to convert (i.e., "launder") the ill-gotten monies deposited into an IOLTA account into smaller amounts of cash that were disbursed to the RICO Defendants by Zabarsky and Senator Holzapfel. The RICO Defendants also used the assets of The Zabarsky Law Firm to commit the extortions, wire

frauds and mail frauds.

b.  Defendants Gunteski and Arkush have been primarily responsible for creating the sham litigation in the Superior Court family proceeding at the direction of Zabarsky, by creating false and misleading forensic accounting and psychosocial reports for the court to consider and which were very averse to Plaintiff.

c.  Defendants Chief Kunz and Officer Parise have been primarily responsible for managing the RICO Defendants' "private army," exerting influence over and colluding with Nada Pityinger, Prosecutor Bradley, Prosecutor Foti Jr. the Jackson School District, Principal Brignola, Principal Phillips, and Principal Denis. Chief Kunz made certain that the RICO Defendants could act with impunity and free of law enforcement investigation by rebuffing Plaintiff's police reports and instructing other officers of the Lake Township Police Department to disregard Plaintiff's reports of theft, extortion, child alienation and abduction. Officer Parise liaisoned with school officials to make certain that Plaintiff would have no contact with his children at the school despite the Plaintiff having such right ordered by the Superior Court.

d.  Defendant Senator Holzapfel served as a conduit for keeping Judge Einbinder and Judge Ford in check and supporting the pressure campaign and otherwise furthering the RICO Defendants' criminal enterprise.

269.  The RICO Defendants under the protection of Judicial immunity of Defendant judges Madelin F. Einbinder, Marlene L. Ford, Deborah H. Schron and John S. Doron constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as the "Enterprise." Each of

the RICO Defendants participated in the operation or management of the Enterprise.

270.  At all relevant times, the Enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

## *Pattern of Racketeering Activity*

271.  The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

### *Pattern of Racketeering Activity:*

### *Extortion in Violation of Hobbs Act, 18 U.S.C. § 1951*

272.  At all times material to this Complaint, Plaintiff was engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce.

273.  As described herein, the RICO Defendants have engineered a wide-ranging campaign of public attacks based on false and misleading statements, trumped up criminal charges, threatened fraudulent civil judgments, investigations by government agencies, and ongoing harassment and disruptions of Plaintiff's business operations, and have demanded the payment of tens of thousands of dollars before these activities will cease, all with the intent and effect of causing a reasonable fear of economic and familial loss on the part of Plaintiff.

274.  As described herein, the RICO Defendants manufactured false evidence against Plaintiff and are relying on that false evidence in the sham forensic

accounting report and psychosocial report submitted to Judge Einbinder in the Ocean County Superior Court with the intent and effect of causing a reasonable fear of economic and familial loss on the part of Plaintiff.

275.   As described herein, the RICO Defendants conspired with one another to advance baseless criminal and family charges against Plaintiff.

276.   The RICO Defendants' actions are intended to induce fear in Plaintiff that the RICO Defendants will, among other things: (1) continue to pursue a scheme of misrepresentation to the great harm and public denigration of Plaintiff, unless and until Plaintiff "settles" the divorce action with Laura Germadnig; (2) continue to conspire with Jackson Township officials to have Plaintiff criminally prosecuted on trumped up charges; (3) work to have Plaintiff's financial advisory certifications and license revoked; and (4) secure a fraudulent multi-hundred thousand dollar judgment against Plaintiff and file lawsuits in the State of New Jersey seeking recognition and enforcement of the judgment. These actions, as described herein, have created a reasonable fear of harm on the part of Plaintiff, including fear of economic and familial loss.

277.   Accordingly, the RICO Defendants have unlawfully obstructed, delayed, and affected and attempted to obstruct, delay, and affect-commerce as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in § 1951, in that the RICO Defendants attempted to induce Plaintiff to consent to relinquish property through the wrongful use of actual and threatened force, violence, and fear-including fear of economic harm.

