Paul A. Carbon, Esq., Attorney ID 02440-1995
Kyle L. Wu, Esq., Attorney ID 16602-2015
**MARGOLIS EDELSTEIN**
400 Connell Drive
Suite 5400
Berkeley Heights, NJ  07922-2775
(908) 790-1401
**Attorneys for Defendants Cowan Gunteski & Co P.A,**
**and Joseph Gunteski, CPA**

| | |
|---|---|
| ZIA SHAIKH,<br><br>      Plaintiff,<br><br><br>      v.<br><br><br>LAURA L. GERMADNIG, SIEGFRIED GERMADNIG, PATRICIA GERMADNIG, MELISSA REEVES, KENNETH REEVES, MARK GERMADNIG, STACEY GERMADNIG, SIEGFRIED GERMADNIG, JR., DAVID TARNOWSKI, NICOLE TARNOWSKI, SLAVA KLEYMAN, NANCY CAVANAUGH, LOUIS ELWELL, CHRISTINE GILFILLEN, SANDRA SEAMAN, JACK M, NADA PITYINGER, BRETT PITYINGER, DANIEL SCHASTNY, KATHLEEN SCHASTNY, BRADELY MCKEE, RENE MCKEE, ROBERT MCKEE, CAROL MCKEE, STANLEY O'BRIAN, LORI O'BRIAN, CANDY MCKEE, STEVEN A. ZABARSKY, ESQ., | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Case No: 3:22-cv-02053-ZNQ-TJB<br><br>Civil Action<br><br><br>**Return Date: May 15, 2023**<br><br>**Oral Argument Requested** |

KIMBERLY ZABARSKY, LAW
FIRM OF CITTA, HOLZAPFEL &
ZABARSKY, LEGAL
MALPRACTICE INSURANCE
CARRIER FOR CITTA, HOLZAPFEL
& ZABARSKY, CATHLEEN
CHRISTIE-CONEENY, ESQ.,
LEGAL MALPRACTICE
INSURANCE CARRIER FOR
CATHLEEN CHRISTIE-CONEENY,
ESQ., JOSEPH GUNTESKI CPA,
COWN GUNTESKI & CO., JOHN R.
WILEY JR., CPA, ABV, CGMA,
AICPA (ASSOCIATION OF
INTERNATIONAL CPA'S), SETH
ARKUSH, INTEGRATED CARE
CONCEPTS LLC, JACKSON
SCHOOL DISTRICT, PRINCIPAL OF
JACKSON LIBERTY HS,
PRINCIPAL OF CHRISTA
MCAULIFEE MIDDLE SCHOOL,
PRINCIPAL OF CRAWFORD
RODRIGUEZ ELEMENTARY
SCHOOL, STEPHANIE J. BROWN,
ESQ., AUGUST J. LANDI, ESQ.,
MARGIE MCMAHON, ESQ., DAVID
SCHLENDORF, ESQ., JACKSON
TWSP. POLICE CHIEF MATTHEW
KUNZ, JACKSON TOWN SHIP
POLICE OFFICER CHRISTOPHER
PARISE, OCEAN CTY. NJ
PROSECUTOR BRADLEY
BILHEIMER, JOHN FOTI, JR.,
MADELINE F. EINBINDER J.S.C.,
MARLENE L. FORD, A.J.S.C., JOHN
S. DORAN, J.S.C., DEBORAH H.
SCHRON, J.S.C., JOHN DOES 1-10,

JOHN DOES 1-10, XYZ
CORPORATIONS,

               Defendants.

**DEFENDANTS COWAN GUNTESKI & CO P.A. AND JOSEPH
GUNTESKI, CPA'S BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.
12(b)(6)**

**Of Counsel:Paul A. Carbon, Esq.**
**On the Brief: Kyle L. Wu, Esq.**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………………………... i

TABLE OF AUTHORITIES…………………………………………………………… iii

PRELIMINARY STATEMENT………………………………………..…..…... 1

PROCEDURAL HISTORY………………………………………………………….. 1

STATEMENT OF FACTS……………………………………………….……... 7

STANDARD OF REVIEW………………………………………………….…... 11

LEGAL ARGUMENT…………………………………………………………... 13

A.    Plaintiff's Amended Complaint Fails to Comply the Court's February 6, 2023 Memorandum Order ……………………………………………………   14

    1.  Plaintiff's Amended Complaint Fails to Comply with Federal Rule of Civil Procedure 8(a) …………………………………………………   14

    2.  Plaintiff's Amended Complaint Still Contains Extensive Legal Arguments ……………………………………………………….. 16

    3.  Plaintiff's RICO Case Statement Fails to Provide Factual Descriptions Required by Attachment O of the Local Civil Rules ………………… 18

B.    Res Judicata and the New Jersey Entire Controversy Doctrine Preclude Plaintiff's Claims Against the CG Defendants …………………………... 19

    1.  Res Judicata Precludes Plaintiff's Malicious Abuse of Process Claim ……………..…………………………………………………… 19

    2.  The NJ Entire Controversy Doctrine Precludes Plaintiff's Complaint in its Entirety……………………………………………….…………19

B.    The Statute of Limitations Bars Plaintiff's Malicious Prosecution, False Imprisonment, NIED, IIED, Violation of Civil Rights under 42 U.S.C. Section 1983; Violation of the Equal Protection Clause of the US Constitution; and Plaintiff's RICO claims ……………………………………………………  24

C.    Plaintiff's Complaint Fails to Properly Allege Cognizable Claims Against the CG Defendants………………………………………...…………………….25

1. Intentional Infliction of Emotional Distress ………………………  26

2. Parental Alienation……………………………….….….………  26

3. Parental Alienation of Affection ………………………………  27

4. Intentional Interference with the Plaintiff's Rights of His Children ……………………………………………………………………  27

5. Civil Conspiracy………………………………….….………  28

6. Violation of Plaintiff's Right to Privacy.…………………………..  28

7. Malicious Prosecution  ………………………………………  29

8. Violation of Civil Rights under 42 U.S.C. Section 1983 …………  30

9. Violation of the Equal Protection Clause …………………………  31

10. Negligent Infliction of Emotional Distress ………………………  31

11. False Imprisonment …………………………………………  32

12. RICO Claims …………………………………………………..  33

CONCLUSION………………………...…………………………………………  34

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal, 556 U.S. 662 (2009)……………………………………......….12

Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 144 (1987)

