**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ZIA SHAIKH, | Civil Action No. 22-2053 (RK) (JBD) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |  |
| LAURA L. GERMADNIG, et al., |  |
| Defendants. |  |

**KIRSCH, District Judge**

Pending before the Court are twenty-three (23) Motions to Dismiss (consolidated at ECF No. 203), Plaintiff's appeal of the Magistrate Judge's order setting aside default against two Defendants (ECF No. 121), Plaintiff's two motions seeking to disqualify counsel for certain Defendants (ECF Nos. 127, 246), two Defendants' motion for Rule 11 sanctions against Plaintiff (ECF No. 128), and Plaintiff's two motions for preliminary injunctions (ECF Nos. 131, 191).

The Court has carefully reviewed the parties' voluminous filings and decides the pending motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow, Defendants' motions to dismiss are **GRANTED**. (ECF Nos. 203, 206, 207, 208, 212, 215, 218, 220, 222, 223, 225, 226, 227, 228, 230, 232, 233, 234, 236, 238, 242, 252, and 255.) While not all Defendants have moved for dismissal, the Court has reviewed the merits of the claims against each and dismisses the First Amended Complaint (ECF No. 154) in full with prejudice. All other motions are **DENIED**. (ECF Nos. 121, 127, 128, 131, 191, 246.)

I.      **BACKGROUND**

This case arises from Plaintiff's steadfast, unrelenting refusal to accept the results of his divorce proceedings or to heed the clear, repeated signal sent by multiple courts' decisions dismissing his various lawsuits. As a result of Plaintiff's maximalist approach to litigation, over the past ten years he has filed or joined at least nineteen (19) federal actions and eight (8) state actions seeking to challenge events and underlying court orders flowing from his divorce. While Plaintiff has varied the forum, the type and quantity of defendants named, and the legal theories he attempted to shoehorn his grievances into, the common theme uniting each lawsuit is Plaintiff's anger with the outcome of his state court proceedings in what can only be viewed as a continual abuse of the state and federal judicial process.

The complaint in the instant case is his most ambitious to date. The Amended Complaint levels fifteen (15) counts against approximately sixty (60) Defendants, including Plaintiff's ex-wife, twenty-eight (28) of her friends and family, her divorce lawyers and associated professionals, Plaintiff's own divorce lawyers, the principals of Plaintiff's children's schools, and an array of police officers, county prosecutors, and state judges who at one point intersected with his state legal proceedings.[1] The 115-paged Amended Complaint alleges a variety of legal theories — common law tort offenses for false imprisonment and parental alienation, section 1983 claims, RICO offenses — seeking to recover $50 million from a sprawling conspiracy that allegedly exploited the state legal system to extract payments from Plaintiff, alienate him from his children, and violate his civil rights.

---

[1] The number of Defendants is approximate because the Defendants named in the Amended Complaint's case caption, included in the initial ECF filing, and listed at various points in the body of the Amended Complaint are not identical.

The Amended Complaint offers a disjointed account of the past ten years' events. Liberally interspersed among its several hundred paragraphs are blocks of legal citations, journal articles, and grievances that flow from Plaintiff's divorce. Plaintiff fails to include specific allegations against over half of the Defendants, often describing wrongs committed by the sixty Defendants as a whole. Many relevant dates are also omitted. Below, the Court recounts the outcome of several of Plaintiff's previous suits, attempts to summarize Plaintiff's general timeline of events, and, as best as possible, tries to untangle the various allegations as they pertain to each group of Defendants.

## A.    PRIOR STATE AND FEDERAL PROCEEDINGS

Plaintiff has filed or joined nineteen (19) federal actions in this District[2] and eight (8) actions in New Jersey[3] over the past ten years, for harms arising from the fallout of his divorce and its related proceedings. Many of the cases involve overlapping, if not identical, parties and allegations that Plaintiff brings in the instant case. A brief review of Plaintiff's path through the state and federal court systems, and their outcomes, is instructive.[4]

---

[2] *See Edelglass v. New Jersey* (No. 14-760); *Allen v. Chell* (No. 15-3519); *Shaikh v. Jackson Twp.* (No. 15-4106); *Shaikh v. Germadnig-Shaikh* (No. 16-340); *Hagberg v. Ford* (No. 16-1189); *Shaikh v. Fromosky* (No. 16-3826); *Shaikh v. Zabarsky* (No. 16-4140); Sha*ikh v. Germadnig* (No. 17-12649); *Family Civil Liberties Union v. Child Protection and Permanency* (No. 18-2597); *Shaikh v. Germadnig* (No. 18-9035); *Shaikh v. Internal Revenue Service* (No. 18-17695); *Shaikh v. Arkush* (No. 19-20597); *Shaikh v. Einbinder* (No. 20-2540); *Shaikh v. Schlendorf* (No. 20-20003); *Shaikh v. Landi* (No. 20-20005); *Shaikh v. Brown* (No. 20-20007); *Shaikh v. Mcmahon* (No. 20-20008); and *Shaikh v. Citta Holzapfel and Zabarsky P.C.* (No. 20-11057).

[3] *See Shaikh v. Germadnig Shaikh* (No. OCN-L-002818-15), consolidated with No. FM-15-500-14W; *Shaikh Zia v. Landi August* (No. MON-L-002659-20); *Shaikh Zia v. Reeves Melissa* (No. MON-L-000844-19); *Shaikh Zia v. Schlendorf David* (No. MON-L-001644-18); *Shaikh Zia v. David Glassman Esq.* (No. MON-L-003996-18); *Shaikh Zia v. Glassman David* (No. MON-L-003542-18); *Shaikh Zia v. Clark Ryan* (No. MON-L-003977-18); *Shaikh Zia v. Pityinger Nada* (No. OCN-L-000853-18).

[4] Plaintiff's family court proceeding, and the orders that have spawned from it, are not publicly accessible. However, the several parties have included state court orders as exhibits to their various filings, of which the Court takes judicial notice. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (in deciding a motion to dismiss, a district court is permitted to review matters of public record and take judicial notice of prior judicial opinions).

Plaintiff filed for divorce from Laura Germadnig ("Laura") on September 17, 2013. Order, *Shaikh v. Germadnig*, No. 16-1189 (D.N.J. Sept. 26, 2017), ECF No. 27 at 4. Plaintiff is the father of three children with Laura. *Id.* On December 20, 2016, Plaintiff and Laura were divorced pursuant to a Final Judgment of Divorce, which was subsequently amended on January 26, 2017. Order, *Shaikh v. Germadnig*, No. FM-15-500-14 (N.J. Super. Ct. Oct. 19, 2017).[5]

On June 17, 2015, Plaintiff filed suit in federal court against nineteen (19) defendants, including Laura; Laura's parents; Laura's friends Melissa and Kenneth Reeves; Laura's divorce attorney and his wife, Steven and Kimberly Zabarsky; Laura's other divorce attorney, Cathleen Coneeny; and Laura's forensic accountant for the divorce, Cowan & Gunteski. Complaint, *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. June 17, 2015), ECF No. 1. The complaint described various legal proceedings and events incidental to the divorce proceedings that Plaintiff alleged gave rise to claims against different combinations of defendants for violations of section 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspiracy to violate his civil rights, and the common law offenses of malicious prosecution, abuse of process, and false arrest and imprisonment. *Id.*

On November 9, 2016, the Honorable Peter G. Sheridan held a hearing and dismissed each of Plaintiff's claims on the record. Hr'g Tr., *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. Nov. 9, 2016), ECF No. 160. Dismissing Plaintiff's abuse of process claim, the Court summed up Plaintiff's litigation strategy:

> So to me, when you look at the case, it appears that Mr. Shaikh and his wife have a domestic relation issue, they're seeking divorce; when you seek divorce you're seeking control or the custody of the kids, as well as the property has to be divided.

---

[5] Available as exhibit to Defendants' Motion for Rule 11 Sanctions, ECF No. 128-8.

> The answers haven't been to Mr. Shaikh's druthers I guess, so he's upset with them all. He comes into this Court looking for some type of relief from a state court action. But it looks as if all the parties that I've seen so far have all acted in accordance with that. And there's been serious issues as to domestic violence that has been decided based upon the facts that the judges had looked at.

*Id.* at 64:19–65:5. After listening to Plaintiff articulate his theory that the defendants were in a conspiracy against him, Judge Sheridan dismissed Plaintiff's civil conspiracy tort claim, noting:

> Here, it looks to me that we have a number of defendants, but there was an ongoing domestic relations case; there were independent decisions made by different Superior Court judges; there were actions before some municipal courts I believe that were acted on by those municipal courts; I didn't see any extraordinary issues — not even extraordinary, any issues of some type of conspiracy of people acting together in some manner to hurt Mr. Shaikh.

*Id.* at 56:20–57:2. Plaintiff did not appeal the Court's order. Four years later, Plaintiff filed a motion reopen the case, which the Court denied. Order, *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. Nov. 16, 2020), ECF No. 161.

On October 9, 2015, Plaintiff filed suit in New Jersey against his ex-wife and her attorney Steven Zabarsky, bringing similar claims for intentional infliction of emotional distress and interference with Plaintiff's parental rights. Complaint, *Shaikh v. Germadnig*, No. OCN-L-2818-15 (N.J. Super. Ct. Oct. 9, 2015).[6] After the case was consolidated with Plaintiff's ongoing matrimonial action, *see* Order for Consolidation, *Shaikh v. Germadnig*, No. FM-15-500-14 (N.J. Super. Ct. Nov. 16, 2015),[7] Plaintiff removed the consolidated action to federal court. Notice of Removal, *Shaikh v. Germadnig*, No. 16-340 (D.N.J. Jan. 19, 2016), ECF No. 1. Judge Sheridan granted remand on April 11, 2016. Order, *Shaikh v. Germadnig*, No. 16-340 (D.N.J. Apr. 11, 2016), ECF No. 20.

---

[6] Available as exhibit to Defendants' Motion for Rule 11 Sanctions, ECF No. 128-4.

[7] Available as exhibit to Defendants' Motion for Rule 11 Sanctions, ECF No. 128-5.

Plaintiff has also been party to a number of federal suits seeking to challenge the New Jersey state family court proceedings and overturn the results of their custody orders. On May 22, 2015, Plaintiff and other parents similarly dissatisfied with the results of their state custody proceedings filed suit against several New Jersey judges, including the Honorable Madelin F. Einbinder, P.J.F.P., for "depriv[ing] Plaintiffs of liberty under color of law by depriving parents of the fundamental right to the care, custody and control of their minor children without affording them even minimal procedural protections guaranteed by the United States Constitution." Complaint, *Allen v. Chell*, No. 15-3519 (D.N.J. May 22, 2015), ECF No. 1 ¶ 1. On August 7, 2015, Plaintiff joined a separate lawsuit against several New Jersey family court judges, including Judge Einbinder and the Honorable Marlene Lynch-Ford, A.J.S.C. The Honorable Freda L. Wolfson observed that the two suits sought "to have this Court dramatically change the legal landscape of New Jersey and the laws governing child custody proceedings between parents." Opinion, *Edelglass v. New Jersey*, No. 14-760 (D.N.J. Apr. 27, 2016), ECF No. 43 at 3. In a 35-paged order, Judge Wolfson dismissed the claims in part because "Defendant Judges are not the proper defendants for Plaintiffs' request for declaratory relief because they were all acting as neutral arbiters in the underlying custody disputes." *Id.*

On March 1, 2016, Plaintiff and a similarly-situated father filed another complaint in this District against the State of New Jersey and others seeking declaratory relief to alter the terms of the visitation the state family court had granted each with their children. Amended Complaint, *Shaikh v. New Jersey*, No. 16-1189 (D.N.J. Dec. 27, 2016), ECF No. 15. The complaint alleged that orders issued during the state family court proceedings throughout August 2014 were constitutionally defective. *Id.* On September 26, 2017 in a 21-paged opinion, the Honorable Brian R. Martinotti dismissed the complaint, holding that the state family court proceedings afforded

Plaintiff sufficient process and were constitutionally sound. Opinion, *Shaikh v. New Jersey*, No. 16-1189 (D.N.J. Sept. 26, 2017), ECF No. 27. In an eleven-paged opinion, the Third Circuit affirmed. Court of Appeals Opinion, *Shaikh v. New Jersey*, No. 16-1189 (D.N.J. Oct. 16, 2018), ECF No. 37-1. In concluding, the Third Circuit panel observed:

> Shaikh asks for injunctive and declaratory relief seeking to prevent the family court from denying his plenary hearing requests in future custody proceedings. This would require the federal District Court to exert control over the New Jersey family court's day-to-day operations. Here, the District Court concluded that it is not the job of the federal court to sit in constant supervision of the New Jersey family court, which would essentially transform federal courts into family courts.

*Id.* at 10–11 (citations omitted).