*Pattern of Racketeering Activity:*

*Extortion in Violation of New Jersey Penal Law § 2C:20-5*

278.    Similarly, the RICO Defendants' wrongful attempts to appropriate Plaintiff's property by instilling fear that if he does not settle the divorce proceeding then the RICO Defendants would perform an act calculated to harm Plaintiff materially with respect to his business, financial condition, familial ties, reputation, and to place him in jail, violates New Jersey Penal Law N.J.S.A. § 2C:20-5.

*Pattern of Racketeering Activity:*

*Multiple Instances of Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341, 1343*

279.    As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to defraud Plaintiff, various courts of law, and the greater public concerning Plaintiff's purported liability for emotional, and / or physical harm to Laura Germadnig and Plaintiff's three children by manufacturing evidence, and colluding with experts recognized by the court to submit the RICO Defendants' manufactured evidence. The ultimate objective of the RICO Defendants' scheme or artifice to defraud is to coerce Plaintiff into settling the divorce proceeding and paying the associated fees and costs that will directly benefit the individual and organizational RICO Defendants.

280.    In furtherance of their scheme, and as described herein, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and

also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

a. emails incorporating false and misleading statements regarding the forensic accounting and psychosocial reports;

b. wirings and/or mailings between and among the RICO Defendants concerning the preparation of the forensic accounting and psychosocial reports;

c. communications directed toward U.S. state and federal government officials and regulators incorporating false and misleading statements regarding Plaintiff's legal eligibility to travel abroad;

d. funds transferred by Zabarsky and Senator Holzapfel to the RICO Defendants, with the intent that those funds be used to promote the carrying on of the RICO Defendants' criminal activities; and,

e. electronic filing and service of court papers containing false and misleading statements intended to impede the operation of those courts.

281. The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Plaintiff into ultimately pay the RICO Defendants and their co-conspirators. The RICO Defendants knowingly and intentionally prepared a self-serving analysis of Plaintiff's alleged financial accounts and net worth and a self-serving analysis of Plaintiff's psychosocial condition, and then knowingly and with the intent to deceive the Ocean County Superior Court, Plaintiff, and the general public, caused that analysis to be filed

under the pretense that it was a report prepared by an independent court expert. The RICO Defendants colluded with the Jackson Township Prosecutor's Office to initiate criminal prosecution of Plaintiff on the basis of these reports and other statements the RICO Defendants knew to be false or misleading. The RICO Defendants further caused statements regarding these reports, these criminal charges and other matters, which statements the RICO Defendants knew to be false or misleading, to be disseminated to the general public, to the media, and to multiple state and federal agencies and state courts, with the intent that those statements be believed and that they found the basis for further public attacks on Plaintiff, investigations of Plaintiff, and reduction in the value of Plaintiff's personal and corporate assets. The RICO Defendants knowingly engaged in the aforementioned conduct with the intent to generate fear in Plaintiff such that Plaintiff would ultimately pay the RICO Defendants to cease their conduct, under the guise of a settlement of the divorce proceeding, through satisfaction of a judgment in the divorce proceeding, or in a subsequent proceeding to recognize and enforce such a judgment.

282.    The RICO Defendants' false and misleading statements have been relied on by New Jersey state courts, U.S. state and federal government agencies, Plaintiff's clients, the media, and by the Ocean County Superior Court by means of its acceptance of Gunteski, Cowan Gunteski & Co., and Arkush's misrepresentations and omissions and its failure to take meaningful corrective action. Further, RICO Defendants' false and misleading statements have caused Plaintiff substantial damages.