…………………………………………………………………………………….25

Baglini v. Lauletta, 338 N.J. Super. 282 (App. Div. 2001)……………………   20

Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) ……………………   28

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)…………………………...11

Bootay v. KBR, Inc., 437 F. App'x 140, 146 (3d Cir. 2011) …………………… 26

Boyle v. United States, 556 U.S. 938, 945 (2009) ……………………………… 33

Caissie v. City of Cape May, 619 F. Supp. 2d 110 (D.N.J. 2009)………......…… 11

EEOC v. United States Steel Corp., 921 F.2d 489 (3d Cir. 1990)………………..18

Erickson v. Pardus, 551 U.S. 89 (2007)…………………………………..........12

Freeman v. State, 347 N.J. Super. 11, 22 (App. Div. 2002)………………………25

Gratz v. Ruggiero, 822 F. App'x 78, 80-81 (3d Cir. 2020) ……………………… 33

Joseph v. Lopez, 2005 U.S. Dist. LEXIS 18087 (D.N.J. 2005) …………………24

Kundratic v. Thomas, 407 F. App'x 625, 627 (3d Cir. 2011) …………………… 30

LoBiondo v. Schwartz 199 N.J. 62, 90 (2009)………………………………...30

Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364

(App. Div.) ……………………………………………………………………… 28

Noland-Vance v. Vance, 321 S.W.3d 398, 419 (Mo. Ct. App. 2010) ……………27

Owens v. Okure, 488 U.S. 235, 240 (1989)………………………………………25

Pension Benefit Guar. Corp. V. White Consol. Indus., 998 F.2d 1192 (3d Cir. 1993) ……………………………………………………………………………… 12

Pitcock v. Kasowitz, Benson, Torres & Friedman, L.L.P., 426 N.J. Super. 582 (App. Div. 2012)………………………………………………………………….23

Pruco Life Ins. Co. v. Koslowsky, 2015 U.S. Dist. LEXIS 100515 (D.N.J. July 31, 2015) …………………………………………………………………………...24

S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410 (3d Cir. 1999)……………………………………………………………… 12

Schanzer v. Rutgers University, 934 F. Supp. 669 (D.N.J. 1996)………………..11

Sheridan v. NGK Metals Corp., 609 F.3d 239 (3d Cir. 2010)……………………18

Swift v. United Food Commer. Workers, 2008 N.J. Super. Unpub. LEXIS 2577 (N.J. Super. App. Div. July 11, 2008) …………………………………………… 29

Tamayo v. Am. Coradious Int'l, L.L.C., 2011 U.S. Dist. LEXIS 149124, at *11 (D.N.J. Dec. 28, 2011) ……………………………………………………… 29

United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831 (1983) ……………………………………………………………………………… 31

United States v. Cruikshank, 92 U.S. 542, 554-555 (1875) ……………………… 31

United States v. Classic, 313 U.S. 299, 326 (1941) ………………………………… 31

United States v. Turkette, 452 U.S. 576, 577 (1981) ……………………………… 33

Wadeer v. New Jersey Mfrs. Ins. Co., 220 N.J. 591, (2015) …………………….. 20

Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002) ……………………….. 33

West v. Atkins, 487 U.S. 42, 48 (1988) …………………………………………… 30, 31

Williamson v. Waldman, 150 N.J. 232, 239 (1997) …………………………….   32

**Statutes & Rules**

**Federal**

Fed. R. Civ. P. 12(b)(6)…..………………………………………………………... 11

**State**

N.J.S.A. § 2A:14-2 …………………………………………………………………… 24

New Jersey Model Civil Jury Charge 3.20A…………………………………….. 39

I.     PRELIMINARY STATEMENT

Before this Honorable Court is Defendants Cowan Gunteski & Co., P.A. ("CG") and Joseph Gunteski, CPA's ("Mr. Gunteski") (collectively, the "CG Defendants"), Motion to Dismiss the Amended Complaint filed by Plaintiff, Zia Shaikh ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion should be granted because the latest Amended Complaint, in a string of complaints filed by Plaintiff, is nothing more than a reiteration of filings he has previously made before this Court and the New Jersey Superior Court, all of which were dismissed. Moreover, Plaintiff's allegations in his Amended Complaint are not only barred by res judicata and the New Jersey Entire Controversy Doctrine, but the statute of limitations as it relates to the claims against the CG Defendants have long since passed and the Amended Complaint otherwise fails to state a cognizable claim against the CG Defendants. Accordingly, Plaintiff's Amended Complaint must be dismissed.

II.    PROCEDURAL HISTORY

A.     2015 Federal Complaint

On June 17, 2015, Plaintiff filed a Complaint in the U.S. District Court for the District of New Jersey captioned <u>Zia Shaikh v. Jackson Township, Jackson Township, Police Dept., Jackson Twsp. Police Officer Tristan Bennett Badge #273,</u>

<u>Jackson Twsp. Police Officer David Watson Badge #256, Jackson Township Police Sergeant Wayne Olejarz Badge #204, Police Officer Eric Prosniewski Badge #249, Steven A. Zabarsky, Esq., Kimberly Zabarsky, Law firm of Citta, Holzapfel & Zabarsky, Legal Malpractice Insurance Carrier for Citta, Holzapfel & Zabarsky, Laura Germadnig-Shaikh, Siegfried Germadnig, Patricia Germadnig, Melissa Reeves, Kenneth Reeves, Cathleen Christie-Coneeny, Esq., Camille Eluzzi, Jackson Twsp. Assistant Deputy Court Administrator, Cowan & Gunteski, CPA Co., John Does 1-10, Jane Does 1-10, XYZ Corporations</u>, docket number 3:15-cv-04106-PGS-DEA ("Prior Federal Complaint").[1]   Plaintiff's Prior Federal Complaint alleged a variety of constitutional claims against all the then named defendants for discrimination, civil rights violations, violations under the color of state law, RICO violations, and many of the same things alleged in the present Amended Complaint. <u>Id.</u>

Paragraph 43 of Plaintiff's Prior Federal Complaint states:

As a result of malicious, unlawful and unconstitutional actions against Plaintiff to deprive him of his property through falsifying and fabricating the amount of money he makes and the amount of assets he has, and then threatening to deprive him of his property through falsifying and fabricating the amount of money he makes and the amount of assets he has, and then threatening to deprive Plaintiff of liberties if he doesn't make payments on fraudulent fictitious orders that

---

[1] See Cert of Kyle L. Wu, Esq. at Exhibit A.

have no bearing in reality, Plaintiff has no ability to pay and is being subjected to impossibility of performance.  As a result of this financial fraud and extortion by Defendants Zabarsky, the Law firm, and Cowan and Gunteski, causing financial devastation, Plaintiff is also being financially destroyed as part of a campaign to deprive him of his children.

Paragraph 44 of Plaintiff's Prior Federal Complaint goes on to state:

Defendants Zabarsky and the Law Firm were involved in mail fraud and wire fraud by sending threatening letters and faxes to Plaintiff and his counsel to extort monies out of Plaintiff he did not have because they were fabricated by Zabarsky and Defendant Law firm.  These threatening letters and faxes are putting Plaintiff under threat of contempt, arrest and incarceration.  This mail fraud and wire fraud included mailings and faxes of unjust, inequitable, and unconstitutional orders against Plaintiff that were issued by Judge Einbinder, as said orders were conducted ex parte.  Additionally, Plaintiff and his counsel were denied any defense or ability to-pay hearings against the financial fabrications by Defendants Zabarsky, the Law firm, and Cowan and Gunteski, because Judge Einbinder was beholden to Defendant Zabarsky and Defendant law firm.