While Plaintiff attempted to litigate his claims in federal court, he continued filing on the state docket. On October 19, 2017, Judge Lynch-Ford made findings related to Plaintiff's conduct in state court and imposed restrictions on his ability to file in the future:

> The Plaintiff has been verbally abusive to the Court, and has refused to follow normal protocols for conducting a proper hearing on a motion. The Plaintiff has also filed documents with the Court that are nonsensical, invoking "writs" "prerogative writs" and naming the Court as a defendant in a matrimonial litigation. The Court has extended great deference to the Plaintiff because he is self represented; however, his multiple and nonsensical submissions to the Court certainly supports a finding that he is a vexatious litigant. **With regard to any future filings with the Superior Court of New Jersey by this Plaintiff, Zia Shaikh, the Court will order that any filing shall be marked received not filed, and shall be reviewed by the Assignment Judge as to whether or not this filing is a duplication of a prior filing; repetitive; non-sensical, or otherwise incomprehensible and thus constituting a vexatious filing. The Court will then determine whether or not to accept the documents for filing.**

Order, *Shaikh v. Germadnig*, No. FM-15-500-14 (N.J. Super. Ct. Oct. 19, 2017) (emphasis in original).[8] Since the entry of that order, the New Jersey Superior Court has dismissed Plaintiff's lawsuits at least five (5) times for Plaintiff's failure to abide by the order's terms.[9]

Additionally, on November 14, 2017, Judge Lynch-Ford ordered Plaintiff to pay $35,942.50 in attorney's fees to Plaintiff's ex-wife's attorneys "for actions taken by plaintiff, namely filing a civil suit in State and Federal courts which were frivolous actions filed [to] extract and exert financial pressure upon defendants." Revised Order for Judgment, *Shaikh v. Germadnig*, No. OCN-L-2818-15 (N.J. Super. Ct. Nov. 14, 2017).[10]

On March 9, 2020, Plaintiff sued six New Jersey Judges: Judge Einbinder, Judge Lynch-Ford, the Honorable John M. Doran, J.S.C., the Honorable Francis A. Hodgson, P.J.Ch, the Honorable Lisa Thornton, A.J.S.C., and the Honorable Deborah S. Hanlon-Schron, J.S.C. Complaint, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Mar. 9, 2020), ECF No. 1. Judge Martinotti screened the complaint pursuant to 28 U.S.C. § 1915 and dismissed it, citing the judges' absolute immunity. Opinion, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Nov. 25, 2020), ECF No. 7. After Plaintiff filed an amended complaint that again named only state judges as defendants and sought a preliminary injunction to vacate a November 28, 2017 bench warrant, Judge Martinotti again dismissed the complaint. Order, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Jul. 13, 2021), ECF No. 14. After Plaintiff filed a second amended complaint that named the six New Jersey judges again, Judge Quraishi dismissed with prejudice. Order, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Nov.

---

[8] Available as exhibit to Defendants' Motion for Rule 11 Sanctions, ECF No. 128-8.

[9] *See* Order, No. MON-L-844-19 (N.J. Super Ct. May 24, 2019); Order, No. MON-L-1644-18 (N.J. Super. Ct. June 5, 2019); Order, No. MON-L-3996-18 (N.J. Super. Ct. June 5, 2019); Order No. MON-L-3977-18 (N.J. Super. Ct. June 5, 2019).

[10] Available as exhibit to Defendants' Motion for Rule 11 Sanctions, ECF No. 128-7.

1, 2021), ECF No. 22. On appeal, the Third Circuit affirmed. Mandate, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Nov. 1, 2021), ECF No. 26.

More recently, in a series of five cases filed in this District in 2019 and 2020, Plaintiff sued a number of Defendants named in his current suit. These cases remain open but inactive for lack of prosecution.

On November 12, 2019, Plaintiff sued his ex-wife and her family therapist, Seth Arkush. Complaint, No. 19-20597 (D.N.J. Nov. 12, 2019), ECF No. 1. On August 21, 2020, Plaintiff sued his ex-wife, his ex-wife's parents, several of his ex-wife's friends, and his ex-wife's divorce attorney Steven Zabarsky, his law firm, and his retained forensic accountant. Complaint, *Shaikh v. Citta Holzapfel and Zabarsky P.C.*, No. 20-11057 (Aug. 21, 2020), ECF No. 1. On December 21, 2020, Plaintiff filed separate suits against three of his former attorneys and their firms: David Schlendorf, August Landi, and Stephanie Brown. Complaint, *Shaikh v. Schlendorf*, No. 20-20003 (D.N.J. Dec. 21, 2020), ECF No. 1; Complaint, *Shaikh v. Landi*, No. 20-20005 (D.N.J. Dec. 21, 2020), ECF No. 1; Complaint, *Shaikh v. Brown*, No. 20-20007 (D.N.J. Dec. 21, 2020), ECF No. 1).

### B.   CURRENT FEDERAL SUIT

Per Plaintiff's First Amended Complaint ("FAC"), at an unspecified point in 2013 or 2014, Laura and her attorney "conceived a plan to destroy Plaintiff" in the divorce. (FAC ¶ 99.) Laura recruited her friends and family to assist her in this plan "at various dates and times throughout the divorce proceedings." (FAC ¶ 100.)

In January 2014, Laura filed for a temporary restraining order ("TRO") against Plaintiff and filed a police report that Plaintiff abused her. (FAC ¶¶ 101, 102.) A state court granted the TRO, giving Laura sole custody of children and sole possession of the marital residence. Plaintiff

was arrested and charged with harassment. (FAC ¶ 102.) The harassment charge was dismissed on January 30, 2014. (FAC ¶¶ 101, 103.)

During a hearing on April 23, 2014, the family court issued a *pendente lite* order granting Laura sole custody of the children and sole possession of the marital home. (FAC ¶ 106.) At a June 13, 2014 hearing, the family court also ordered Plaintiff to make support payments to Laura and pay the professional fees of Laura's attorney and forensic accountant. (FAC ¶¶ 106, 107.)

After 2014, the Amended Complaint's timeline becomes murkier. From 2014 to 2016, New Jersey superior court judges issued bench warrants for Plaintiff's arrest for failing to make court-ordered support payments. (FAC ¶¶ 118, 130–32.) Plaintiff alleges he was arrested on March 21, 2017 and spent 28 days in jail. (FAC ¶ 32.) The Amended Complaint does not specify the exact nature of the court orders entered against Plaintiff afterwards, but generally alleges that on November 28, 2017, a bench warrant was issued for Plaintiff's arrest (FAC ¶¶ 133, 137) and that in July 2018 and January 2021, Laura was granted a TRO against Plaintiff. (FAC ¶¶ 140, 150.)

### C.   INDIVIDUAL DEFENDANTS [11]

#### i.   *Plaintiff's Ex-Wife and Her Family and Friends*

The Amended Complaint names Plaintiff's ex-wife Laura and twenty-eight (28) individuals who appear to be Laura's family and friends: Siegfried Germadnig; Patricia Germadnig; Mark Germadnig; Stacy Germadnig; Siegfried Germadnig Jr; Barus Germadnig; Skyler "Skye" Germadnig; Crystal Germadnig; David Tarnowski; Nicole Tarnowski; Slava

---

[11] Several of the various lists of co-conspirator Defendants named in the Amended Complaint identify "Camille Eluzzi" as a Defendant. However, no one by this name is included in the case caption or was served with the suit, and the Amended Complaint offers no detail about Eluzzi's involvement in Plaintiff's divorce proceedings. Eluzzi was named in one of Plaintiff's prior suits, and her inclusion in the Amended Complaint appears to be a result of Plaintiff cutting-and-pasting paragraphs from the 2015 complaint into the Amended Complaint. *Compare* FAC ¶ 193 *with* Complaint ¶¶ 207–08, *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. June 17, 2015), ECF No. 1.

Kleyman; Nancy Cavanaugh; Louis Elwell; Janice Elwell; Melissa Reeves; Kenneth Reeves; Christine Gilfillen; Sandra Seaman; Nada Pityinger; Brett Pityinger; Daniel Schastny; Kathleen Schastny; Bradley Mckee; Rene Mckee; Robert I. Mckee; Carol L. Mckee; and Stanley O'Brien; Lori O'Brien (collectively, the "**Family & Friends Defendants**"). (FAC ¶ 2) All Family & Friends Defendants live in New Jersey. (FAC ¶¶ 15–42.)

Against twenty-one (21) of the Family & Friends Defendants, the Amended Complaint contains no specific factual allegations. Rather, the Amended Complaint summarizes that they "actively collud[ed] to violate court orders and conspire[d] to block parent child relationship"; "provid[ed] financial support to combat the Plaintiff for his parental rights"; and "actively participat[ed]" in the conspiracy by "giving advice to Defendant Laura on how to block Plaintiff's access to his children." (FAC ¶ 109.)

Against seven (7) of the Family & Friends Defendants, the Amended Complaint singles out individual Defendants by name but does not necessarily include more specific allegations.

Plaintiff alleges that his ex-wife Laura was at the center of the conspiracy to extract money from Plaintiff through the divorce proceedings and alienate Plaintiff from his children. Plaintiff claims that Laura blocked his court-ordered access to the children and lied in police reports, in court, and to Child Protective Services about how Plaintiff treated her and their children. (FAC ¶¶ 109, 143.) Laura's parents, Defendants Siegfried Germadnig and Patricia Germadnig, "willfully participated to secret [Plaintiff's] children, colluded with Defendant Laura to violate courts [*sic*] orders, block[ed] access to children and provided financial funding to support the illegal and bad behavior of their daughter." (FAC ¶¶ 109, 122.)

Defendants Slava Kleyman and Nancy Cavanaugh "directed in significant part" the "sham civil and criminal litigation" designed to extract payments from Plaintiff. (RICO Case Statement,

Ex. to FAC ("RICO Statement") ¶ 11.) The couple is a "crime family" with "ties with the Russian mafia thr[ough] their logistics company IMS (Intermodal Management Services)." (*Id.*) Plaintiff asserts that Cavanaugh provided false testimony during Plaintiff's July 14, 2021 "continuation of the TRO trial." (FAC ¶ 151.)

On March 10, 2014, Defendant Melissa Reeves "attacked Plaintiff physically" and filed a police report against Plaintiff, (FAC ¶ 105), which was later dismissed. (FAC ¶ 121.) On August 1, 2014, Defendant Nada Pityinger stole Plaintiff's U.S. passport and client files and gave them to Laura in order to somehow harm Plaintiff. (FAC ¶ 110.)

      ii.     *Plaintiff's Ex-Wife's First Divorce Lawyer*

The Amended Complaint names Laura's first divorce attorney, Cathleen Coneeny and her legal malpractice insurance carrier (the "**Coneeny Defendants**"). Coneeny represented Laura from some point in 2013 until February 2014. (FAC ¶ 104.) With Laura, Coneeny "conceived a plan to destroy Plaintiff" and told Laura that she "knows how to make Middle Eastern men cry." (FAC ¶ 99.) Coneeny advised Laura to "incite Plaintiff to anger while secretly recording" him to gain "legal advantage" in the divorce proceedings. (FAC ¶ 100.)

      iii.     *Plaintiff's Ex-Wife's Second Divorce Lawyer*

The Amended Complaint names Laura's second divorce attorney, Steven Zabarsky ("Zabarsky"), his spouse Kimberly Zabarsky, Zabarsky's law partner William Holzapfel, their law firm Citta, Holzapfel & Zabarsky, and the law firm's legal malpractice insurance carrier (the "**Zabarsky Defendants**"). (FAC ¶ 104.)

Laura hired Zabarsky in February 2014. (FAC ¶ 104.) The Amended Complaint describes perceived corrupt professional and personal relationships Zabarsky and Holzapfel have with judges and individuals involved in Plaintiff's case. Plaintiff alleges as an example that Zabarsky

and Holzapfel "mentored" and "groomed" Judge Einbinder, who initially presided over Plaintiff's divorce proceedings. (FAC ¶ 89.) Judge Einbinder and Assistant County Prosecutor John Foti Jr. are married, and at their wedding Zabarsky was Foti's best man. (FAC ¶ 91.) Zabarsky and Judge Einbinder had a "quid pro quo" agreement regarding Plaintiff's divorce case. (FAC ¶ 116.)

While Plaintiff was interviewing potential attorneys to represent him, they told him that Zabarsky is a "thug" and unethical. (FAC ¶ 108.) Zabarsky illegally installed spyware on Plaintiff's phone and a GPS tracker on Plaintiff's car. (FAC ¶¶ 112–115.) Zabarsky filed court documents that included photos of Plaintiff's passport and travel information. (FAC ¶ 120.)

### iv.     *Plaintiff's Ex-Wife's Second Divorce Lawyer's Forensic Accountants*

The Amended Complaint names Joseph Gunteski, an accountant, and his firm Cowan Gunteski & Co. (the "**Gunteski Defendants**"). (FAC ¶¶ 55–56.) Defendant John Wiley is the "chief investigator of complaints" for Defendant Association of International Certified Public Accountants ("AICPA") (the "**AICPA Defendants**"). (FAC ¶ 57–58.) Wiley lives in North Carolina, and AICPA's main office is in North Carolina. (FAC ¶ 57–58.)

Zabarsky hired Gunteski to trace Plaintiff's assets during the divorce proceedings. According to Plaintiff, Zabarsky and Gunteski conspired to "deprive [Plaintiff] of his property through falsifying and fabricating the amount of money he makes and the amount of assets he has, and then threatening to deprive Plaintiff of liberties if he doesn't make payments." (FAC ¶ 117.) On June 9, 2015, Gunteski wrote a report on his investigation into Plaintiff's finances, which overstated the amount of Plaintiff's assets. (FAC ¶ 124.) The report was filed with the court in the divorce proceedings, despite the fact that it was "not final, but preliminary in nature and could not be relied upon." (FAC ¶ 124.) Gunteski falsely testified that Plaintiff was hiding money. (FAC

¶ 124.) Gunteski and Zabarsky sent "fraudulent extortion letters" to Plaintiff demanding payment. (FAC ¶ 126.)

On November 5, 2018, Plaintiff filed a complaint with the AICPA about Gunteski's actions. (FAC ¶ 125.) John Wiley, the AICPA employee who reviewed Plaintiff's complaint, dismissed it because Gunteski's report was "preliminary." (FAC ¶ 125.)

v.      *Plaintiff's Ex-Wife's Family Therapist*

The Amended Complaint names Seth Arkush and his firm Integrated Care Concepts LLC (the "**Arkush Defendants**"). (FAC ¶ 59.) At some point, Arkush "submitted a false personality report" to the state court "without ever meeting or interviewing Plaintiff." (FAC ¶ 147.) The New Jersey Board of Social Work Examiners later "reprimanded" Arkush for alleged "gross incompetence and violation of various laws on the submission of a false report about the Plaintiff." (FAC ¶ 148.)

vi.      *Plaintiff's Former Divorce Lawyers*

The Amended Complaint names four attorneys who represented Plaintiff in his legal proceedings over the past ten years: Stephanie J. Brown, August J. Landi, Margie McMahon, and David Schlendorf (the "**Plaintiff Lawyer Defendants**"). Landi, McMahon, and Schlendorf live in and practiced in New Jersey during their representation of Plaintiff. (FAC ¶¶ 43–45.) The Amended Complaint does not identify Brown's home state.