*Pattern of Racketeering Activity:*

*Money Laundering in Violation of 18 USC. § 1956(a)(2)(A)*

283.    Defendants Zabarsky and Senator Holzapfel under the protection of Judicial immunity of Defendant judges Madelin F. Einbinder, Marlene L. Ford, Deborah H. Schron and John S. Doron have on multiple occasions, acting in their individual capacities and as agents for the Zabarsky Law Firm to knowingly cause the transportation, transmission, and/or transfer of funds to or from an IOLTA account to themselves and to Defendants Gunteski, Arkush, and other entities with the intent that those funds be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and 1951, including the secret preparation of the false forensic accounting and psychosocial reports, payment to Gunteski and Arkush for their complicity and silence as to the report's legitimacy, and the funding of the RICO Defendants' pressure campaigns against Plaintiff.

*Pattern of Racketeering Activity:*

*Obstruction of Justice in Violation of 18 U.S.C. § 1503*

284.    Faced with implacable denials from Gunteski, Arkush and the RICO Defendants about the authorship of the false forensic accounting and psychosocial reports, Plaintiff turned to the courts to pursue discovery directly from the Enterprise through the divorce and other proceedings.

285.    In a concerted effort to thwart Plaintiff's attempts to uncover the truth and avoid discovery, the RICO Defendants, and their counsel, have habitually filed or caused to be filed documents, including declarations sworn to under penalty of

perjury, that falsely represent that the false forensic accounting and psychosocial reports are accurate and proper. By making these deliberate and strategic false representations in various pending judicial proceedings, with full awareness of their consequence and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, the RICO Defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. § 1503.

### _Racketeering Activity Harmed Plaintiff_

286.    Each of the RICO Defendants has engaged in multiple predicate acts, as described in paragraphs 135 to 148, supra. The conduct of each of the RICO Defendants described in paragraphs 135 to 148, supra, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

287.    Plaintiff was injured in his business and property by reason of the RICO Defendants' violations of 18 U.S.C. § 1962(c). The injuries to Plaintiff caused by reason of the violations of 18 U.S.C. § 1962(c) include but are not limited to damage to Plaintiff's reputation and goodwill; the impairment of Plaintiff's interest in executed contracts; the utter destruction of his career as financial planner; and the attorneys' fees and costs to defend himself in objectively baseless, improperly motivated sham litigation, including any attorneys' fees and costs associated with exposing the RICO Defendants' pervasive fraud in the divorce proceedings.

288.    Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962. Plaintiff is the ultimate victim of the RICO Defendants' unlawful Enterprise. Plaintiff has been and will continue to be injured in his business and property in an amount to be determined at trial.

289.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## XIII.   THIRTEENTH CLAIM FOR RELIEF

### Racketeering Activity to Collect Unlawful Debt

### (Violations of RICO, 18 U.S.C. § 1962(d))

### (Against All RICO Defendants)

290.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

291.    Zabarsky was employed by and supported under the protection of Judicial immunity of Defendant judges Madelin F. Einbinder, Marlene L. Ford, Deborah H. Schron and John S. Doron or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d), including the acts of racketeering set forth in paragraphs 135 to 148, supra.

292.    At all relevant times, Zabarsky is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

293.    Zabarsky knew that he was committing predicate RICO acts to collect an unlawful debt from Plaintiff. Specifically, he extorted Plaintiff by using threats of imprisonment if Plaintiff did not pay him at least $70,000, and Zabarsky transmitted

these threats by U.S. Mail and over the telephone wires. Additionally, Zabarsky threatened to ruin Plaintiff if Plaintiff did not settle his divorce proceeding which Zabarsky represented the respondent, Laura Germadnig. When Plaintiff refused to settle the divorce proceeding, Zabarsky made good on his threats and employed a pressure campaign on Plaintiff and manufactured false evidence which Zabarsky e-filed with the court. This conduct is in violation of 18 U.S.C. § 1962(d).

294.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in his business and property, including damage to his personal and professional reputation and goodwill; the impairment of his business' interest in executed contracts; and the attorneys' fees and costs to defend himself in objectively baseless, and improperly motivated sham litigation and in related litigation in the Ocean County Superior Court.

295.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendant Zabarsky as set forth below.