The Prior Federal Complaint continues at paragraph 45, stating:

Now Defendant Cowan and Gunteski are also committing mail fraud and wire fraud by submitting fraudulent extortion letters to the Court, Plaintiff and Defendant Zabarsky claiming that they don't know what happened to monies that they "believe" Plaintiff may be hiding.  Cowan and Gunteski are purportedly a top New Jersey matrimonial forensic accounting firm, that they were hired in April 2014 to investigate Plaintiff.   Plaintiff was ordered to pay them at $15,000 retainer extortion in January 2015.  They have been investigating Plaintiff in what can only be described as a "fishing expedition" for over 14 months and have found nothing.  Now they want additional retainer of $20,000 to find nothing.

Paragraph 46 of the Prior Federal Complaint next states:

3

> They want this additional money to concoct a scam accounting procedure to show that they "may" have found something to justify their fees. This is part of the extortion scam/scheme and quid pro quo between Defendants Zabarsky, the Lawfirm, Cowan and Gunteski and Laura Germadnig. This is all part of the extortion and fraud agenda by Cowan and Gunteski against Plaintiff because of their close associations with Defendants Zabrasky and the Law firm, who use Cowan and Gunteski in almost all of their matrimonial forensic case.

The Prior Federal Complaint continued to state at paragraph 47:

> Cowan and Gunteski are making up fraudulent and fictitious accounting sheets in order to obtain more and more fees for their shady, if not corrupt, services. Plaintiff does not have any more money. His matrimonial residence is in foreclosure. He is unable to pay the fictitious and fraudulent and unallocated support he was ordered to pay.

At paragraph 48 of the Prior Federal Complaint, it states:

> Because of this Defendant Laura Germadnig is using the children to text Plaintiff and ask him why he isn't paying support, even though Plaintiff has to date but can no longer. He has been financially extorted by Defendants Zabarsky, the Law firm, Laura Germadnig and Cowan and Guntestki.

In paragraph 54, Plaintiff acknowledges that that he was in fact ordered to pay fees to the CG Defendants as a result of an Order dated June 13, 2014, signed by Judge Madeline F. Einbinder, J.S.C.[2] The claims asserted against CG were claims under Section 1981, 1983 (Due Process and Conspiracy), New Jersey Constitutional violations, RICO claims, and Malicious Abuse of Process. Judge Peter Sheridan,

---

[2] See Cert of Kyle L. Wu, Esq. at Exhibit B.

4

U.S.D.C.,'s September 21, 2015 Order, dismissed Plaintiff's Prior Federal Complaint with prejudice as to CG after CG filed a motion to dismiss.[3]

B.     2018 New Jersey Superior Court Complaint

On August 20, 2018, Plaintiff filed a Complaint with the New Jersey Superior Court alleging claims of conversion, conspiracy, and the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38A-3 *et seq*. (the "State Court Complaint").[4] In the State Court Complaint, Plaintiff alleged he was a tenant of the property owned by Nada Pityinger and Brett Pityinger ("Pityinger Defendants") at 304 Wellington Court, Jackson, New Jersey. Id. at ¶ 8. Plaintiff alleged that he was advised on August 6, 2014, by Brett Pityinger, that the property had been raided by an unknown John Doe who identified himself as an investigator along with Laura Germadnig. Id. at ¶ 14. Plaintiff alleged that with the consent of the Pityinger Defendants, Germadnig and John Doe confiscated Plaintiff's desktop computer, client files, commission statements, bank statements, un-opened business mail and other confidential data. Id. at ¶¶ 15-16.

The State Court Complaint then alleged that on March 23, 2015, Plaintiff received an email from Bill Stabile from CG advising he was in possession of

---

[3] See Cert of Kyle L. Wu, Esq. at Exhibit C.
[4] See Cert of Kyle L. Wu, Esq.  at Exhibit D.

Plaintiff's stolen computer. Id. at ¶ 23.[5]   Plaintiff alleged that the Pityinger Defendants provided access to John Doe and Germadnig and then John Doe and Germadnig removed his personal property from the premises. Id. at ¶¶ 26, 28. Plaintiff then alleged that John Doe and Germadnig provided Plaintiff's property to CG, and that John Doe, Germadnig, and CG purposefully and knowingly and without authorization took and accessed data from the computer of Plaintiff. Id. at ¶¶ 33-34.

Plaintiff then alleged that he had not received his property or computer back and believes it was destroyed by Germadnig and CG. Id. at ¶¶35-36. Plaintiff next alleged that the Pityinger Defendants acted in concert together with Germadnig for the mutual purpose of deceiving Plaintiff to deprive him of personal and business property. Id. at ¶¶ 37-39.

C.    The Original Complaint in the Present Matter

On April 8, 2022, Plaintiff filed the Complaint in this matter.[6] The CG Defendants were served with the Complaint on April 27, 2022. On May 12, 2022, the CG Defendants filed an application with this Honorable Court seeking a 14-day extension of time to respond to the Complaint until June 1, 2022. That application

---

[5] See Cert of Kyle L. Wu, Esq.  at Exhibit E.
[6] See Cert of Kyle L. Wu, Esq. at Exhibit F.

was granted on May 13, 2022. Despite the deadline for the CG Defendants to respond to the Complaint not having yet passed, Plaintiff filed a motion for default judgment against all Defendants, including the CG Defendants, continuing his unnecessary pattern of harassing filings lacking any basis in fact or law.

On June 1, 2022, the CG Defendants filed a Motion to Dismiss Plaintiff's Complaint. On February 6, 2023, this Court issued a Memorandum Order requiring Plaintiff to file an Amended Complaint and RICO Case Statement by March 6, 2023.[7] On March 6, 2023, Plaintiff filed an Amended Complaint.[8] The CG Defendants now move to dismiss Plaintiff's Amended Complaint.

III.   <u>STATEMENT OF FACTS</u>[9]

In his 84-page Amended Complaint and 29-page purported Rico Statement, which are merely a compilation of several prior complaints filed by Plaintiff, Plaintiff makes a total of eight (8) factual and conclusionary allegations against the CG Defendants. Specifically, Plaintiff's Amended Complaint alleges the following:

    (1)    Additionally RICO Defendants have sought to extort, defraud, and otherwise tortiously injure plaintiff Zia Shaikh by means of a plan they conceived and substantially executed in the United

---

[7] See Cert of Kyle L. Wu, Esq. at Exhibit G.

[8] See Cert of Kyle L. Wu, Esq. at Exhibit H.

[9] The CG Defendants set forth the relevant allegations in Plaintiff's Amended Complaint for purposes of this Motion only and reserve the right to respond to and deny any and all allegations against them at the appropriate time, if necessary.