Plaintiff hired Stephanie Brown to represent him in his divorce proceedings beginning in July 2013, until she "abruptly" stopped representing Plaintiff in May 2014. (FAC ¶¶ 97, 108.) Plaintiff hired Landi around October 2014. (FAC ¶ 111.) The Amended Complaint is silent as to when Plaintiff retained McMahon and Schlendorf, or the services they provided him. The attorneys each agreed to file certain motions but then did not. (FAC ¶ 141.) Brown was disbarred in 2020

for "gross incompetence handling Plaintiff's divorce." (FAC ¶ 149.) Schlendorf was "publicly admonished" by New Jersey's attorney ethics panel in 2018 for "failing to adequately represent clients in family law matters" and subsequently disbarred in 2022. (FAC ¶ 45.)

> vii.    *Jackson Township Police*

The Amended Complaint names two Jackson Township police officers, retired Chief Matthew Kunz and Officer Christopher Parise (the "**Police Defendants**"). (FAC ¶¶ 60–61.) They "deliberately interfered with and refused to take in police reports on Plaintiff's complaints" and "harassed" Plaintiff when he called to request they conduct wellness checks on his children. (FAC ¶ 142.)

> viii.    *Jackson Township School*

The Amended Complaint names Geoffrey Brignola, Debra Phillips, Adriann Jean-Denis, who were the principals of New Jersey schools Plaintiff's children attended, as well as the Jackson School District itself (the "**School Defendants**"). (FAC ¶ 64–67.) The School Defendants denied Plaintiff's attempts to enter his children's schools while they were there and called the police when he attempted to enter. (FAC ¶ 144.)[12]

> ix.    *Ocean County Prosecutors*

The Amended Complaint names Bradley Bilheimer and John Foti Jr., who were assistant prosecutors in the Ocean County Prosecutor's Office (the "**Prosecutor Defendants**"). (FAC ¶¶ 62–63.) The Prosecutor Defendants "refused prosecution of Laura" for violating Plaintiff's

---

[12] The Amended Complaint references a "September 06, 2019 [] Jury verdict conducted by WTPCS (we the people court services) of Arizona," in which Plaintiff was granted full custody of his children. (FAC ¶ 139.) Plaintiff complains that the Principal Defendants denied Plaintiff access to his children despite this "Jury verdict." (FAC ¶ 139.) Plaintiff offers no evidence that the referenced "jury verdict" was actually decided by an Arizona State jury or how an Arizona court could have had jurisdiction to hear a custody matter over children who have never resided in Arizona.

parental rights. (FAC ¶ 145.) Foti had previously "represented [Laura] in a criminal complaint at Jackson Municipal court" and was married to Judge Einbinder. (FAC ¶ 145.)

          x.     *Superior Court Judges*

The Amended Complaint names five New Jersey Superior Court judges who presided over Plaintiff's divorce and related proceedings over the past ten years (the "**Judiciary Defendants**"). (FAC ¶ 47–51.)

The Honorable Madelin F. Einbinder, P.J.F.P., presided over Plaintiff's divorce beginning in February 2014 until an unspecified point in time. As detailed in Section I.C.3 *supra*, Judge Einbinder allegedly had improperly close personal and professional relationships with the Zabarsky Defendants that interfered with her impartiality hearing Plaintiff's cases. (FAC ¶¶ 88–91.)

The Honorable Marlene Lynch-Ford, A.J.S.C., made adverse decisions in Plaintiff's various legal proceedings in 2016 and 2017. (FAC ¶¶ 130, 131, 132, 135)

The Honorable John M. Doran, J.S.C., issued a bench warrant for Plaintiff's arrest in 2017. (FAC ¶ 137.) The Honorable Deborah S. Hanlon-Schron, J.S.C., made adverse decisions in Plaintiff's various legal proceedings in 2019 and 2021. (FAC ¶¶ 140, 150.) The Honorable Francis A. Hodgson, P.J.Ch., rescinded the fee waiver Plaintiff had been granted in one of his proceedings, which the Amended Complaint alleges prevented Plaintiff from contesting the 2019 sheriff's sale of his home. (FAC ¶¶ 134, 138.)

          xi.     *Yelp*

The Amended Complaint names YELP Inc., an "online business marketing and community forum provider that does business in New Jersey." (FAC ¶ 68.) On October 6, 2015, a person using the username "Jack M" posted negative reviews about Plaintiff on the business review website

Yelp, "brutally defaming Plaintiff." (FAC ¶ 127.) In November 2015, Plaintiff contacted Yelp to

seek the identity of "Jack M," but Yelp has not responded to Plaintiff's subpoenas. (FAC ¶ 128.)

### D.   ALLEGED CLAIMS

For purposes of assigning specific Defendants to each of the fifteen Counts alleged in the

Amended Complaint, the pleading splits Defendants into two groups. All Defendants are named

as "**Tort Defendants**." (FAC ¶ 2.) A second group, defined as the "**RICO Defendants**," includes

all Defendants except for the Family & Friends Defendants. (FAC ¶ 3.) Neither Yelp nor Eluzzi is

listed as either a Tort Defendant or RICO Defendant, or in the case caption, although both are

mentioned elsewhere in the document as Defendants.

The Amended Complaint raises nine (9) common law claims:

- Against all Defendants, Count One alleges intentional infliction of emotional distress. (FAC ¶¶ 152–55.)
- Against the Tort Defendants, Count Two alleges parental alienation. (FAC ¶¶ 156–61.)
- Against the Tort Defendants, Count Three alleges parental alienation of affection. (FAC ¶¶ 162–69.)
- Against all Defendants, Count Four alleges intentional interference with Plaintiff's possessory rights to his children and seeks modification of his custody award. (FAC ¶¶ 170–75.)
- Against all Defendants, Count Five alleges civil conspiracy. (FAC ¶¶ 176–83.)
- Against all Defendants, Count Six alleges invasion of privacy. (FAC ¶¶ 184–90.)
- Against RICO Defendants, Count Seven alleges malicious prosecution and abuse of process. (FAC ¶¶ 191–96.)
- Against all Defendants, Count Ten alleges negligent infliction of emotional distress. (FAC ¶¶ 208–18.)
- Against RICO Defendants, Count Eleven alleges false imprisonment. (FAC ¶¶ 260–68.)

The Amended Complaint raises two (2) constitutional claims:

- Against all Defendants, Count Eight alleges a violation of 28 U.S.C. § 1983. (FAC ¶¶ 197–200.)

- Against all Defendants, Count Nine alleges a violation of Plaintiff's due process rights and equal protection rights. (FAC ¶¶ 201–07.)

Additionally, Counts Twelve, Thirteen, and Fourteen of the Amended Complaint raise three (3) RICO claims against the RICO Defendants. The Amended Complaint alleges the RICO Defendants participated in a "multi-faceted campaign of lies, fraud, threats and official corruption, to coerce Plaintiff into paying tens of thousands of dollars to the RICO Defendants and their co-conspirators." (FAC ¶ 306.) The Zabarsky Defendants oversaw the criminal enterprise and were responsible for collecting funds from Plaintiff and disbursing them to the RICO defendants. (FAC ¶ 306.a.) The Gunteski Defendants and the Arkush Defendants initiated "sham litigation" in the family court. (FAC ¶ 306.b.) The Police Defendants acted as the RICO Defendants' "private army." (FAC ¶ 306.c.) As predicate offenses, the Amended Complaint alleges extortion in violation of the Hobbs Act (18 U.S.C. § 1951), extortion in violation of a New Jersey's theft by extortion penal law (N.J. § 2C:20-5), mail and wire fraud (28 U.S.C. §§ 1341, 1343), money laundering (18 U.S.C. §1956), and obstruction of justice (18 U.S.C. § 1503). (FAC ¶¶ 272–89.)

Finally, the Amended Complaint brings one claim of fraud against three of Plaintiff's former attorneys — Defendants Landi, McMahon, and Schlendorf — in connection with their representation of Plaintiff. (FAC ¶¶ 304–09.)

### E.   PROCEDURAL HISTORY

Plaintiff initiated the instant action on April 8, 2022. (ECF No. 1.) Motions to dismiss began to collect on the docket shortly afterwards, starting on May 25, 2022. (ECF Nos. 16, 21, 37, 41, 46, 50, 52, 53, 55, 76, 88, 90, 93, 120.)

On February 6, 2023, the Honorable Georgette Castner reviewed Plaintiff's Complaint *sua sponte* and noted four deficiencies in the Complaint. (ECF No. 142.) *First*, the Complaint failed to comply with Federal Rule of Civil Procedures 8(a)'s requirement that it include a "short and plain"

statement of the Plaintiff's basis for relief. (*Id.* at 1.) *Second*, even accounting for the leniency afforded *pro se* pleadings, the Complaint contained a myriad of legal arguments and a paucity of facts. (*Id.* at 1.) *Third*, the Complaint did not comply with Local Civil Rule 11.2's verification requirement. (*Id.* at 2.) *Fourth*, the Complaint failed to include a RICO Case Statement, which is required based on the "large number of Defendants and the varied allegations in this matter." (*Id.* at 2.) Judge Castner terminated the pending motions to dismiss and ordered Plaintiff to file an amended complaint by March 6, 2023 that addressed the deficiencies identified in the order.

On March 6, 2023, Plaintiff filed the subject 114-paged, 309-paragraph Amended Complaint naming approximately sixty (60) Defendants. (ECF No. 154.) Defendants began re-filing their motions to dismiss. On May 9, 2023, Judge Castner consolidated the twenty-three (23) pending motions to dismiss into ECF No. 203. (ECF No. 263.)[13] In two filings on April 10 and 11, 2023, Plaintiff opposed dismissal. (ECF Nos. 243, 244.) Defendants have had the opportunity to reply. (ECF Nos. 209, 247, 248, 249, 250, 251, 253, 254, 259, 262, 264.)

Six other motions are pending on the docket.

- On November 4, 2022, the Honorable Rukhsanah L. Singh set aside default entered against two Defendants. (ECF No. 119.) On November 9, 2022, Plaintiff moved to vacate the Order (ECF No. 121).

- Plaintiff moved to disqualify the New Jersey Attorney General's Office from representing the Prosecutor and Judiciary Defendants, and to disqualify the attorney representing the Police Defendants. (ECF Nos. 87, 91, 92, 103, 104). Judge Singh denied the motions, (ECF No. 118), and Plaintiff appealed (ECF No. 127). Separately on April 16, 2023, Plaintiff again moved to disqualify the attorneys representing certain Defendants on the grounds that Plaintiff has filed "pending complaints against all listed government defendants, thus creating an impassable conflict of interest." (ECF No. 246.)

- On December 2, 2022, two of the Family & Friends Defendants moved for Rule 11 sanctions against Plaintiff, arguing that Plaintiff's repeated lawsuits in state and

---

[13] The Court administratively terminated the motions pending at ECF Nos. 206, 207, 208, 212, 215, 218, 220, 222, 223, 225, 226, 227, 228, 230, 232, 233, 234, 236, 238, 242, 252, and 255.

federal court against them were "frivolous and designed strictly to harass and intimidate." (ECF No. 128.)

- On January 1, 2023 and March 19, 2023, Plaintiff filed motions for a preliminary injunction against several Judiciary Defendants to "vacate [Plaintiff's] November 28, 2017 bench warrant for lack of in personam and subject matter jurisdiction and violations of 18 u.s.c. §241, 242." (ECF Nos. 131, 191 (formatting altered).)

## II.   **DEFENDANTS' MOTION TO DISMISS**

### A.   SUBJECT MATTER JURISDICTION

Subject matter jurisdiction is a threshold question that may be raised in a party's motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1) (the Court "must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim"). A Rule 12(b)(1) jurisdictional challenge can either raise a "facial" or "factual" attack. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). In a "facial" attack, the Court reviews only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the plaintiff must prove the court has subject matter jurisdiction." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Numerous Defendants challenge the Court's jurisdiction to hear Plaintiff's claims. The Amended Complaint asserts the Court has federal question jurisdiction (28 U.S.C. § 1331), diversity jurisdiction (28 U.S.C. § 1332), and supplemental jurisdiction (28 U.S.C. § 1367) over the action. (FAC ¶ 71.)

The Court has original jurisdiction for claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This includes Plaintiff's claims brought under the RICO Act, *see Hakim v. Dakota Asset Servs. LLC*, No. 22-587, 2023 WL 2754642, at *2 (D.N.J. Mar. 31, 2023) or under 42 U.S.C. § 1983, *see Lancaster v. Piccoli*, No. 12-1995, 2023 WL

3916295, at *3 (D.N.J. June 9, 2023). For the reasons given in the following sections, the Court concludes that these federal causes of action must be dismissed.[14] The Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Obuskovic v. Wood*, 761 F. App'x 144, 148–49 (3d Cir. 2019) (the court "has discretion to 'decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction'" (quoting 28 U.S.C. § 1367(c)(3))).

As the federal claims must be dismissed, the Court also lacks diversity jurisdiction over the action under 28 U.S.C. § 1332. Establishing diversity jurisdiction requires complete diversity, i.e. in a case with multiple plaintiffs or multiple defendants, that "no plaintiff [is] a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citations omitted). A natural person is a citizen of the state where he is domiciled. *Id.* (citing *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d. Cir. 2008)). A corporation "is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Id.* (citing 28 U.S.C. § 1332(c)).

---

[14] The Amended Complaint also asserts the Court's jurisdiction under 28 U.S.C. § 1337, the Federal Tort Claims Act; the Restatement of Torts; 42 U.S.C. §§ 1981, 1985, 1986, 1988, and the "general legal and equitable powers of this Court." (FAC ¶¶76–77.) "[P]assing references" to federal statutes "do not form any basis for federal question jurisdiction" when the complaint "makes no factual allegations that could conceivably suggest" a claim under that statute. *Hillman v. Borough of Collingdale*, No. 22-2260, 2023 WL 2400740, at *2 (3d Cir. Mar. 8, 2023). Because the Amended Complaint does not mention these statutes other than in passing in two paragraphs asserting jurisdiction, they do not establish this Court's jurisdiction.