BLANK

## XIV. FOURTEENTH CLAIM FOR RELIEF

### Conspiracy to Engage in Racketeering Activity

### (Violations of RICO, 18 U.S.C. § 1962(c))

### (Against All RICO Defendants)

296.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

297.    The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

298.    At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

299.    Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

300.    Upon information and belief, the RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

301.    Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiff. It was part of the conspiracy that the RICO

Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in paragraphs 135 to 148, supra.

302.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(a) and (d). Plaintiff has been injured in his business and property, including damage to his personal and professional reputation and goodwill; the impairment of his business' interest in executed contracts; and the attorneys' fees and costs to defend himself in objectively baseless, and improperly motivated sham litigation and in related litigation in the Ocean County Superior Court.

303.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.


## XIV.   FIFTEENTH CLAIM FOR RELIEF

### Fraud

### (Against Defendants Attorney Landi, Attorney McMahon, Attorney Schlendorf )

304.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

305.    Defendants Attorney Landi, Attorney McMahon, and Attorney Schlendorf made a material representation of a presently existing or past fact, that was made with knowledge of its falsity and with the intention that the Plaintiff rely thereon,

resulting in the Plaintiff's reliance on the defendant's misrepresentation to his detriment.

306.    Each of the named defendants purported to be an attorney licensed to practice law in New Jersey and in good standing with the state's Bar, and told the Plaintiff that they would file a certain motion or motions. Because of the defendant attorney's agreement to file the specified motion or motions, Plaintiff retained the defendant attorney. However, the defendant attorneys never filed the agreed upon motion or motions.

307.    The named defendants' material misrepresentations breached the common-law duty of good faith and fair dealing.

308.    Defendant asserts that the breach of the common-law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with "malice."

309.    As a direct and proximate result of the named Defendants' fraudulent representations, Plaintiff has been injured in his business and property, including damage to his personal and professional reputation and goodwill; the impairment of his business' interest in executed contracts; and the attorneys' fees and costs to defend himself in litigation in the Ocean County Superior Court.

WHEREFORE, Plaintiff demands judgment against Defendants Attorney Landi, Attorney McMahon, Attorney Schlendorf, for damages, costs, interest, and other such relief as this Court deems just and proper.

<u>BLANK</u>

## REQUEST FOR RELIEF

**On the Twelveth claims for Relief:**

1. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

2. For prejudgment interest according to statute; and

3. For Plaintiff's attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

**On the Thirteenth Claim for Relief:**

1. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

2. For prejudgment interest according to statute; and

3. For Plaintiff's attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

**On the Fourteenth Claim for Relief:**

1. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

2. For prejudgment interest according to statute; and

3. For Plaintiff's attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

**On the Fifteenth Claim for Relief:**

1. For general and exemplary damages according to proof at trial;

2. For nominal damages;

3. For prejudgment interest according to statute; and

4. For Plaintiff's attorneys' fees and costs as a presiding party.

## DEMAND FOR JURY TRIAL

Zia Shaikh Plaintiff hereby demands a jury trial of all issues in this action triable as of right by a jury.

Dated: March 6, 2023

Respectfully submitted,

By:_____
    ZIA SHAIKH / PLAINTIFF
    200 Village Center Drive, Unit 7381
    Freehold, New Jersey 07728
    Telephone: (732) 766-5466
    Email: zia@myarpp.com
    *In propia persona*

## VERIFICATION

I, Zia Shaikh Plaintiff, hereby verify, state, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that I have read the foregoing Amended Verified Complaint for Damages and the foregoing factual statements above are true and correct. As to those statements alleged upon information and belief, they are supported by facts in my records and files.

**VERIFIED** under penalty of perjury in Monmouth County on this 6th day of March, 2023.

By:_____
    ZIA SHAIKH / PLAINTIFF

## CERTIFICATE OF SERVICE

I, Zia Shaikh Plaintiff, hereby certify that on March 6, 2023, the foregoing amended verified complaint for damages was e-filed with the court and a true copy was served on each party.

By:_____

ZIA SHAIKH / PLAINTIFF