States. It has been carried out by a United States-based enterprise comprised of among others, lawyers, led by Steven A. Zabarsky, Esq. of Citta, Holzapfel & Zabarsky; State of New Jersey Senator led by James Holzapfel; accountants, such as Joseph Gunteski CPA; and their front organizations, the accounting firm Cowen & Gunteski. (Exhibit H at ¶ 9)

(2)    During the part 2 of the Pendente Lite hearing brought on motion by Defendant Laura Germadnig, returnable June 13, 2014, Laura Germadnig was further granted $800.00 per week of unallocated support without Plaintiff having any pre-deprivation/ability-to-pay hearing. Plaintiff was further ordered to issue a check in the amount of $50,000 to the trust account of the Zabarsky Law Firm, plus an additional $15,000 to the Zabarsky Law Firm for fees, plus an additional $10,000 to Cowen & Gunteski, for forensic accounting fees to try and uncover the fictitious, fabricated millions of dollars that Plaintiff purportedly was alleged to be hiding, according to Zabarsky's repeated false mantra. (Id. at ¶ 107)

(3)    Due to this financial fraud and extortion by Defendants Zabarsky, the Citta Law firm [sic], and Cowan and Gunteski, caused financial devastation, Plaintiff has been financially and familiarly [sic] destroyed as part of a campaign to deprive him of his children and all his life savings as a first-generation immigrant from Pakistan. Also due to the malicious, unlawful and unconstitutional actions against Plaintiff to deprive him of his property through falsifying and fabricating the amount of money he makes and the amount of assets he has, and then threatening to deprive Plaintiff of liberties if he doesn't make payments on fraudulent, fictitious orders that have no bearing in reality. (Id. at ¶ 117)

(4)    On June 09, 2015 Gunteski defendants in a report on pages 2 – 3, claimed: "During the course of our discovery, we have found that the Plaintiff's have over $650,000 in assets as shown ..."; Then on page 4 it was further claimed that "Mr. Plaintiff has withdrawn and/or closed bank account in the amount of

8

$419,222." Gunteski repeatedly failed to inform the court that their report was not final, but preliminary in nature and could not be relied upon. Plaintiff has made several requests to the Gunteski to correct his error and inform the court but he refuses to correct the record. Zabarsky and the Law Firm were involved in mail fraud and wire fraud by regularly sending threatening letters and faxes about arranging for Plaintiff's incarceration if he did not pay additional $20,000 in fees to Gunteski. These demands were made directly to Plaintiff and his counsel in order to extort monies out of Plaintiff they could not find, despite several years of forensic accounting. Zabarsky, Cowan Gunteski & Co., and Joseph Gunteski each testified in court about their erroneous beliefs that Plaintiff was hiding funds without having any evidence of same. The threatening letters and faxes resulted in Plaintiff being under threat of contempt, arrest and incarceration. The defendants false reports, false statements, mail fraud and wire fraud resulted in Judge Einbinder and Judge Ford issuing orders grossly favorable to Laura Germadnig. (Id. at ¶ 124)

(5)   Plaintiff filed a formal complaint against Gunteski and Cowan Gunteski & Co. alleging that their erroneous forensic report and refusal to clarify that it was only preliminary harmed Plaintiff. Till this day the FJOD in-equitable distribution haunts Plaintiff based on the fraudulent preliminary report submitted to the court. Plaintiff then filed a complaint with the Association of International Certified Public Accountants on or about Nov 5, 2018. John R. Wiley Jr., manager of the ethics committee, oversaw the handling of Plaintiff's complaint and concluded that the since "the Gunteski report was a preliminary report, he is denying an investigation into the complaint. John R. Wiley Jr then dismissed the complaint on this basis. (Id. at ¶ 125)

(6)   Gunteski and Cowan Gunteski & Co. are also committing mail fraud and wire fraud by submitting fraudulent extortion letters to Plaintiff seeking at first $15,000 in additional fees, and later an additional $20,000 or else Plaintiff will be put in jail. (Id. at ¶ 126)

9

(7)     On November 28, 2017 Defendant John S. Doron issued a bench warrant against the Plaintiff based on the improper historical reporting of income and assets by the Gunteski defendants which is still active today as a continuing tort against the Plaintiff causing exceptional harm to his reputation and personal safety. (Id. at ¶ 137)

(8)     Gunteski and Cowan Gunteski & Co. submitted preliminary reports as final forensic accounting reports leading to an erroneous FJOD. (Id. at ¶ 146)

Plaintiff also alleges in a conclusory manner that the CG Defendants had him arrested without probable cause, used the state court process for their own wrongful ends, and created "sham litigation" by creating false and misleading forensic accounting reports. (Id. at ¶¶ 196, 199, 266, 306b) The remainder of Plaintiff's Amended Complaint does not concern the CG Defendants, contains piecemeal excerpts from cases and secondary sources, and improperly lumps all the Defendants together.

Plaintiff then proceeds to list fifteen (15) causes of action, which include, in Plaintiff's words, (1) intentional infliction of emotional distress ("IIED"), (2) parental alienation, (3) parental alienation of affection, (4) intentional interference with Plaintiff's possessory rights, (5) civil conspiracy, (6) violation of Plaintiff's right to privacy, (7) malicious prosecution/abuse of process, (8) violation of civil rights under 42 U.S.C. Section 1983, (9) violation of the Equal Protection Clause of

the US Constitution, (10) negligent infliction of emotional distress ("NIED"), (11) false imprisonment, (12) racketeering in violation of RICO, 18 U.S.C. § 1962(c), (13) racketeering activity to collect unlawful debt in violation of RICO, 18 U.S.C. § 1962(d), (14) conspiracy to engage in racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), and (15) fraud. (Am. Compl. at ¶¶ 152-309) The CG Defendants are designated as both "tort" and "RICO" Defendants in Plaintiff's Amended Complaint, see id. at ¶¶ 2-3, and of the fifteen counts, only Count XV—fraud—does not appear to be alleged against the CG Defendants.

## IV.   STANDARD OF REVIEW

The Complaint fails to state a legally cognizable claim and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court must assume the allegations in the Complaint are true, as pleaded, and must view those allegations in the light most favorable to the plaintiff.[10] In considering a motion to dismiss, the court may consider the allegations in the complaint, matters of public record, orders, and exhibits attached to the Complaint.[11] What constitutes "public record" for purposes of what properly may be considered on a motion to dismiss includes judicial proceedings, criminal case dispositions such as convictions or

---

[10] Schanzer v. Rutgers Univ., 934 F. Supp. 669, 673 (D.N.J. 1996).
[11] Caissie v. City of Cape May, 619 F. Supp. 2d 110, 115 (D.N.J. 2009).

mistrials, letter decisions of government agencies, and published reports of administrative bodies.[12]

Following the <u>Twombly/Iqbal</u> standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).[13] First, the factual and legal elements of a claim should be separated; a district court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff, but may disregard any legal conclusions.[14] Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."[15] Although the Complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do.[16]

Even when viewed through the generous standard dictated by a motion to dismiss, as well as the less stringent standards for complaints of *pro se* plaintiffs,[17]

---

[12] <u>Pension Benefit Guar. Corp. V. White Consol. Indus.</u>, 998 <u>F.2d</u> 1192, 1197 (3d Cir. 1993) (citations omitted); <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.</u>, 181 <u>F.3d</u> 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

[13] <u>Ashcroft v. Iqbal</u>, 556 <u>U.S.</u> 662, 677 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 <u>U.S.</u> 544 (2007).