Furthermore, whether the Court even has federal question jurisdiction over Plaintiff's RICO Act and section 1983 claims is questionable. Federal Rule of Civil Procedure 12(b)(1) permits the Court to dismiss a complaint *sua sponte* if the allegations are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Germany v. Power 105.1 Radio*, 790 F. App'x 442, 443 (3d Cir. 2019) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (internal citations and quotation marks omitted)); *see also Oneida Indian Nation v. Cnty. of Oneida*, 414 U.S. 661, 666–67 (1974) (complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) where plaintiff's federal claim is "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the district court").

Plaintiff is a citizen of New Jersey. (FAC ¶ 14.) The Amended Complaint pleads that almost every Defendant is domiciled in New Jersey (for the natural person Defendants) or has its place of business in New Jersey (for the corporate Defendants). (FAC ¶¶ 15–70.) The only two Defendants identified as having presences outside New Jersey are AICPA, with its place of business in North Carolina, and John Wiley, who is domiciled in North Carolina. (FAC ¶¶ 57–58.) Because it is evident from the "the allegations of the complaint," *Const. Party of Pa.*, 757 F.3d at 357, that complete diversity is lacking among the parties, as virtually all Defendants are citizens of the same state as Plaintiff, diversity jurisdiction fails.

**B.   RULE 8**

**1.   *Legal Standard***

Federal Rule of Civil Procedure 8 requires a complaint to contain: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." R. 8(d)(1). The Rule's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Third Circuit has advised that courts should apply procedural rules, like Rule 8, "flexibl[y]" to *pro se* plaintiffs. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Indeed, this caution is "driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Higgs v. Attorney Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citations omitted) (cleaned up); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." (citation omitted)).

However, a plaintiff's *pro se* status does not permit him to ignore the requirements of the federal rules or the purposes they serve. "[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Even a *pro se* plaintiff must "allege sufficient facts in [the] complaint[] to support a claim." *Mala*, 704 F.3d at 245 (citation omitted). Defendants haled into court by a *pro se* plaintiff still need "fair notice" of the claims they will be expected to answer. *Twombly*, 550 U.S. at 555. Where a *pro se* plaintiff has sued defendants who in turn elect to proceed *pro se*, the Court's obligation to construe pleading liberally cuts both ways. *Choi v. Keith*, No. 22-2812, 2023 WL 2528222, at *2 (D.N.J. Mar. 15, 2023) ("As both parties in this matter have elected to appear *pro se*, the Court recognizes its obligation to liberally construe an unrepresented individual's submissions.")

### 2.   *Discussion*

Plaintiff's 114-paged Amended Complaint, replete with drop cites and general grievances, and lacking specific allegations against most Defendants or many relevant dates, unquestionably violates Rule 8.

First, the length of the Amended Complaint alone likely fails Rule 8's requirement that the complaint be "short and plain." *See, e.g., Wilcher v. Potter*, No. 08-2723, 2009 WL 235497, at *2 (D.N.J. Jan. 29, 2009) (139-paragraph amended complaint did not provide "short and plain statement" under Rule 8); *Brejcak v. Cnty. of Bucks*, No. 03-4688, 2004 WL 377675 (E.D. Pa. Jan. 28, 2004) (216-paragraph amended complaint "r[an] afoul of the letter and spirit of the Federal Rules"). The pleading here runs 114 pages, containing hundreds of paragraphs and a separate 30-

paged RICO Statement. The Amended Complaint also omits many critical dates of when alleged actions occurred. (*See, e.g.*, FAC ¶¶ 141–47.); *Bey v. Super. Ct. of N.J.*, No. 23-3376, 2023 WL 4197180, at *2 (D.N.J. June 27, 2023) (complaint "does not clearly state the date on which the incidents occurred"). Most problematically, the Amended Complaint fails to allege specific wrongdoing against most of the Defendants. *See Isaac v. Sigman*, No. 16-5345, 2017 WL 2267264, at *5 (D.N.J. May 24, 2017) ("Plaintiff does not direct any of her claims against any particular Defendant, nor does she even mention any of the defendants in the body of the complaint.") The pleading here lists approximately sixty Defendants, but for over half fails to describe a single specific, unlawful action the Defendant supposedly has taken. For those whose actions are treated with some particularity, the Amended Complaint fails connect their actions to a sixty-Defendant conspiracy to deprive Plaintiff of his money, alienate him from his children, or violate his civil rights. A Defendant reading the Amended Complaint surely is not left with any semblance of "fair notice" of Plaintiff's claims but rather the conviction that Plaintiff remains dissatisfied with the results of his divorce and related proceedings.

Plaintiff previously has been instructed on Rule 8's requirements and has been admonished for ignoring them. In the instant case, Judge Castner dismissed Plaintiff's original Complaint and granted leave to file an amended complaint. (ECF No. 142.) Judge Castner's order clearly explained how Plaintiff could fix his pleading, noting that the new complaint had to comply with Rule 8(a)'s requirements and could not contain "too many legal arguments and too few facts." (*Id.* at 2.)

Given the Amended Complaint's scattershot approach to pleading and its clear violation of Rule 8, dismissal with leave to re-file would be a fair result. However, enough is enough. Allowing Plaintiff to re-file a second amended complaint would be unfair to the approximately sixty

Defendants in this case, many of whom have been forced to litigate identical issues repeatedly in state and federal court, and some of whom are proceeding *pro se* themselves. In the interest of moving this case forward and avoiding subjecting Defendants to another delay while Plaintiff files a second amended complaint, the Court will not dismiss Plaintiff's Complaint outright for violation of Rule 8. Instead, the Court will expend the significant judicial resources necessary to parse the Amended Complaint for any facts that could support a legally cognizable claim.

### C.   FAILURE TO STATE A CLAIM

#### 1.   *Legal Standard*

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). Even if plausibly pled, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). In short, "[a] complaint must do more than allege the

plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Iqbal*, 556 U.S. at 678–79).

Mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

For fraud claims, a complaint is subject to Rule 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citations omitted); *see also Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) ("[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007))). Rule 9(b)'s heightened pleading standard "ensure[s] that defendants are placed on notice of the precise misconduct with which they

are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citations and quotations omitted).

On a motion to dismiss, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and quotations omitted). The court may also rely on orders entered in related proceedings. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (in deciding a motion to dismiss, a district court is permitted to review matters of public record and take judicial notice of a prior court opinion); *Smith v. Lynn*, 809 F. App'x 115, 117 (3d Cir. 2020) (court properly relied on decisions by state court during plaintiff's prior divorce proceedings in deciding plaintiff's motion to dismiss).

### 2.   *Discussion*

The Court concludes that the Amended Complaint does not satisfy the pleading requirements articulated by the Supreme Court in *Iqbal* and *Twombly*. Accordingly, the Amended Complaint is dismissed with prejudice, for the reasons stated herein.

As an initial matter, the Court notes that much of the Amended Complaint relies on impermissibly vague group pleading, in which it alleges that "Defendants" engaged in certain wrongful conduct. Under limited circumstances it may be appropriate for a pleading to use the short-hand term "Defendants." But when the Complaint has named approximately sixty separate Defendants, including Plaintiff's ex-spouse, her family, his numerous lawyers, her numerous lawyers, police officers, school principals, etc., who each had distinct roles in the alleged misconduct and conspiracy, Plaintiff cannot merely state that "Defendants committed torts." The

complaint must specifically allege which Defendants engaged in what wrongful conduct. *See, e.g.*, *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing the complaint because the "Plaintiffs' Complaint fails to separate out the liability for each defendant"); *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."); *Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) ("Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." (citation omitted)). Without specifying what each Defendant did, the Court is unable to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Therefore, the Court will dismiss all claims against the twenty-two (22) Family & Friends Defendants against whom the Complaint contains no specific allegations of wrongdoing. Merely including these Defendants' names in allegations that they "conspire[d] to block parent child relationship" and "actively participat[ed]" in the conspiracy by "giving advice to Defendant Laura on how to block Plaintiff's access to his children" (FAC ¶ 109) does not offer these Defendants notice of their involvement in any of the nine counts they are included in. All counts against Mark Germadnig, Stacy Germadnig, Siegfried Germadnig Jr., Barus Germadnig, Skyler "Skye" Germadnig, Crystal Germadnig, David Tarnowski, Nicole Tarnowski, Louis Elwell, Janice Elwell, Kenneth Reeves, Christine Gilfillen, Sandra Seaman, Brett Pityinger, Daniel Schastny, Kathleen Schastny, Bradley Mckee, Rene Mckee, Robert I. Mckee, Carol L. Mckee, Stanley O'Brien, and Lori O'Brien are dismissed. That Plaintiff was advised by Judge Castner regarding a number of

pleading deficiencies and directed to remedy the same in an amended complaint, but has failed to do so, warrants, among other reasons, the closure and finality of a dismissal with prejudice.

The Amended Complaint is similarly silent as to how several other Defendants were possibly involved with wrongdoing against Plaintiff. The only alleged wrongdoing against Yelp is that it declined to hand over personal information about one of its users to Plaintiff, (FAC ¶¶ 127–28), for which Yelp cannot be liable under any of the causes of actions Plaintiff lists. The only allegation against John Wiley and the AICPA is that Wiley failed to act on Plaintiff's complaint against Gunteski. (FAC ¶ 125.) This conduct is likewise so far attenuated from the divorce proceedings Plaintiff claims harmed him to make out a claim under any cause of action alleged. Finally, the Amended Complaint lists no action taken by either Eluzzi or Kimberly Zabarsky.[15] The Court now turns to the specific counts alleged in the Amended Complaint.

> i.    *Count One*

Count One alleges intentional infliction of emotional distress ("IIED") against all Defendants. (FAC ¶¶ 152–55.) To prove IIED, Plaintiff must establish "extreme and outrageous" conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) (citation

---

[15] Given the absence of any action taken by, let alone any wrongdoing committed by, these Defendants, the Court need not reach alternative bases for their dismissal. However, the Court notes that dismissal against each is warranted on alternative grounds. Yelp raises meritorious arguments regarding personal jurisdiction and its immunity from liability under Communications Decency Act, 47 U.S.C. § 230. (*See* ECF No. 255-1.) The Court lacks personal jurisdiction over Wiley and the AICPA, who are residents of North Carolina. (*See* ECF No. 252.) Plaintiff's allegations against Eluzzi (a court deputy who signed Plaintiff's January 18, 2014 arrest warrant) and Kimberly Zabarsky (Steven Zabarsky's wife) were before Judge Sheridan in Plaintiff's 2015 case, and therefore barred by *res judicata. See* Section II.D, *infra*. Eluzzi also appears to have never been served with the Complaint or named in the case caption, despite the fact that her name appears several times in the Amended Complaint as "Defendant Eluzzi."

omitted). Plaintiff must show that the defendant "intend[ed] both to do the act and to produce emotional distress," or that the defendant "acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* at 864 (citations omitted). In the context of IIED claims arising from family court proceedings, the ability to bring an IIED claim is circumscribed to avoid "what might otherwise become an increasing slew of litigation arising out of the obviously emotionally-charged proceedings that occur daily in the Family Part." *Innes v. Marzano-Lesnevich*, 87 A.3d 775, 796 (N.J. Super. Ct. App. Div. 2014), *aff'd as modified*, 136 A.3d 108 (N.J. 2016).

The Amended Complaint fails to allege either "extreme and outrageous" conduct or that Defendants had the requisite intent to produce Plaintiff's alleged emotional distress. The claim that several of the Family & Friends Defendants "conspired with other Defendants to secret the Plaintiff's Children and block all access to the Plaintiff" and provided funding and advice to Plaintiff's ex-wife fails to make out a facial case for IIED. (FAC ¶ 154.) A complaint's language that merely recites the elements of the offense with added inflammatory language does not allege sufficient facts to survive dismissal. *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000); *see also Besen v. Weiss*, No. A-0268-15T1, 2017 WL 3708139, at *8 (N.J. Super. Ct. App. Div. Aug. 29, 2017) (affirming dismissal of plaintiff's complaint for IIED premised on claimed parental alienation because "vague inflammatory language" did not describe conduct sufficient to show IIED).[16]

The Court has independently reviewed the Amended Complaint for any other allegations that could make out Plaintiff's IIED claim and has found none. As one New Jersey court found in

---

[16] To the extent the Court cites unpublished decisions of the New Jersey Superior Court, Appellate Division, the Court does not cite such cases for their precedential value but rather for illustrative purposes.

an analogous circumstance, proving IIED requires "one parent intentionally or recklessly imbu[ing] a child with such calumnious accounts of the other parent, so wicked in their intent and so destructive in their effect, that the situation necessitates civil redress." *Segal v. Lynch*, 993 A.2d 1229, 1240 (N.J. Super. Ct. App. Div. 2010) (examples of situations where IIED may be shown involve "prolonged parental abduction, where children are intentionally removed to foreign jurisdictions for the purpose of frustrating the innocent parent's custodial rights, or intentional false accusations of parent/child sexual abuse"); *see also J.S. v. L.M.S.*, No. A-2332-20, 2022 WL 4242308, at *4–5 (N.J. Super. Ct. App. Div. Aug. 31, 2022) ("[A] civil claim for damages in an IIED claim based on alienation of a child's affection is cognizable only in extreme circumstances."). Any such facts are conspicuously absent in the Amended Complaint. Rather, the Plaintiff merely points to activity common to any contentious divorce proceeding. Defendant's conduct as alleged was not so outrageous and extreme that it would support a cause of action for intentional infliction of emotional distress.