[14] <u>Iqbal</u>, 556 <u>U.S.</u> at 678.

[15] <u>Id.</u>

[16] <u>Id</u>. at 677 (emphasis in original).

[17] <u>Erickson v. Pardus</u>, 551 <u>U.S.</u> 89, 93 (2007)

Plaintiff cannot maintain any cause of action against the CG Defendants.

V.      LEGAL ARGUMENT

As noted above, the claims Plaintiff has asserted against the CG Defendants in his Amended Complaint appear to be (1) intentional infliction of emotional distress, (2) parental alienation, (3) parental alienation of affection, (4) intentional interference with Plaintiff's possessory rights, (5) civil conspiracy, (6) violation of Plaintiff's right to privacy, (7) malicious prosecution/abuse of process, (8) violation of civil rights under 42 U.S.C. Section 1983, (9) violation of the Equal Protection Clause of the US Constitution, (10) negligent infliction of emotional distress, (11) false imprisonment, (12) racketeering in violation of RICO, 18 U.S.C. § 1962(c), (13) racketeering activity to collect unlawful debt in violation of RICO, 18 U.S.C. § 1962(d), and (14) conspiracy to engage in racketeering activity in violation of RICO, 18 U.S.C. § 1962(c). However, Plaintiff's Amended Complaint utterly fails to comply with this Court's February 6, 2023 Memorandum Order.

Furthermore, even if the Amended Complaint had complied with the Memorandum Order, Plaintiff's claims are barred by res judicata or the New Jersey Entire Controversy Doctrine; the statute of limitations have long since passed; or these claims are otherwise not cognizable under federal or state law.

A.   <u>Plaintiff's Amended Complaint Fails to Comply the Court's February 6, 2023 Memorandum Order.</u>

On February 6, 2023, this Honorable Court entered a Memorandum Order requiring Plaintiff to file an Amended Complaint and RICO Case Statement.  The Court's reasons for doing so were four-fold: (1) Plaintiff's Complaint fails to comply with Federal Rule of Civil Procedure 8(a); (2) the Complaint contains extensive legal arguments; (3) the Complaint fails to include a statement that it has been signed under penalty of perjury; and (4) the Complaint requires a RICO Case Statement "given the large number of Defendants and the varied allegations in this matter. . . ." Of these four requirements, Plaintiff has failed to comply with the first two and the purported RICO Case Statement does not sufficiently describe the factual information required for a RICO Case Statement. Therefore, Plaintiff's Amended Complaint should be dismissed with prejudice.

1.   <u>Plaintiff's Amended Complaint Fails to Comply with Federal Rule of Civil Procedure 8(a).</u>

In its Memorandum Order, this Court found that "the Complaint's averments are far from 'simple, concise, and direct'" as required by Federal Rule of Civil Procedure 8(a). (Exhibit G at p. 1) Here, Plaintiff's Amended Complaint fares no better. In fact, Plaintiff's allegations have ballooned from a 66-page document, to an 84-page Amended Complaint and 29-page RICO Case Statement, neither of which

14

can be said to be simple, concise or direct. Indeed, Plaintiff's allegations, though now split into numbered paragraphs, are no clearer than they were in his initial Complaint. By way of example, Plaintiff alleges in his Amended Complaint:

> Starting in May 2014 till present day Defendant Laura Germadnig have violated NJ 2C: 29-9 Parent Child Relationship and Multiple Court Orders allowing daily telephonic contact, have conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff. Similarly, Defendant Siegfried and Defendant Patricia who are the Parents of Defendant Laura, willfully participated to secret the children, colluded with Defendant Laura to violate courts orders, blocking access to children and provided financial funding to support the illegal and bad behavior of their daughter Defendant Laura. Similarly, Defendant Mark, Defendant Stacy, Defendant Siegfried Jr, Defendant Barus, Defendant Crystal, Defendant Skye, Defendant David, Defendant Nicole who are the siblings and spouses of Defendant Laura actively colluded to violate court orders and conspired to block parent child relationship by secreting Plaintiff's children and also did provide financial support to combat the Plaintiff for his parental rights. Similarly, Defendant Slava, Defendant Nancy, Defendant Louis, Defendant Janice, Defendant Melissa, Defendant Kenneth, Defendant Christine, Defendant Jack, Defendant Nada, Defendant Brett, Defendant Gilfillen, Defendant Seaman being the friends of Defendant Laura also actively participated by giving advice to Defendant Laura on how to block Plaintiff's access to his children.  Hence all the above said Defendants have jointly and severely committed the tort of Parental Alienation syndrome by their intentional or reckless acts, and by their outrageous and intolerable conduct. The Defendants outrageous, intolerable and wrongful conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights by causing harm to the relationship with the children. It has also caused   severe emotional distress to the Plaintiff to which the said Defendants are liable for the maximum Compensatory Damages and the Punitive Damages.

(Exhibit H at ¶ 109) This is far from the only allegation in the Amended Complaint that is rambling and incoherent.

Clearly, Plaintiff did not heed this Court's admonition that Rule 8(a)(2) requires that a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (Exhibit G at p. 1) The CG Defendants are in no better position now to divine the basis upon which Plaintiff is asserting claims against them than they were with Plaintiff's initial Complaint. Therefore, as Plaintiff appears more interested in authoring a screed than abiding by this Court's Order, his Amended Complaint must be dismissed with prejudice.

### 2.   Plaintiff's Amended Complaint Still Contains Extensive Legal Arguments

In its February 6, 2023 Memorandum Order, this Court advised Plaintiff to remove the extensive legal arguments contained within his Complaint as they "detract[] from the Court's ability to evaluate the Complaint's ***factual*** allegations." (Id. at pp. 1-2) (emphasis in original). The Court further noted that pleadings must be "straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." Id. As with the Court's Rule 8(a) requirement above, Plaintiff has wholly failed to abide by this Court's direction regarding legal arguments in pleadings. Instead, Plaintiff's Amended Complaint is replete with the

same legal arguments improperly included in the initial Complaint. For example,

Plaintiff alleges in his Amended Complaint:

> In an alienation of affections claim, the alienated parent can sue the alienating parent to remedy the loss of the child's affection as a result of the damage to his or her relationship with the child (See McGlynn, supra note 132, at 539. Traditionally, alienation of affection was used against a third party who stole the affection of a spouse. See Varnado, supra note 20, at 142. Because women were regarded as property of their husbands, any attempt to have relations with someone's wife was a property-based tort. See id., at 142 & n.182.) For example, in 1991 in Hershey v. Hershey, the South Dakota Supreme Court held that the father stated a cause of action against the mother for alienation of affection regarding their son. ( See 467 N.W.2d 484, 489 (S.D. 1991) (noting that policy considerations regarding recognition of this tort included the best interest of the child, availability of other remedies, and exacerbating custody and visitation battles). Alienation of affection has three elements: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) a causal connection between such conduct and the loss. Jones v. Swanson, 341 F.3d 723, 732 (8th Cir. 2003). The court reasoned that there was alienation of affection because the mother kept the child's location a secret from the father for fourteen years. ( See Hershey, 467 N.W.2d at 489). With the abolishment of alienation of affection for spouses, however, courts have been reluctant to continue recognizing an alienation of affection tort for parent-child relationships. (See Raftery v. Scott, 756 F.2d 335, 338–39 (4th Cir. 1985) (explaining that the father's alienation of affection claim could not be a basis for recovery because the tort had been abolished); Zamstein v. Marvasti, 692 A.2d 781, 790 (Conn. 1997) (concluding that because the state legislature abolished alienation of affections, the father could not bring a claim of alienation of affections of his children).

(Exhibit H at ¶ 163)

17

This is precisely the type of legal argumentation that both clouds the factual allegations in the Complaint and which Plaintiff was specifically advised not to include in his Amended Complaint. As Plaintiff has failed to correct this deficiency with his pleading, despite the Court's express directive not to include legal arguments, Plaintiff's Amended Complaint must be dismissed.

3.   <u>Plaintiff's RICO Case Statement Fails to Provide Factual Descriptions Required by Attachment O of the Local Civil Rules</u>.

Plaintiff's RICO Case Statement fails to comply with the requirements for a RICO Case Statement and the Amended Complaint should be dismissed for failing to comply with the Court's prior Order. Attachment O to the Local Civil Rules requires a litigant to "state in detail and with specificity," in relevant part, "[a] description of the pattern of racketeering," to include "the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts . . . ." (Exhibit G at p. 4)

Nowhere within Plaintiff's purported RICO Case Statement is there a single date provided, let alone an explanation of the facts surrounding the predicate acts that Plaintiff vaguely claims. Plaintiff's purported RICO Case Statement is simply deficient of what is required by the Local Rules, and only continues the pattern and practice that Plaintiff has engaged in throughout his anthology of frivolous litigation surrounding the underlying matter. Simply put, Plaintiff has failed to comply with

the Court's directive in its February 6, 2023 Memorandum Order, and the Amended Complaint should be dismissed.

> B.    Res Judicata and the New Jersey Entire Controversy Doctrine Preclude Plaintiff's Claims Against the CG Defendants.

Plaintiff's claims under RICO and for Malicious Abuse of Process are precluded by res judicata as the same were brought against the CG Defendants as part of the Prior Federal Complaint and dismissed with prejudice. Moreover, Plaintiff's entire Amended Complaint and claims against the CG Defendants are barred by the New Jersey Entire Controversy Doctrine ("NJ ECD") due to Plaintiff's Prior Federal Complaint, Shaikh v. Cowan & Gunteski, CPA Co et al, docket number 3:15-cv-04106-PGS-DEA, filed in the U.S. District Court for the District of New Jersey on June 17, 2015, as well as the 2018 State Court Complaint.

> 1.    Res Judicata Precludes Plaintiff's Malicious Abuse of Process Claim.

*Res judicata* "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."[18] The purpose of the doctrine is to "require a plaintiff to present all claims arising our [of] the same occurrence in a single suit."[19]

---

[18] EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990)
[19] Sheridan v. NGK Metals Corp., 609 F.3d 239, 260 (3d Cir. 2010) (citation omitted).

Here, the Prior Federal Complaint containing claims under RICO and for malicious abuse of process against CG was dismissed in September 2015 with prejudice. (Exhibit C) In other words, the same claim among the same parties and their privies, *i.e.*, Joseph Gunteski, was decided on the merits nearly seven years ago. Accordingly, *res judicata* precludes Plaintiff from pursuing a cause of action under RICO or for malicious abuse of process against the CG Defendants, and the claim must be dismissed.

2.   <u>The NJ Entire Controversy Doctrine Precludes Plaintiff's Amended Complaint in its Entirety</u>.

The Entire Controversy Doctrine is codified in N.J. Rule 4:30A.  It provides in pertinent part:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R*. 4:64-5 (foreclosure actions) and *R*. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

This doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.[20]

---

[20] <u>Wadeer v. New Jersey Mfrs. Ins. Co.</u>, 220 N.J. 591, (2015).

In determining whether a subsequent claim should be barred under this doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding. There is no requirement that there be a commonality of legal issues.

The polestar of the application of the rule is judicial fairness. In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties.

Because plaintiff should have a fair and reasonable opportunity to have fully litigated that claim in the original action, the doctrine does not apply to unknown or unaccrued claims. Put simply, fairness in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication.

Res judicata, like the entire controversy doctrine, serves the purpose of providing finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness. The principle contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation. Application of res judicata requires substantially similar or identical causes of action and issues, parties, and relief sought, as well as a final judgment. Thus, where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second.

The test for identity of a cause of action is the most difficult to determine. To decide if two causes of action are the same, the court must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which

21

redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.[21]

Plaintiff's Amended Complaint is very clearly barred by the NJ ECD. The initial consideration as to whether the NJ ECD applies is whether or not the Plaintiff's current claims had accrued or were known to him at the time of his complaints.[22] All of the conduct in Plaintiff's Amended Complaint is alleged to have occurred in 2014 and 2015, prior to when Plaintiff filed either the Prior Federal Complaint or the State Court Complaint. In other words, Plaintiff's claims in his Amended Complaint were known to him and had accrued at the time of him filing both prior complaints.

Additionally, each factor of the test set forth in Wadeer is clearly satisfied. The first factor is "whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions)."  The first factor is met as Plaintiff's Amended Complaint and the prior complaints make the same complaints about the CG Defendants' participation and

---

[21] Id. at 604-08 (2015) (internal quotes and citations omitted).
[22] Id.

alleged illegal activities as Germadnig's accounting expert in Plaintiff's divorce action.

The second factor is "whether the theory of recovery is the same."  The second factor is met as Plaintiff's Complaint and the prior complaints both allege affirmative acts by the CG Defendants to access Plaintiff's financial information and alter or misrepresent it to Plaintiff's detriment.

The third factor is "whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first)."  The third factor is met as the same witnesses and documents would be necessary for Plaintiff's Amended Complaint as Plaintiff's prior complaints as it all surrounds the same set of facts and circumstances.  Plaintiff, Germadnig, Bill Stabile, and Joe Gunteski of CG were all relevant witnesses then, and would be again in the current action.  Moreover, Plaintiff's same financial documents and electronic files would again be at issue.