The Amended Complaint also fails to offer any evidence showing Defendants' requisite intent, which applies both to the underlying act as well as producing Plaintiff's emotional distress. Defendant had to allege evidence either of Defendants' intent to "produce emotional distress" or that Defendants "act[ed] recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *See Buckley*, 544 A.2d at 863. The Amended Complaint suggests at most Defendants' participation — in varying degrees — in Plaintiff's contentious divorce proceedings. *See McGillvary v. Riez*, No. 22-6430, 2022 WL 17253608, at *2 (D.N.J. Nov. 28, 2022) (dismissing complaint for IIED because plaintiff "does not allege that Defendant acted with any intention of causing him emotional distress"). Alleging in a single sentence that sixty Defendants "committed the tort of Intentional Inflicting of Emotional Distress by their intentional

31

or reckless acts, and by their outrageous and intolerable conduct" (FAC ¶ 155) is a mere "formulaic recitation of the elements" that fails to state a claim. *Iqbal*, 556 U.S. at 678.

Count One is dismissed against all Defendants.

     ii. *Counts Two, Three, and Four*

Counts Two, Three, and Four appear to deal with actions of the Defendants that disrupted Plaintiff's relationship with his children: "parental alienation" (Count Two, FAC ¶¶ 156–61), "parental alienation of affection" (Count Three, FAC ¶¶ 162–69), and "intentional interference with Plaintiff's possessory rights of children" (Count Four, FAC ¶¶ 170–75). Counts Two and Three are pled against the Tort Defendants, and Count Four is brought against all Defendants.

For these three Counts, the Amended Complaint cites several articles discussing the alienation of parents from their children. (FAC ¶¶ 157–59, 166, 168.) However, an academic article cannot create a cause of action. These counts of the Amended Complaint also cite non-New Jersey parental custody cases that describe fact scenarios in which one parent was found to have interfered with the relationship the other had with their children. (FAC ¶¶ 158–59, 163–65, 167.) These cases largely do not deal with whether an independent claim for alienation of a child's affections is legally cognizable in any jurisdiction, let alone under New Jersey law. In addition, the Court is independently unable to find any authority suggesting that a suit by one parent against the other for alienation of the child's affections, let alone against the other fifty-nine Defendants named under these counts, is cognizable under New Jersey law. Accordingly, these three counts must be dismissed for failure to state a legally cognizable cause of action.

The Amended Complaint's language in these counts also suggests that Plaintiff seeks "a change in custody to the alienated parent." (*See* FAC ¶¶ 171, 172 ("to establish a prima facie case for a modification of custody, a parent must show . . .").) To the extent Plaintiff seeks modification

of the terms of the custody order entered by the state family court, this Court lacks jurisdiction to entertain that relief. *See Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 32 (3d Cir. 2013) (affirming dismissal under the *Rooker-Feldman* doctrine "[t]o the extent that [the plaintiff] seeks an order granting him custody of his children and reinstating his parental rights").[17]

Counts Two, Three, and Four are dismissed against all Defendants.

### iii.   *Count Five*

Count Five alleges civil conspiracy against all Defendants. (FAC ¶¶ 176–83.) In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). The "gist" of the civil conspiracy claim is not the unlawful agreement but the underlying predicate tort. *Id.* (quoting *Bd. of Educ. v. Hoek*, 183 A.2d 633 (N.J. 1962)).

As detailed further herein with respect to Plaintiff's RICO Act claims, the Amended Complaint does not allege any evidence of a conspiracy against Plaintiff. The civil conspiracy count itself is silent as to any "agreement" between sixty Defendants, let alone an agreement to "inflict a wrong" against Plaintiff. Instead, in language copied verbatim from the previous counts, Plaintiff alleges that all Defendants' "outrageous, intolerable and wrongful conduct in interfering with the Plaintiff's parental rights has prevented the Plaintiff from exercising his parental rights by causing harm to the relationship with the children." (FAC ¶ 183.)

---

[17] Count Two complains in part that Plaintiff's ex-wife "and her Paramour" have violated New Jersey's criminal contempt of court statute, N.J. Stat. Ann. § 2C:29-9, by failing to give Plaintiff access to his children ordered by the family court. Even assuming *arguendo* this assertion is true, Plaintiff cannot bring a civil suit to enforce a state court's orders.

Furthermore, because the Court has stricken the other tort claims in the Amended Complaint, on which Plaintiff's conspiracy claim necessarily depends, the civil conspiracy claim must also fail. *See Banco Popular N. Am.*, 876 A.2d at 253 (the "gist" of a claim for civil conspiracy is not the unlawful agreement, but the underlying predicate tort); *N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns. Int'l, Inc.*, 904 A.2d 775, 783 (N.J. Super. Ct. App. Div. 2006) (explaining that a claim for aiding the commission of a tort requires proof of the underlying tort); *J.S.*, 2022 WL 4242308, at *5 ("Because plaintiff failed to set forth a legally cognizable claim of intentional infliction of emotional distress, his cause of action for conspiracy and aiding the commission of a tort must also fail as a matter of law.").

Count Five is dismissed against all Defendants.

### iv.      *Count Six*

Count Six alleges a violation of the right to privacy against all Defendants. (FAC ¶¶ 184–90.) New Jersey law recognizes two avenues to proving the tort of "intrusion on seclusion" for "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009) (citation and quotation omitted). Plaintiff's invasion of privacy claim is based on two specific alleged actions by Plaintiff's ex-wife and her attorney: planting spyware on Plaintiff's phone and a tracking device on his vehicle. (FAC ¶¶ 184–90.) Plaintiff claims information taken from his phone was submitted to court in July 2014 (FAC ¶ 188) and that a "bug sweep inspection" of his vehicle in April 2015 detected a signal near his vehicle "similar to that of a GPS tracker." (FAC ¶ 189.)

Because Laura and Zabarsky are the only Defendants alleged to have been involved in these actions, the Amended Complaint fails to state a claim against the other fifty-eight Defendants

on this claim. Generally, given the standard applied at this stage of the proceedings, the Court would find that the Amended Complaint has sufficiently pled a claim against Laura and Zabarsky on Count Five. However, the Court notes that the claim against Laura and Zabarsky is precluded by Judge Sheridan's dismissal of his complaint, in which Plaintiff previously asserted the alleged spying incidents, as well as the statute of limitations, as the alleged spying took place in 2015, *see* Sections II.D, F, *infra*.

v.    *Count Seven*

Count Seven alleges malicious prosecution and abuse of process against the RICO Defendants. (FAC ¶ 191–96.). These two "closely related" torts "are treated with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). To prove malicious prosecution, plaintiff must show "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *Id.* (quoting *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975)). To prove malicious abuse of process, a civil analog to malicious prosecution, the plaintiff must show that after a court order issued, the defendant employed it for an "improper, unwarranted and perverted use." *Tedards v. Auty*, 557 A.2d 1030, 1034 (N.J. Super. Ct. App. Div. 1989). Process has not been abused "unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Id.*

The specific events Plaintiff complains of under this count are his ex-wife filing a domestic violence complaint in January 2014 (FAC ¶ 193); the Police Defendants arresting Plaintiff

pursuant to an arrest warrant (FAC ¶ 193); the Police Defendants refusing to conduct wellness checks of Plaintiff's children at his request (FAC ¶ 193); the School Defendants' refusing to allow Plaintiff to access his children at school (FAC ¶ 194); and the Plaintiff Divorce Attorneys' failure to "cite[] Plaintiff's constitutional rights or filed anything in the courts asserting INALIENABLE constitutionally protected parental rights and thus have committed the TORTS" (FAC ¶¶ 195).

The latter three specific actions are not cognizable as either a malicious prosecution or malicious abuse of process claim. Police officers' decision to not take down a complaint or conduct a wellness check, school employees' decision not to allow access to children, and attorneys' failure to make a motion to the court are neither "criminal action[s]" necessary for a malicious prosecution claim nor do they constitute "process" necessary for an abuse of process claim. While arresting without a valid warrant may be cognizable as false arrest, Plaintiff did not plead that either of the Police Defendants were involved in his arrest.[18] Plaintiff's claim against Laura for filing a domestic violence complaint may have survived except that this exact claim was before Judge Sheridan in 2016 and dismissed. *See* Section II.D, *infra*.

Count Seven is therefore dismissed for failure to state a claim against all Defendants.

> vi.    *Counts Eight and Nine*

Count Eight alleges a violation of section 1983 against all Defendants, and Count Nine alleges a violation of the Equal Protection Clause against all Defendants. (FAC ¶¶ 197–207.) Count Eight complains that Defendants caused Plaintiff to be arrested in January 2014 "without any probable cause," and then connects Plaintiff's arrest to a "fail[ure] to protect [Plaintiff's

---

[18] In fact, the Court notes that Plaintiff named a different slate of police officers — neither of the two Police Defendants here — as the ones who arrested him pursuant to a defective warrant in January 2014. Judge Sheridan heard Plaintiff's complaints and found that there was nothing improper about the process that resulted in the warrant's issuance. Hr'g Tr., *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. Nov. 9, 2016); ECF No. 160.

children's] Constitutional rights." (FAC ¶ 199–200.) Count Nine claims that racial animus motivated Plaintiff's ex-wife and her attorney during the 2014 proceedings that resulted in Plaintiff's passport being confiscated. (FAC ¶ 204.) Because the Equal Protection Clause by itself does not provide a separate cause of action, the Court reads the count as a section 1983 violation as well. *Gage v. Twp. of Warren*, No. 09-519, 2009 WL 1635602, at *3 (D.N.J. June 10, 2009) (construing civil claim for a violation of the Equal Protection Clause as a section 1983 claim).

Private defendants are not liable for constitutional violations under section 1983. A defendant in a 1983 must act "under color of state law," i.e., the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *McKinnie v. Hudson Cnty. Prosecutor Off.*, No. 13-7290, 2016 WL 6821081, at *3 (D.N.J. Nov. 16, 2016) ("The due process and equal protection clauses, as well as § 1983, are protections against government action, not sources of claims between private parties."). Therefore, the claims against all Defendants except for the School Defendants, Police Defendants, Prosecutor Defendants, and Judiciary Defendants are not viable.[19]

Against the School Defendants, the Amended Complaint fails to make any allegation how they violated Plaintiff's constitutional rights. The Court declines to reach the question of whether Plaintiff states a claim against the remaining Defendants because *res judicata* bars suit against the

---

[19] This holding is consistent with Judge Sheridan's prior admonition to Plaintiff and Judge Sheridan's dismissal of all claims brought by Plaintiff. At the 2016 hearing, Judge Sheridan considered Plaintiff's claims that his ex-wife and her attorney could be liable under section 1983 and held "So, my view of it is that it's like any case that comes under 1983, you have to first show that a state actor was involved. Ms. Christie is acting as an attorney for your wife, they filed some type of complaint in municipal court; that's an ordinary practice for an attorney. It doesn't really show any state action in my mind." Hr'g Tr., *Shaikh v. Jackson Twp.*, Case No. 15-4106, ECF No. 160 at 18:12–18 (D.N.J. Nov. 9, 2016). In light of this explanation, Plaintiff's decision to bring his constitutional claims against all Defendants is perplexing.

Police Defendants and the Prosecutor and Judiciary Defendants are entitled to immunity, *see* Sections II.D, E, *infra*.

### vii.   *Count Ten*

Count Ten alleges negligent infliction of emotional distress against all Defendants. (FAC ¶¶ 208–18.) A plaintiff can only recover for negligent infliction of emotional distress in one of two ways. *Jablonowska v. Suther*, 948 A.2d 610, 618 (N.J. 2008). First, he can show "the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury . . . ." *Id.* (citing *Falzone v. Busch*, 214 A.2d 12 (N.J. 1965)). Alternatively, a plaintiff can show (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Id.* (citing *Portee v. Jaffee*, 417 A.2d 521 (N.J. 1980)).

Plaintiff has not pled a sufficient basis to make out a claim for negligent infliction of emotional distress under either avenue. The Amended Complaint does not allege that any Defendants' conduct "placed the plaintiff in reasonable fear of immediate personal injury," *Falzone*, 214 A.2d at 17, or that any Defendants' negligence caused the "death or serious injury" of Plaintiff's family member, *Portee*, 417 A.2d at 527. Therefore, Plaintiff's claim for negligent infliction of emotional distress fails against all Defendants.

### viii.   *Count Eleven*

Count Eleven alleges false imprisonment against the RICO Defendants. (FAC ¶¶ 260–68.) False imprisonment is "the constraint of the person without legal justification." *Leang*, 969 A.2d at 1117 (quoting *Mesgleski v. Oraboni*, 748 A.2d 1130 (N.J. Super. Ct. App. Div. 2000). The

elements of a false imprisonment claim are "(1) an arrest or detention of the person against his or her will and (2) lack of proper legal authority or legal justification." *Id.* The fundamental aspect of false imprisonment is that it is done "without color of legal authority." *Earl v. Winne*, 101 A.2d 535, 540 (N.J. 1953) (citation omitted). Plaintiff's claims against the non-state actors are not cognizable since none can be said to have held Plaintiff against his will.

This claim against the state actors is likewise insufficiently pled because Plaintiff merely repeats the elements of the offense — that he was "falsely arrested and falsely imprisoned without probable cause" (FAC ¶ 267–68) — without explaining when he was detained and why it lacked legal authority or justification. To the extent the event Plaintiff relies on was his January 2014 arrest, Plaintiff's claim is barred by *res judicata*. See Section II.D, *infra*.

ix.     *Counts Twelve, Thirteen, and Fourteen*

Counts Twelve, Thirteen, and Fourteen allege RICO offenses under 18 U.S.C. §§ 1961-1965. (FAC pp. 67–80.)[20] To bring a federal civil RICO claim, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). An "enterprise" for RICO purposes is defined broadly to encompass some "structure, that is, a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). The existence of an enterprise requires that there be "some sort of framework for making or carrying out decisions." *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003) (quoting *United States v. Riccobene*,

---

[20] On page 69 of the Amended Complaint, the paragraph numbering resets from ¶ 306 to ¶ 269. Therefore, for Counts Twelve through Fifteen, the Court uses page instead of paragraph numbers.