Lastly, the fourth factor is "whether the material facts alleged are the same." The material facts alleged all relate back to Plaintiff's divorce proceeding from Germadnig.  The CG Defendants were retained by Germadnig to provide an analysis of Plaintiff's financials.  The CG Defendants were provided Plaintiff's financial information and computer files.  Plaintiff alleged in his prior complaints, as he does

23

in his current Complaint, that the CG Defendants used fraudulent practices to damage Plaintiff. The material facts alleged in each action are identical.

Accordingly, the NJ ECD is applicable. There is no requirement that there be "commonality between the legal issues." Plaintiff was aware off his current claims at the time of his prior complaints and all four factors are met under the <u>Wadeer</u> test. Therefore, Plaintiff's Amended Complaint must be dismissed with prejudice under the NJ ECD.

C.   <u>The Statute of Limitations Bars Plaintiff's Claims for Malicious Prosecution; False Imprisonment; NIED; IIED; Violation of Civil Rights under 42 U.S.C. Section 1983; Violation of the Equal Protection Clause of the US Constitution; and Plaintiff's RICO claims.</u>

Plaintiff has alleged several claims against the CG Defendants, and alluded to others, all of which the statute of limitations has long since passed. Under New Jersey law, the statute of limitations for malicious prosecution and conspiracy claims is six years,[23] whereas the two-year statute of limitations applies to claims for false imprisonment, NIED, and IIED.[24] Under federal law, "courts are require[d]...to

---

[23] <u>Pitcock v. Kasowitz, Benson, Torres & Friedman, L.L.P.</u>, 426 <u>N.J. Super.</u> 582, 585 (App. Div. 2012) (malicious prosecution); <u>Pruco Life Ins. Co. v. Koslowsky</u>, 2015 <u>U.S. Dist. LEXIS</u> 100515, at *10-11 (D.N.J. July 31, 2015) (conspiracy).

[24] <u>Joseph v. Lopez</u>, 2005 <u>U.S. Dist.</u> LEXIS 18087, at *6-10 (D.N.J. 2005) (noting the statute of limitations for false arrest and false imprisonment claims is two years); <u>N.J.S.A.</u> § 2A:14-2 (providing that all personal injury claims, which include NIED and IIED claims, have a two-year statute of limitations).

borrow and apply to all § 1983 claims the one most analogous state statute of limitations.[25] New Jersey has applied its two-year statute of limitations to § 1983 claims.[26] Federal RICO claims have a four-year statute of limitations.[27]

Here, putting aside the fact that the Amended Complaint is devoid of any factual allegations that the CG Defendants instituted criminal proceedings, imprisoned Plaintiff in any way or were involved in any arrest he may have been subjected to, the statute of limitations has passed on all Plaintiff's claims. The conduct alleged within Plaintiff's complaint concerns actions and conduct occurring in 2014 and 2015. Therefore, as the Complaint was not filed until April 2022, and the Amended Complaint was not filed until March 2023, the statute of limitations on each of Plaintiff's claims have long since passed. Accordingly, the claims must be dismissed with prejudice against the CG Defendants.

     D.    <u>Plaintiff's Complaint Fails to Properly Allege Cognizable Claims Against the CG Defendants.</u>

Plaintiff's Amended Complaint must be dismissed because of the claims in which he identifies the CG Defendants, he fails to allege the proper elements and

---

[25] <u>Owens v. Okure</u>, 488 <u>U.S.</u> 235, 240 (1989).
[26] <u>Freeman v. State</u>, 347 <u>N.J. Super.</u> 11, 22 (App. Div. 2002)
[27] <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 <u>U.S.</u> 143, 144 (1987)

factual allegations to support those causes of action, or there is simply no private right of action for what Plaintiff has alleged.

### 1.   Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires Plaintiff to prove three elements: (1) the conduct must be extreme and outrageous, (2) be intentional or reckless, and (3) cause severe emotional distress.[28] Here, Plaintiff fails to allege any of the requisite elements of a claim for IIED against the CG Defendants. Indeed, this Count seems largely aimed at Laura Germadnig and her friends and family. (Exhibit H at ¶ 154) Plaintiff nevertheless improperly lumps this Count together as all Defendants. (Id. at ¶ 155) Therefore, Plaintiff's claim for IIED must be dismissed as to the CG Defendants.

### 2.   Parental Alienation

"Parental alienation" is not a recognized cause of action under New Jersey or Federal law. Plaintiff cites Noland-Vance v. Vance, a Missouri Court of Appeals decision, in support of his claim. (Exhibit H at ¶ 159) However, not only does this case have absolutely no bearing on the present matter, but it does not even create a private cause of action for "parental alienation" under Missouri law. Instead, it simply holds that "[a]lienation of a child's affection and interference with visitation

---

[28] Bootay v. KBR, Inc., 437 F. App'x 140, 146 (3d Cir. 2011).

are grounds for a major custody change."[29] Furthermore, Plaintiff pleads no facts establishing that the CG Defendants did anything to alienate Plaintiff from his children. Therefore, Plaintiff's claim for parental alienation must be dismissed as to the CG Defendants.

### 3.   Parental Alienation of Affection

"Parental alienation of affection" is not a recognized cause of action under New Jersey or Federal law. Indeed, Plaintiff himself acknowledges in his Amended Complaint that the cause of action is not recognized. (Exhibit H at ¶ 163) Therefore, Plaintiff's claim for parental alienation of affection must be dismissed as to the CG Defendants.

### 4.   Intentional Interference with the Plaintiff's Rights of His Children

"Intentional interference with the Plaintiff's rights of his children" is not a recognized cause of action under New Jersey or Federal law. Further, Plaintiff pleads no facts establishing that the CG Defendants interfered with Plaintiff's parental rights. Even if such a claim were recognized, it is axiomatic that Plaintiff's failure to plead any factual allegations supporting that the CG Defendants interfered with Plaintiff's parental rights would be fatal to such a claim. Therefore, Plaintiff's claim

---

[29] 321 S.W.3d 398, 419 (Mo. Ct. App. 2010)

for intentional interference with Plaintiff's rights of his children must be dismissed as to the CG Defendants.

### 5.   Civil Conspiracy

Under New Jersey law, "a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'"[30] "Most importantly, the 'gist of the  claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action.'"[31] Here, Plaintiff utterly fails to plead facts to establish an underlying wrong that would act as the predicate for a claim of civil conspiracy. Therefore, his claim of civil conspiracy must be dismissed.

### 6.   Violation of the Plaintiff's Right to Privacy

"To establish a prima facie case of invasion of privacy under New Jersey law, a plaintiff must demonstrate: '(1) an intentional intrusion; (2) into the solitude,

---

[30] Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005), (quoting Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div.) certif. denied, 135 N.J. 468 (1994).
[31] Id. at 177-78.

seclusion, or private affairs of another; (3) that is highly offensive to a reasonable person.'"[32]

First, though Plaintiff's claim for violation of his right to privacy is claimed against "all Defendants," the facts supporting his claim only involve Defendants that are not the CG Defendants.  (Exhibit H at ¶¶ 184-90) Furthermore, Plaintiff fails to establish any intrusion into Plaintiff's life by the CG Defendants that is highly offensive to a reasonable person. Plaintiff and Defendant Germadnig were involved in a highly contentious divorce and the CG Defendants were retained to provide accounting services related to said divorce. This can hardly be characterized as an intrusion into Plaintiff's life that would be highly offensive to a reasonable person. Indeed, inquiry into the accounts of both parties to a divorce is to be expected as part of divorce proceedings, especially one that is contentious. Therefore, Plaintiff's claim for violation of his right to privacy must be dismissed as to the CG Defendants.