709 F.2d 214, 222 (3d Cir. 1983)). For RICO pleading purposes involving an association-in-fact enterprise, "simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim alleged against them—just as merely listing the names of alleged conspirators would not give defendants adequate notice of an alleged conspiracy." *Id.* Allowing pleading a RICO claim without this level of specificity would subject defendants to an "inevitably costly and protracted discovery phase" even in the absence of a viable claim. *Id.* (noting that the concerns animating the court in *Twombly* are "just as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful").

Plaintiff has failed to allege an association-in-fact enterprise sufficient for his three RICO claims to survive dismissal. The Amended Complaint defines the enterprise as the RICO Defendants "associated together in fact" to carry out a "multi-faceted campaign of lies, fraud, threats, and official corruption, to coerce Plaintiff into paying tens of thousands of dollars to the RICO Defendants and their co-conspirators." (FAC p. 67.) The Zabarsky Defendants are alleged as the leaders who "directed other conspirators" and "receive[d] ill-gotten monies of at least $35,000" from Plaintiff that were "disbursed to the RICO Defendants." (FAC pp. 67–68.) The Police Defendants allegedly acted as the "private army" to coerce other Defendants into acting. (FAC p. 69.) Plaintiff's conclusory statements that approximately twenty-nine (29) Defendants entered an agreement in relation to their conduct in the state proceedings over the past ten years utterly fails to put Defendants on notice of the scope of the alleged enterprise. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326 (complaint failed to adequately allege RICO enterprise via "conclusory averments" that defendants "all agreed with [one member] and agreed horizontally among themselves" to carry out the enterprise's goals "do not show but merely assert plaintiffs'

entitlement to relief"); *Twombly*, 550 U.S. at 556–57 ("Without more . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Plaintiff's attempt to leverage the RICO statute to make a federal case out of his unfavorable rulings from his state divorce proceedings fails as a matter of law. *See DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 253 (3d Cir. 2012) (McKee, J., concurring) ("In dressing this landlord-tenant dispute as a federal RICO claim and seeking treble damages, this plaintiff has joined countless others who have fashioned such claims out of disputes that have nothing whatever to do with subverting crime rings or criminal syndicates."). Therefore, Counts Twelve, Thirteen, and Fourteen are dismissed against the RICO Defendants.[21]

x.      *Count Fifteen*

Count Fifteen alleges common law fraud against three of the four Plaintiff Divorce Attorneys — Landi, McMahon, and Schlendorf. (FAC pp. 80–81.) To allege a viable claim for in common law fraud, Plaintiff must allege: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citing *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521 (N.J. 1981)).

Allegations of fraud are subject to Rule 9(b)'s heightened pleading requirement. Fed. R. Civ. P. 9(b); *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 675 (D.N.J. 2015) (common law fraud claim must be pled with particularity). The complaint must plead "the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." *In re*

---

[21] Because the Amended Complaint fails to sufficiently allege an enterprise-in-fact to survive dismissal, the Court need not reach the question of whether Plaintiff adequately pled nexus or the predicate offenses.

*Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015) (quoting *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012)). "A plaintiff alleging fraud must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Diebler v. SanMedica Int'l, LLC*, 488 F. Supp. 3d 169, 175 (D.N.J. 2020); *Peters v. U.S. Dep't of Hous. & Urb. Dev.*, No. 04-6057, 2006 WL 278916, at *4 (D.N.J. Feb. 1, 2006) ("[I]n the case of multiple defendants, the plaintiff must plead fraud with particularity as to each individual defendant, as opposed to clustering together their allegedly fraudulent acts.").

The basis for the Amended Complaint's fraud count is the attorneys' representation to Plaintiff that "they would file a certain motion or motions", on the basis of which Plaintiff retained them, and after which they "never filed the agreed upon motion[s]." (FAC p. 81.) The Amended Complaint offers no details about when the allegedly fraudulent statements, the legal proceedings they were made connection with, or even when Plaintiff retained the three attorneys named. Defendants have not been "placed on notice of the precise misconduct with which they are charged." *Craftmatic Sec. Litig*, 890 F.2d at 645 (internal quotation marks omitted). Count Fifteen is dismissed in its entirety.

### D.   RES JUDICATA

#### 1.   *Legal Standard*

*Res judicata*, or claim preclusion, bars a party from pursuing a second suit against the same adversary based on the same cause of action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). "A party seeking to invoke res judicata must establish three elements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *McLaughlin v. Bd. of Trs. of Nat'l Elevator Indust. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017) (citing *Mullarkey*, 536 F.3d at 225).

For purposes of determining what constitutes a "cause of action" to satisfy the third element, a court looks to "the essential similarity of the underlying events giving rise to the various legal claims." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010). "[T]he focus is on 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" *Shah v. United States*, 540 F. App'x 91, 94 (3d Cir. 2013) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (quoting *Sheridan*, 609 F.3d at 261); *see also Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, No. 18-17462, 2020 WL 7090688, at *4 (D.N.J. Dec. 4, 2020) (although the legal theories in two lawsuits were not identical, the later was claim barred because the suits involved "the same claim because [they] involve[d] a 'common nucleus of operative facts'" (quoting *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020))).

Although *res judicata* is typically raised as an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and any documents properly considered on a Rule 12(b)(6) motion. *Walzer v. Muriel, Siebert & Co.*, 221 F. App'x 153, 155 (3d Cir. 2007) (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972)). For the purposes of this motion, the Court may take judicial notice of the pleadings and orders from the prior proceedings in order to establish the nature and scope of prior proceedings between the parties. *See also Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970) ("Where a motion to dismiss is made on the basis of collateral estoppel, it is usually necessary for the court to examine the record of the prior trial."); *Toscano v. Conn. Gen. Life Ins.*

*Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (per curiam) (*res judicata* defense "may be raised and adjudicated on a motion to dismiss and the court can take judicial notice of all facts necessary for the decision"); *cf. Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the matter asserted, but for the existence of the opinion.").

### 2.    *Discussion*

The Court finds that *res judicata* bars all of Plaintiff's claims about the events prior to his filing the federal complaint in June 2015. While there are multiple prior state and federal judgments that may qualify for preclusive effect, for simplicity the Court considers only No. 15-4106 filed in this district. First, Judge Sheridan's November 15, 2016 order denying all of Plaintiff's claims constitutes as a final judgment on the merits. Order, *Shaikh v. Jackson Twp.*, No. 15-4106 (D.N.J. Nov. 15, 2016), ECF No. 141.[22] Second, the parties are the same because Plaintiff named many of the Defendants in the instant suit in the prior action as well: Plaintiff's ex-wife; her parents; her friends Melissa and Kenneth Reeves; her divorce attorney and his wife, Steven and Kimberly Zabarsky; her other divorce attorney Cathleen Coneeny; and her forensic accountant during the divorce, Joseph Gunteski.

Lastly, the claims raised by Plaintiff are identical to those he raised in his 2015 federal suit. In his 2015 suit, Plaintiff brought suit under sections 1981 and 1983 and the RICO Act, as well as claims for false arrest, malicious prosecution, and malicious abuse of process. *See* Complaint,

---

[22] Judge Sheridan dismissed some of Plaintiff's claims on motion for summary judgment, some on motion for judgment on the pleadings, and some on motion to dismiss. Each disposition qualifies as final judgment on the merits. *See Simoni v. Luciani*, 872 F. Supp. 2d 382, 390 (D.N.J. 2012) ("Dismissal for failure to state a claim serves as a final judgment on the merits."); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 n.47 (3d Cir. 2016) (for preclusion purposes, "a motion for judgment on the pleadings under Rule 12(c) is identical to a motion to dismiss for failure to state a claim under Rule 12(b)(6)" (citation omitted)); *McLaughlin*, 686 F. App'x at 121 (grant of summary judgment "constitutes a final judgment on the merits for the purposes of res judicata" (citation omitted)).

*Shaikh v. Jackson Twp.*, Case No. 15-4106 (D.N.J. June 17, 2015), ECF No. 1 (the "2015 Complaint"). Plaintiff's complaint in the 2015 action complained about (1) Defendant Laura's allegedly false police report about Plaintiff that led to his arrest and culminated in the January 30, 2014 TRO hearing before Judge Einbinder (2015 Complaint ¶¶ 22–35); (2) RICO claims with Plaintiff's ex-wife and the Zabarsky and Gunteski Defendants at the center (*Id.* ¶¶ 38–42, 49–51, 131–205); (3) a conspiracy to use orders issued through family court proceedings to extort money from Plaintiff (*Id.* ¶¶ 43–44); (4) *pendente lite* proceedings in April and May 20214 which Plaintiff was not notified of in which Judge Einbinder issued orders unfavorable to Plaintiff (*Id.* ¶¶ 53–5.); (5) Defendant Reeves "attack[ing] Plaintiff and filing a "false" assault complaint against him in March 2014 (*Id.* ¶¶ 63–65).

Judge Sheridan squarely dispensed with the 2015 Complaint's claims on the merits: (1) there was nothing improper about the process that resulted in an arrest warrant being issued for Plaintiff or the TRO issuing in January 2014 (*Id.* at 86:5–9); (2) there was no evidence of a conspiracy with the Zabarsky Defendants at the center (*Id.* at 34:17–35:14); (3) there was no broad "conspiracy of people acting together in some manner to hurt Mr. Shaikh" (*Id.* at 56:15–57:2); (4) Judge Einbinder's April and May 2014 orders at the *pendente lite* hearing did not result from an abuse of process (*Id.* at 65:6–11); (5) Plaintiff failed to state a claim against Defendant Reeves for the "false" assault complaint she filed, which Plaintiff had dismissed along with Plaintiff's assault complaint against Reeves (*Id.* at 70:1–4). Plaintiff's claims in the present suit involve modest embellishments on the previously filed suit under section 1983 and the RICO Act, as well as intentional infliction of emotional distress, parental alienation claims, malicious prosecution, and false arrest. (*See generally*, ECF No. 154.) However, the fact that Plaintiff has added new theories of recovery in the instant action is "not dispositive," *Blunt*, 767 F.3d at 277, because the

"underlying events giving rise to the various legal claims," are identical, *Sheridan*, 609 F.3d at 261.

The doctrine of *res judicata* also extends to bar "litigation of a matter that has never been litigated but which should have been presented in an earlier suit." *Simoni v. Luciani*, 872 F. Supp. 2d 382, 387–88 (D.N.J. 2012) (quoting *Bierley v. Dombrowski*, 309 F. App'x. 594, 596-97 (3d Cir. 2009)). The purpose of this requirement is to compel "a plaintiff to present all claims arising out [of] the same occurrence in a single suit.'" *Sheridan*, 609 F.3d at 260 (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999)). This avoids "piecemeal litigation and conserve[s] judicial resources." *Id.* at 260.

To the extent other allegations raised in Plaintiff's 2015 complaint were not explicitly addressed on the record but "aris[e] out [of] the same occurrence," *id.*, they are likewise claim precluded in the instant Amended Complaint. These include, for example: Plaintiff's ex-wife's parents paying their daughter's attorney's fees in her divorce and not granting Plaintiff access when babysitting their grandchildren (*Id.* ¶¶ 67–70); Plaintiff's ex-wife and Zabarsky installing spy software on Plaintiff's phone and in his vehicle (*Id.* ¶¶ 72–75); and the Gunteski Defendants authoring a false report about Plaintiff's alleged assets to extort money from Plaintiff (*Id.* ¶¶ 44–47). The fact that Plaintiff included these events in his 2015 complaint, but failed to bring a separate cause of action over them, bars him from asserting them now.

In short, the Court concludes that *res judicata* bars Plaintiff's claims related to his 2013 New Jersey divorce proceedings, at least to the extent the claims arose prior to him filing the complaint on June 7, 2015. This includes nearly all allegations in the Amended Complaint for which Plaintiff includes any dates. Although there is a plethora of other federal and state judgments that likely preclude parts of Plaintiff's claims, the Court declines to reach them in the interest of

judicial economy and because any surviving claims are decisively extinguished by the other defects identified in this Opinion.

### E.   IMMUNITIES

A defendant's immunity is a question of subject matter jurisdiction, which the Court normally must decide first before reaching a complaint's merits. However, given the unique nature of the case, which involves multiple defendants, only seven of whom are immune from suit, the Court considers the Prosecutor and Judiciary Defendants' immunity as only one of multiple bases to dismiss the charges against them. *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 250 (3d Cir. 2003) (the court is "not required in this case to address the Eleventh Amendment issue before proceeding to the merits").

#### 1.   *Legal Standard*

Prosecutors are entitled to absolute immunity under the common law for conduct "intimately associated with the judicial phase of the criminal process" as long as they are "act[ing] within the scope of [their] duties in initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (prosecutors immune from suit in 1983 action based on their actions involving "preparing and filing charging documents"). This includes deciding whether to initiate judicial proceedings. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). The determination of whether absolute immunity applies is a functional analysis, requiring the Court to examine the nature of the function being performed. *Yarris v. Cnty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006).

Judges, likewise, are "generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done

maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Moreover, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359. "[Judicial] immunity is overcome in only two sets of circumstances," for "nonjudicial acts . . . not taken in the judge's judicial capacity" or when an action "though judicial in nature [is] taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12.

Certain state actors are also entitled to sovereign immunity under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment divests the Court of jurisdiction over "arm[s] of the state." *Id.* at 98–100; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."). A state agency or department is an "arm" of the State when the State "is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (citations omitted).