### 7.   Malicious Prosecution

A common law malicious prosecution claim requires Plaintiff to prove four elements: (1) a criminal action was instituted by the defendant; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and

---

[32] Swift v. United Food Commer. Workers, 2008 N.J. Super. Unpub. LEXIS 2577 (N.J. Super. App. Div. July 11, 2008) (quoting Tamayo v. Am. Coradious Int'l, L.L.C., 2011 U.S. Dist. LEXIS 149124, at *11 (D.N.J. Dec. 28, 2011)).

(4) the action was terminated favorably to the plaintiff.[33] Here, the Amended Complaint is simply devoid of any allegations of the CG Defendants instituting a criminal action against Plaintiff. Indeed, the factual allegations concerning having a domestic violence complaint and criminal harassment charge made against him all relate back to Plaintiff's ex-wife. There are no allegations of the CG Defendants having any involvement in such action. Rather, the CG Defendants are merely lumped into Plaintiff's claim of having been arrested without probable cause, and nothing more. This is insufficient, and the claim fails as a matter of law. Therefore, it must be dismissed.

### 8.   Violation of Civil Rights under 42 U.S.C. Section 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the violation of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law."[34] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the

---

[33] LoBiondo v. Schwartz 199 N.J. 62, 90 (2009).
[34] Kundratic v. Thomas, 407 F. App'x 625, 627 (3d Cir. 2011) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

30

wrongdoer is clothed with the authority of state law.'"[35] Here, Plaintiff makes no allegation that the CG Defendants were clothed with the authority of state law. Rather, Plaintiff alleges that the CG Defendants were retained to provide accounting services in connection with Plaintiff's divorce. Therefore, Plaintiff's claim under 42 U.S.C. § 1983 must be dismissed.

### 9.    Violation of the Equal Protection Clause

"It is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority."[36] "The Equal Protection Clause "does not . . . add any thing to the rights which one citizen has under the Constitution against another.'"[37] As with Plaintiff's claim under 42 U.S.C. § 1983 above, Plaintiff fails to allege that the CG Defendants were acting under color of law. Therefore, Plaintiff's claim for violation of the Equal Protection Clause must be dismissed as to the CG Defendants.

### 10.    Negligent Infliction of Emotional Distress

Much like Plaintiff's other causes of action, Plaintiff's NIED claim similarly fails. "A cause of action for negligent infliction of emotional distress involves

---

[35] West, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).
[36] United States v. Cruikshank, 92 U.S. 542, 554-555 (1875)
[37] United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831 (1983) (quoting Cruikshank, 92 U.S. at 555) (alteration added).

traditional concepts of duty, breach, and causation."[38] Here, Plaintiff fails to allege any of the requisite elements of a claim for negligent infliction of emotional distress against the CG Defendants. Indeed, as with Plaintiff's claim for intentional infliction of emotional distress, this Count seems largely aimed at Laura Germadnig and her friends and family. (Exhibit H at ¶¶ 213-14) Plaintiff nevertheless alleges this Count as to all Defendants. Therefore, Plaintiff's claim for NIED must be dismissed as to the CG Defendants.

### 11.   False Imprisonment

The Amended Complaint is also devoid of the elements for a claim of false arrest or imprisonment against the CG Defendants.

> False imprisonment is the unlawful detention of an individual.  In this context the word "detention" means the restraint of a person's personal liberty or freedom of movement and the word "unlawful" means without legal authority or justification. An unlawful restraint may result from actual force or by threats consisting of words or conduct if the words or conduct are such as to include a reasonable apprehension of force and the means of coercion are at hand. The unlawful detention need not be for more than a minimal length of time since even a brief restraint of a person's freedom is sufficient to constitute false imprisonment. The restraint must be against the plaintiff's will.  If he/she agreed of his/her own free choice to surrender his/her freedom of motion or personal liberty, there is no false imprisonment.
>
> To be a false imprisonment, the defendant's conduct in restraining the plaintiff must have been done with the intention of causing a

---

[38] Williamson v. Waldman, 150 N.J. 232, 239 (1997), citing Caputzal v. The Lindsay Co., 48 N.J. 69, 74-75 (1966).

confinement.   A purely accidental confinement without the intent to confine is not a false imprisonment nor is the confinement merely because of the negligence of defendant a false imprisonment.[39]

Here, the Amended Complaint is devoid of any factual allegations of the CG Defendants detaining, restraining, or doing anything at all to keep Plaintiff from moving about freely. Plaintiff merely claims in a conclusory paragraph that the CG Defendants had him arrested without probable cause, but provides no factual allegations of how the CG Defendants allegedly did so. (Exhibit H at ¶ 266) Accordingly, Plaintiff's claim for false imprisonment must be dismissed with prejudice against the CG Defendants.

### 12.   RICO Claims

"To establish a RICO claim, a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[40] Under RICO, an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."[41] In his Amended Complaint, Plaintiff alleges that:

> The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an

---

[39] New Jersey Model Civil Jury Charge 3.20A.

[40] Gratz v. Ruggiero, 822 F. App'x 78, 80-81 (3d Cir. 2020) (quoting Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002)).

[41] Boyle v. United States, 556 U.S. 938, 945 (2009) (quoting United States v. Turkette, 452 U.S. 576, 577 (1981)).

ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of lies, fraud, threats and official corruption, to coerce Plaintiff into paying tens of thousands of dollars to the RICO Defendants and their co-conspirators. These RICO Defendants and their co-conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in the United States, funded within the United States, and directed from the United States. Over the years they have adapted their scheme to changing circumstances, recruiting new members to their operation, and expanding the scope and nature of their activities. While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme.

(Exhibit H at ¶ 306) Unsurprisingly, Plaintiff provides absolutely no support for these allegations. Rather, Plaintiff simply labels anyone even tangentially involved in his divorce proceedings as engaging in a criminal enterprise. Therefore, Counts Twelve, Thirteen, and Fourteen of Plaintiff's Amended Complaint must be dismissed with prejudice.

## VI.   <u>CONCLUSION</u>

For the above reasons, it is respectfully requested that the CG Defendants' motion be granted, and Plaintiff's Amended Complaint be dismissed in its entirety, with prejudice.

Respectfully submitted,

Margolis Edelstein

_/s/ Kyle L. Wu_____

Kyle L. Wu, Esq.

April 10, 2023 **Attorneys for Defendants Cowan Gunteski & Co P.A, and Joseph Gunteski, CPA**