### 2. *Discussion*

The Amended Complaint's allegations against the two Prosecutor Defendants solely involve actions each took in their official capacity. For the Prosecutor Defendants, the Amended Complaint cites their "refused prosecution of Laura" for violating Plaintiff's parental rights. (FAC ¶ 145.) The decision not to initiate prosecution, like the decision to bring a prosecution, falls squarely under the Prosecutor Defendants' "scope of duty." *See Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) ("Prosecutors enjoy absolute immunity for the decision to initiate a prosecution."). The Amended Complaint's allegations of a personal relationship between one of the Prosecutor Defendants and one of the Judiciary Defendants and that one Prosecutor Defendant had previously "represented" Plaintiff's ex-wife at a municipal court proceeding, (FAC

¶¶ 91, 145), does not suggest any wrongdoing, let alone wrongdoing that renders their actions with respect to Plaintiff outside the "judicial phase of the criminal process." *Imbler*, 424 U.S. at 430.

Plaintiff's claims separately fail against the Prosecutor Defendants because they are entitled to sovereign immunity pursuant to the Eleventh Amendment. When county prosecutors perform classic law enforcement and investigative functions, they are acting as arms of the state, and are entitled to immunity under the Eleventh Amendment. *See Beightler v. Office of Essex Cnty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1391, 1499– 1505 (3d Cir. 1996)); *see also Wright v. New Jersey*, 778 A.2d 443, 453 (N.J. 2001) (when county prosecutors perform law enforcement and prosecutorial functions, "they act as agents of the State"). Therefore, the Complaint must be dismissed as to the Prosecutor Defendants.

The Complaint states that "at all relevant times" each Judiciary Defendant was "a Superior Court Judge" in New Jersey. (FAC ¶¶ 47–51.) A review of the paragraphs that contain specific allegations against each Judiciary Defendant — Judge Einbinder (FAC ¶¶ 104, 106, 118, 129); Judge Lynch-Ford (FAC ¶¶ 130–32, 135, 138); Judge Hanlon-Schron (FAC ¶ 140, 150); and Judge Hodgson (FAC ¶¶ 134, 138) — offers no suggestion that any Judiciary Defendant was not acting in a judicial capacity, *Stump*, 435 U.S. at 362, or acted with a "complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. Inclusion of the Judiciary Defendants' names in the list of sixty Defendants the Amended Complaint alleges conspired against Plaintiff does not suggest otherwise. *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) ("impermissibly vague group pleading" cannot survive motion to dismiss). As but one example of Plaintiff's fatal pleading deficiencies, the Amended Complaint makes no specific contentions involving Judge Doran or indicates how he allegedly acted against Plaintiff.

Plaintiff's claims likewise fail against the Judiciary Defendants because they are entitled to Eleventh Amendment immunity as an "arm" of the State. The New Jersey Judiciary and its employees are integral to, and an "arm" of, the State's judicial branch of government and, thus, are entitled to sovereign immunity under the Eleventh Amendment. *See Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010); *see also Johnson v. New Jersey*, 869 F. Supp. 289, 296 (D.N.J. 1994) (New Jersey Superior Court is "arm" of State of New Jersey and entitled to sovereign immunity).

The Amended Complaint appears to acknowledge that the Judiciary Defendants are entitled to immunity, (FAC ¶ 269), and yet names them anyway. Plaintiff also must surely be aware that naming the Judiciary Defendants in his suit was futile, as Courts in this district have repeatedly dismissed his complaints against these same Judiciary Defendants over the past five years. *See* Opinion, *Edelglass v. New Jersey*, No. 14-760 (D.N.J. Apr. 27, 2016), ECF No. 43 (dismissing Plaintiff's complaint against Judge Einbinder and Judge Lynch-Ford because they were "not the proper defendants for Plaintiffs' request for declaratory relief because they were all acting as neutral arbiters in the underlying custody disputes"); Opinion, *Shaikh v. New Jersey*, No. 16-1189 (D.N.J. Sept. 26, 2017), ECF No. 27 (dismissing claim against Judge Lynch-Ford); Opinion, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Nov. 25, 2020), ECF No. 7 (dismissing Plaintiff's complaint against all five Judiciary Defendants because of their absolute immunity); Order, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Jul. 13, 2021), ECF No. 14 (dismissing Plaintiff's amended complaint against all five Judiciary Defendants); Order, *Shaikh v. Einbinder*, No. 20-2540 (D.N.J. Nov. 1, 2021), ECF No. 22 (dismissing Plaintiff's second amended complaint against all five Judiciary Defendants), affirmed, No. 20-2540 (D.N.J. Nov. 1, 2021), ECF No. 26.

Therefore, the Judiciary Defendants are immune from suit, and the Amended Complaint must be dismissed against them.

**F.      STATUTE OF LIMITATIONS**

Almost all Defendants argue for dismissal in part because Plaintiff's claims are barred by the statute of limitations. Given the multiple bases explained above for dismissing the Amended Complaint's causes of action against each Defendant, resolving Defendants' statute of limitations arguments is unnecessary to the Court's result reached today. Nonetheless, given that Plaintiff's complaints against each Defendant flow almost entirely from events that occurred in 2014 and 2015 — well outside the limitations periods for most causes of action — the Court will briefly consider the statute of limitations applicable to Plaintiff's claims.

**1.      *Legal Standard***

The statute of limitations defense is an affirmative defense that the defendants generally must plead and prove. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Stephens v. Clash*, 796 F .3d 281, 288 (3d Cir. 2015), if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Stephens*, 796 F.3d at 288; *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (complaint should be dismissed on statute of limitations grounds "only when the statute of limitations defense is apparent on the face of the complaint").

A federal court looks to the law of the state in which it sits to determine the statute of limitations for common law claims brought in a federal forum. Under New Jersey law, the statute of limitations for tort claims is two years. N.J. Stat. Ann. § 2A-14-2(a).

Civil rights or constitutional torts claims are best characterized as personal injury actions governed by the relevant state's statute of limitations for personal injury actions. *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (in a section 1983 claim, the court looks to statute of limitations for personal injury claims in the law of the state in which the claim arose). In New Jersey, this is two years. N.J. Stat. Ann. § 2A:14–2.

Although the RICO statute does not expressly provide a statute of limitations, the Supreme Court has recognized a four-year limitations period for civil RICO claims. *See Agency Holding Corp. v. Malley–Duff & Assoc. Inc.*, 483 U.S. 143, 156 (1987); *Cetel v Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 510 (3d Cir. 2006), *cert. denied*, 549 U.S. 1207 (2007) (affirming dismissal of civil New Jersey RICO plaintiff's action as time-barred because the statute of limitations for a New Jersey RICO claim is identical to its federal counterpart).

New Jersey's statute of limitations for a common law fraud claim is six years. N.J. Stat. Ann. § 2A:14-1; *see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999) (citing *Lopez v. Swyer*, 300 A.2d 563, 567 (N.J. 1973)).

## 2. *Discussion*

Plaintiff's common law tort claims — Counts One, Two Three, Four, Five, Six, Seven, Ten, and Eleven — are subject to a two-year statute of limitations. The federal constitutional claims — Counts Eight and Nine — are subject to a four-year statute of limitations. The RICO Act Claims — Counts Twelve, Thirteen, and Fourteen — are also subject to a four-year statute of limitations. The fraud claim against three of the Plaintiff Divorce Attorneys — Count Fifteen — is subject to a six-year statute of limitations.

Plaintiff's complaint was filed on April 8, 2022. (ECF No. 1.) The vast majority of the specific events alleged in the Amended Complaint occurred at least four, if not more, years before Plaintiff filed the instant federal action. Plaintiff filed for divorce in October 2013. Opinion, *Shaikh v. New Jersey*, No. 16-1189 (D.N.J. Sept. 26, 2017), ECF No. 27 at 4. On January 26, 2017, the family court entered an amended final judgment of divorce. (FAC ¶ 135.) The Complaint makes clear that the majority of events underlying Plaintiff's claims occurred within this time period, and that Plaintiff's claims accrued at the same time. Although a handful of paragraphs in the Amended Complaint reference event that occurred within two or four years of Plaintiff initiating suit, the claims accrued well before these one-off events. By June 2015, Plaintiff must have known about the alleged wrongdoing, since he filed his federal complaint alleging the same underlying circumstances around that time. Therefore, Counts One through Fourteen, which are subject to either a two- or four-year statute of limitations, are time-barred.

For Count Fifteen, subject to a six-year statute of limitations, Plaintiff's Claim must have accrued after April 8, 2016. Plaintiff's failure to include the dates on which he retained the three attorneys named in this Count make it impossible to determine from the face of the complaint whether this claim was filed too late.

### G.   DISMISSAL WITH PREJUDICE

The court need not dismiss without prejudice and with leave to amend if amendment would be "inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002) (citations omitted); *see also Baker v. Wittevrongel*, No. 20-13020, 2021 WL 1840052, at *3 (D.N.J. May 7, 2021) (dismissing with prejudice because plaintiff's claims were precluded and time barred); *Mesadieu v. City of Elizabeth*, No. 17-3252, 2019 WL 2385901, at *3 (D.N.J. June 6, 2019) (dismissing with prejudice because "Plaintiff's claims are all barred by relevant statutes of

limitations"); *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. 16-6510, 2019 WL 2281632, at *4 (D.N.J. May 29, 2019) (dismissing with prejudice because plaintiff had repeatedly failed to correct the same deficiency in his pleading); *Taylor v. U.S. Attorney's Off.*, No. 10-2286, 2010 WL 4688215, at *2 (D.N.J. Nov. 9, 2010) (dismissing with prejudice because "Plaintiffs' constitutional claims [are] barred under the doctrine of sovereign immunity").

The Court concludes that *pro se* Plaintiff's Amended Complaint is incurably deficient on multiple grounds against each Defendant. For this reason, any attempt to amend the Amended Complaint would be futile, and the Amended Complaint must be dismissed with prejudice.

Plaintiff's litigation history makes clear that Amended Complaint represents his best effort to recover money damages from the results of his state court proceedings. Plaintiff already had the opportunity to amend his complaint once in the instant suit. (See ECF No. 154.) However, Plaintiff's complaints against the individuals most directly involved in his divorce proceedings — his ex-wife, her parents, the Zabarsky and Gunteski Defendants, and the judges who have presided over his various state matters — have been repeatedly rehashed from his previous suits. Against these Defendants, the instant suit constitutes Plaintiff's fifth or sixth bite at the apple. For those Defendants not named in any of Plaintiff's previous suits, the Amended Complaint is devoid of specific allegations against them, and it is clear that their inclusion in the instant suit was merely an attempt to sweep in as many Defendants a possible rather than a good faith effort to hold liable individuals who wronged Defendant.

The Court briefly summarizes the claims against each Defendant or group of Defendants and why any attempt to amend would be futile as to each.

Defendant Laura, Plaintiff's ex-wife, has been subjected to the majority of Plaintiff's state and federal lawsuits over the past ten years, all stemming from the same underlying conduct.

Plaintiff's claims against his ex-wife are barred by *res judicata*, either because they were previously adjudicated or because Plaintiff should have brought them in his earlier suits, since they arose out of the same underlying complaints. To the extent any claim against Laura somehow escaped the *res judicata* effect of Plaintiff's prior suits, the Amended Complaint either fails to state a claim, or Plaintiff's suit is barred by the statute of limitations.

Defendants Siegfried and Patricia Germadnig have also been included in Plaintiff's previous suits for perceived transgressions identical to those raised in the Amended Complaint. Plaintiff's allegations that these Defendants did not give him access to his children while they were babysitting and paid $5,000 for their daughter's divorce attorney are barred by *res judicata* and the statute of limitations, and cannot support a legal cause of action.

Plaintiff's claims against his ex-wife's friends and family cannot be cured by amendment because the utter failure to include any specific allegations against them — other than general claims of their involvement in a conspiracy against Plaintiff — makes clear that no action they have taken can support a cause of action against Plaintiff. To the extent Plaintiff could articulate an action one of them took during his divorce proceedings that could support a common law tort, those claims would be barred by the statute of limitations.

Plaintiff's claims against Melissa and Kenneth Reeves are barred by *res judicata*, as his only specific allegations against them involve conduct by Melissa from 2014 that was aired in Plaintiff's 2015 federal suit. To the extent Plaintiff could articulate a claim from that time period, it is barred by the statute of limitations. Plaintiff has failed to state a claim against Nada Pityinger for allegedly stealing items from Plaintiff in 2014, and any claim is barred by the statute of limitations.

Plaintiff's claims against the Zabarsky Defendants are likewise entirely barred by *res judicata* from Plaintiff's 2015 federal lawsuit. Although the Court does not discuss it here, Plaintiff also filed a separate suit against the Zabarsky Defendants in state court, which was consolidated with Plaintiff's divorce proceeding. *See* Section I.A, *supra*. While Holzapfel was not named in Plaintiff's prior suits, the only allegations against him flow directly from those against Steven Zabarsky and Citta, Holzapfel & Zabarsky. Kimberly Zabarsky, whose only offense is evidently her marriage to Steven Zabarsky, was likewise named in the 2015 federal suit.

Plaintiff's claims against Coneeny and her insurance carrier were disposed of in the 2015 federal suit. In any event, the claims against Coneeny all relate to events that occurred in 2014, and Plaintiff admits that Coneeny stopped representing his ex-wife in February 2014. Therefore, to the extent any claim survived, it is time-barred.

Gunteski was named in Plaintiff's 2015 suit, and the claims against him were dismissed. Therefore, *res judicata* bars the claims arising from the report Gunteski submitted to the court in 2015. Claims against Gunteski, as well as against the AICPA Defendants, are likely time-barred, as the allegations in the Amended Complaint do not suggest they took any action later than 2015. As to the AICPA Defendants, the Amended Complaint overs no suggestion that they are residents of New Jersey or that they have purposefully availed themselves of the forum for the Court to have personal jurisdiction. The AICPA's decision to decline to take an unspecified action against Gunteski does not support a legally cognizable cause of action.

The allegations against Arkush fail to state a claim under any of the causes of action Plaintiff lists. There is no basis for any action in federal court under any of the legal theories propounded by Plaintiff against his ex-wife's therapist for conduct which allegedly occurred

around the divorce proceeding almost ten years ago. The allegations against Arkush, which all stem from that time, are barred by the statute of limitations.

The only allegations against the Police Defendants are that they refused to conduct wellness checks on Plaintiff's children or take down his complaints. No cognizable legal claim can be made on these facts. As with the other Defendants, these claims are time-barred.

The Amended Complaint fails to state a claim against the School Defendants, and their only actions at issue occurred well outside the applicable statute of limitations period.

The Prosecutor Defendants are entitled to immunity for their alleged conduct, all of which was within the scope of their responsibilities as prosecutors. The Amended Complaint also fails to state a claim against them, and their alleged conduct occurred outside the statute of limitations period.

Plaintiff has sued the Judiciary Defendants repeatedly in his federal lawsuits. Although some of the suits naming them sought injunctive relief related to orders they entered in Plaintiff's state proceedings, *res judicata* nonetheless bars Plaintiff's suit for money damages against each because the underlying orders allegedly giving rise to his claims are the same. In any event, Plaintiff's claims against the Judiciary Defendants are barred by Eleventh Amendment and common law immunity, as well as the statute of limitations.

Plaintiff has failed to state a claim against Yelp. The only allegation against Yelp is related to Plaintiff's contact with them from 2015, which puts his claims against Yelp outside the limitations period. As noted above, the Amended Complaint offers no facts that could support the Court's exercise of personal jurisdiction over Yelp. *See* Section C.2, *supra*.

Camille Eluzzi was never served in this case because although she is referred to as a defendant at points during the Amended Complaint, this appears to be because Plaintiff cut and

paste sections from the complaint of his 2015 Complaint into his 2022 Amended Complaint. Even were Plaintiff able to amend his complaint to include specific allegations against Eluzzi, the allegations were addressed in the 2015 suit and are barred by the statute of limitations.

## III.    THE PARTIES' OTHER MOTIONS

Having dismissed the Amended Complaint in its entirety, the Court now turns to the six remaining motions on the docket.

### A.    PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION

On January 1, 2023, Plaintiff filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a) against the Judiciary Defendants to "vacate [the] November 28, 2017 bench warrant for lack of *in personam* and subject matter jurisdiction and violations of 18 U.S.C. § 241, 242." (ECF No. 131 at 2.) The Judiciary Defendants filed a short opposition brief, noting that Plaintiff's request was barred by "absolute judicial immunity, Eleventh Amendment sovereign immunity, statute of limitations, and the Rooker-Feldman doctrine." (ECF No. 136 at 2.) Plaintiff filed a reply. (ECF No. 139.) On March 19, 2023, Plaintiff re-filed what appears to be an identical 46-paged document to his January 1, 2023 filing requesting identical relief. (ECF No. 191.)

Because the Amended Complaint is dismissed, Plaintiff's motions are now moot. In any event, Plaintiff's motion makes clear that bench warrant for his arrest for failure to make child support payments was issued in November 2017 but has not yet been executed. (New Jersey Superior Court Decision of February 12, 2021, Ex. to Pl.'s Mot., ECF No. 131-2 at 6.) The state court has repeatedly denied Plaintiff's requests to vacate the warrant. (*Id.* at 11.) Therefore the Anti-Injunction Act prohibits the Court from granting the sought injunctive relief. 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress . . ."); *Price El v. Super. Ct. of New Jersey,*

No. 11-2213, 2012 WL 95210, at *4 (D.N.J. Jan. 12, 2012) (denying motion to enter injunction against "issuance of warrants for [plaintiff's] arrest for his failure to play child support" as prohibited by the Anti-Injunction Act and likely barred by the *Rooker-Feldman* and *Younger* abstention doctrines).

### B.   PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S ORDERS

On November 4, 2022, Judge Singh granted Defendants' Nancy Cavanaugh and Slava Kleyman's motion to set aside default entered against them. (ECF No. 119.) Judge Singh found that Defendants had shown good cause for their default and that vacating the entry would not unduly prejudice Plaintiff. (*Id.* at 2–3.) Plaintiff filed a "motion to vacate" Judge Singh's order, arguing that vacating default "highly prejudiced" Plaintiff because it would delay discovery. (ECF No. 121 at 18.) Defendants filed an opposition brief. (ECF No. 124.) The Court treats Plaintiff's filing as an appeal from the Magistrate Judge's decision.

Over the course of several motions, Plaintiff moved to disqualify the New Jersey Attorney General's Office ("NJOAG") from representing the Prosecutor and Judiciary Defendants, and to disqualify the attorney representing the Police Defendants. (ECF Nos. 87, 91, 92, 103, 104). Plaintiff cited identical bases for each: that public representation for the Defendants "would harm and violate the taxpayers of NJ to have to pay to represent the defendants for their criminal actions[.]" (ECF No. 87 at 15; ECF No. 91 at 13; ECF No. 92 at 12.) Judge Singh found Plaintiff had not alleged any violation of the New Jersey's Rules of Professional Conduct and denied the motions and because New Jersey statute compelled the NJOAG to defend the Prosecutor and Judiciary Defendants, and because the Police Defendants were not represented by the NJOAG. (ECF No. 118 at 6–7).

Plaintiff appealed Judge Singh's decision (ECF No. 127), and the Judiciary Defendants opposed (ECF No. 129). While his appeal was pending, on April 16, 2023 Plaintiff filed a separate motion to disqualify the attorneys representing from representing certain the Police, Prosecutor, and Judiciary Defendants on the grounds that Plaintiff has filed "pending complaints against all listed government defendants, thus creating an impassable conflict of interest." (ECF No. 246 at 11.)

A magistrate judge is "accorded wide discretion in addressing non-dispositive motions." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A magistrate judge's ruling on a non-dispositive matter may only be set aside if the "order is clearly erroneous or contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is clearly erroneous only 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 365, 395 (1948)). For a decision to be contrary to law, "the Court must find the magistrate judge misapplied or misinterpreted the applicable law." *Hooker v. Novo Nordisk Inc.*, No. 16-4562, 2019 WL 2521749, at *2 (D.N.J. June 19, 2019) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). The party appealing the Magistrate's decision bears the burden of showing the ruling is clearly erroneous or contrary to law. *Travelers Indemn. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 758–59 (D.N.J. 2008), aff'd, 594 F.3d 238 (3d Cir. 2010).

Plaintiff has failed to meet his burden to show that either of Judge Singh's rulings were clearly erroneous or contrary to law. Plaintiff's unsubstantiated claim that vacating default against two out of the sixty Defendants in the case would "highly prejudice[]" him (ECF No. 121 at 18) does not offer any reason to disturb Judge Singh's order. Likewise, Plaintiff's appeal of Judge

Singh's order denying his motion to disqualify defense counsel offers no bona fide reason to reverse Judge Singh's well-reasoned decision, apart from regurgitated allegations of conspiracy and unconstitutional acts taken from the Amended Complaint. (ECF No. 127). Therefore, Judge Singh's orders are affirmed. (ECF Nos. 118, 119.) Because Plaintiff's separate motion to disqualify counsel is identical to the motion Judge Singh denied, which this court now affirms, Plaintiff's motion is denied. (ECF No. 246.)

### C.    DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

On December 2, 2022, Defendants Nancy Cavanaugh and Slava Kleyman moved for sanctions against Plaintiff under Federal Rule of Civil Procedure 11, arguing that Plaintiff's repeated lawsuits in state and federal court against them were "frivolous and designed strictly to harass and intimidate." (ECF No. 128 at 1.) Defendants sought costs and fees and an order precluding Plaintiff from future filings. (*Id.* at 9–10.) Plaintiff filed a motion in opposition that cut and paste large sections of his Amended Complaint, largely arguing that Rule 11 sanctions were not appropriate because his complaint had merit. (ECF No. 137.)

Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corp.*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings. *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). To secure Rule 11 sanctions, a party must make a sanctions motion " separately from any other motion and must describe the specific conduct that allegedly violates [Rule 11]." R. 11(c)(2). Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct. R. 11(c)(4).

Monetary sanctions under Rule 11 in the form of attorneys' fees are granted in only exceptional cases. *Ahn v. Korea Advanced Inst. of Sci. & Tech.*, No. 14-1987, 2014 WL 6455593, at \*9 (D.N.J. Nov. 17, 2014) (citing *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). In fact, it is only appropriate when it is clear that a claim has absolutely no chance of success on the merits. *Doering*, 857 F.2d at 194 ("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 263 (3d Cir. 2011) ("Rule 11, however, is a sanction of last resort."). The overall purpose of a monetary sanction under Rule 11 is thus to deter frivolous litigation and unnecessary motions rather than to compensate the opposing party for the costs of litigation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.

*Pro se* litigants are not immune from Rule 11 sanctions. *Wong v. Bank of N.Y.*, No. 14-5212, 2016 WL 1597309, at \*3 (D.N.J. Apr. 21, 2016) (Rule 11 sanctions available against a *pro se* litigant taking into account that litigant may be "untutored in the law"); *see also Lai v. Wei*, No. 07-179, 2007 WL 1963331, at \*4 (D.N.J. June 29, 2007). However, *pro se* litigants are given greater leeway in following the technical rules of pleading and procedure. *Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x. 123, 125 (3d Cir. 2012) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n. 6 (3d Cir. 2008)). Furthermore, the District Court has substantial discretion to determine the nature and extent of a

sanction. *Napier v. Thirty or More Unidentified Fed. Agents, Emps., or Other Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)).

Plaintiff's abusive history with state and federal courts certainly merits sanctions given his proclivity for instituting lawsuits and making motions the Court can only conclude are designed to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). Plaintiff's repeated failures in state and federal court, and the New Jersey court's 2017 order restricting his ability to file on the state docket for repeated nuisance filings, must make clear to Plaintiff that his continued efforts to re-litigate the results of his 2016 divorce decree have "absolutely no chance of success on the merits." *Doering*, 857 F.2d at 194.

However, while Defendants have articulated a powerful, colorable and indeed compelling argument justifying the imposition of Rule 11 sanctions, the Court exercises its discretion and prudence at this juncture and declines to impose sanctions. The basis for the court's declination is to bring closure and finality to these serially re-stated unactionable claims, which have subjected legions of defendants to near constant litigation in multiple forums over many years, as well as the significant and repeated expenditure of judicial resources in a multitude of state and federal courts. Here, the theoretical, ephemeral and perhaps futile prospect of recovering significant Rule 11 monetary sanctions imposed against this Plaintiff militates in favor of the court's demurral against the backdrop of expending continued time and litigation costs.

## IV.   **REMAINING MATTERS**

Several Defendants have requested that the Court exercise its power under the All Writs Act to limit Plaintiff's ability to file suit in this District against them in the future. (ECF Nos. 207-1 at 23; 223-1 at 16.) Several other Defendants do not request this relief but nonetheless merit the Court's consideration whether relief offered by the All Writs Act is appropriate.

The All Writs Act permits the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act permits the Court to "impose filing injunctions on litigants who have engaged in abusive, groundless, and vexatious litigation." *Kent v. Philadelphia Dep't of Hum. Servs.*, 813 F. App'x 736, 737 (3d Cir. 2020) (citing *Chipps v. U.S. Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989)). Exercise of this authority is an "extreme measure" that must be "narrowly tailored and sparingly used." *Id.* (quoting *In re Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989)). The Third Circuit has cautioned that before a Court exercises its authority under this provision, it must provide "adequate notice and an opportunity to respond before imposing sanctions." *Hill v. Carpenter*, 323 F. App'x 167, 171 (3d Cir. 2009); *see also Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (before issuing an injunction under the All Writs Act limiting a litigant's ability to file, "the District Court must give notice to the litigant to show cause why the proposed injunctive relief should not issue").

In light of Plaintiff's history of repeat litigation against identical Defendants, as laid out exhaustively in Sections I.A and II.D, *supra*, restricting Plaintiff's ability to file is surely within the scope of the Court's authority under the All Writs Act. The Third Circuit Court of Appeals regularly affirms district courts' orders under the Act limiting the ability of plaintiffs with litigation histories comparable to Mr. Shaikh's from filing. *See Gupta v. Wipro Ltd.*, 765 F. App'x 648, 650 (3d Cir. 2019) (affirming district court's injunction against future filing based on plaintiff's ten-year history of losing multiple times in federal court, "pursu[ing] relief by filing meritless motions," and "repeatedly assert[ing] invalid legal theories"); *Yoder v. Wells Fargo Bank, N.A.*, 765 F. App'x 822, 824 (3d Cir. 2019) (affirming district court's injunction against future filing based on plaintiff "repeatedly assert[ing] meritless claims related to a foreclosure action," "fil[ing]

numerous complaints against [defendant], as well as other individuals and entities connected to the foreclosure proceedings," and raising "claims that essentially duplicated allegations raised in her prior state and federal lawsuits"). However, to the Court's knowledge Plaintiff has not yet been explicitly warned about the possible consequences of attempting to file additional suits against the same defendants based on the same underlying conduct.

Therefore, Plaintiff is put on notice that the Court will not tolerate filing repetitive papers attempting to re-litigate the results of his state court proceedings. The Court urges Plaintiff to carefully consider before making any future filings in this District, as the Court will not hesitate to impose sanctions, monetary or otherwise, if Plaintiff continues abusing the legal process.[23]

---

[23] The Court has been made aware by Court personnel that Plaintiff has made weekly phone calls to chambers inquiring into the status of his pending motions. Plaintiff is directed to refrain from making unsolicited phone calls to chambers. Any and all communication with chambers must be made through written correspondence filed on the docket.

V.      **CONCLUSION**

Defendants' Motions to Dismiss are **GRANTED**. (ECF Nos. 203, 206, 207, 208, 212, 215, 218, 220, 222, 223, 225, 226, 227, 228, 230, 232, 233, 234, 236, 238, 242, 252, and 255.) To the extent Defendants' Motions seek relief not otherwise addressed in this Opinion and the accompanying Order, they are **DENIED**. The Amended Complaint is hereby **DISMISSED** with prejudice. (ECF No. 154.) All other motions are hereby **DENIED**. (ECF Nos. 121, 127, 128, 131, 191, 246.)

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: July 13th, 2023